No. 24-5064

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

NANCY FIEDLER, et al.,

*Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the Central District of California
Case No. 2-21-cv-07065-PA-MRW
Hon. Percy Anderson

═══════════════════════════════════════════════

**APPELLANTS' ADDENDUM TO OPENING BRIEF**

═══════════════════════════════════════════════

Gretchen M. Nelson (112566)
NELSON & FRAENKEL LLP
601 So. Figueroa, Suite 2050
Los Angeles, CA 90017
Telephone: (213) 622-6469
Telecopier: (213)-622-6019
gnelson@nflawfirm.com

John R. Hillsman (71220)
MCGUINN HILLSMAN & PALEFSKY
220 Jackson Street, Suite 350
San Francisco, CA 94111
Telephone: (415) 421-9292
Telecopier: (415) 403-0202
jrhillsman@mhpsf.com

*Counsel for Plaintiffs-Appellants – Add'tl Counsel on Signature Page of Brief*

1

### 14 U.S.C. § 102. Primary duties

The Coast Guard shall-

(1) enforce or assist in the enforcement of all applicable Federal laws on, under, and over the high seas and waters subject to the jurisdiction of the United States;

(2) engage in maritime air surveillance or interdiction to enforce or assist in the enforcement of the laws of the United States;

(3) administer laws and promulgate and enforce regulations for the promotion of safety of life and property on and under the high seas and waters subject to the jurisdiction of the United States, covering all matters not specifically delegated by law to some other executive department;

(4) develop, establish, maintain, and operate, with due regard to the requirements of national defense, aids to maritime navigation, icebreaking facilities, and rescue facilities for the promotion of safety on, under, and over the high seas and waters subject to the jurisdiction of the United States;

(5) pursuant to international agreements, develop, establish, maintain, and operate icebreaking facilities on, under, and over waters other than the high seas and waters subject to the jurisdiction of the United States;

(6) engage in oceanographic research of the high seas and in waters subject to the jurisdiction of the United States; and

(7) maintain a state of readiness to assist in the defense of the United States, including when functioning as a specialized service in the Navy pursuant to section 103.

## 14 U.S.C. § 503 - Regulations

In addition to the authority conferred by other provisions of this title
the Secretary may promulgate such regulations and orders as he deems
appropriate to carry out the provisions of this title or any other law
applicable to the Coast Guard.

**14 U.S.C. § 504 - Commandant; general powers**

(a) For the purpose of executing the duties and functions of the Coast Guard the Commandant may:

(1) maintain water, land, and air patrols, and ice-breaking facilities;

(2) establish and prescribe the purpose of, change the location of, consolidate, discontinue, re-establish, maintain, operate, and repair Coast Guard shore establishments;

(3) assign vessels, aircraft, vehicles, aids to navigation, equipment, appliances, and supplies to Coast Guard districts and shore establishments, and transfer any of the foregoing from one district or shore establishment to another;

(4) conduct experiments and investigate, or cause to be investigated, plans, devices, and inventions relating to the performance of any Coast Guard function, including research, development, test, or evaluation related to intelligence systems and capabilities;

(5) conduct any investigations or studies that may be of assistance to the Coast Guard in the performance of any of its powers, duties, or functions;

(6) collect, publish, and distribute information concerning Coast Guard operations;

(7) conduct or make available to personnel of the Coast Guard, and to eligible spouses as defined under section 2904, such specialized training and courses of instruction, including correspondence courses and the textbooks, manuals, and other materials required as part of such training or course of instruction, as may be necessary or desirable for the good of the service;

## 14 U.S.C. § 504 - Commandant; general powers (continued)

(8) design or cause to be designed, cause to be constructed, accept as gift, or otherwise acquire patrol boats and other small craft, equip, operate, maintain, supply, and repair such patrol boats, other small craft, aircraft, and vehicles, and subject to applicable regulations under subtitle I of title 40 and division C (except sections 3302, 3501(b), 3509, 3906, 4710, and 4711) of subtitle I of title 41 dispose of them;

(9) acquire, accept as gift, maintain, repair, and discontinue aids to navigation, appliances, equipment, and supplies;

(10) equip, operate, maintain, supply, and repair Coast Guard districts and shore establishments;

(11) establish, equip, operate, and maintain shops, depots, and yards for the manufacture and construction of aids to navigation, equipment, apparatus, vessels, vehicles, and aircraft not normally or economically obtainable from private contractors, and for the maintenance and repair of any property used by the Coast Guard;

(12) accept and utilize, in times of emergency in order to save life or protect property, such voluntary services as may be offered to the Coast Guard;

(13) rent or lease, under such terms and conditions as are deemed advisable, for a period not exceeding five years, such real property under the control of the Coast Guard as may not be required for immediate use by the Coast Guard, the monies received from any such rental or lease, less amount of expenses incurred (exclusive of governmental personal services), to be deposited in the fund established under section 2946;

(14) grant, under such terms and conditions as are deemed advisable, permits, licenses, easements, and rights-of-way over, across, in, and upon lands under the control of the Coast Guard

## 14 U.S.C. § 504 - Commandant; general powers (continued)

when in the public interest and without substantially injuring the interests of the United States in the property thereby affected;

(15) establish, install, abandon, re-establish, reroute, operate, maintain, repair, purchase, or lease such telephone and telegraph lines and cables, together with all facilities, apparatus, equipment, structures, appurtenances, accessories, and supplies used or useful in connection with the installation, operation, maintenance, or repair of such lines and cables, including telephones in residences leased or owned by the Government of the United States when appropriate to assure efficient response to extraordinary operational contingencies of a limited duration, and acquire such real property rights of way, easements, or attachment privileges as may be required for the installation, operation, and maintenance of such lines, cables, and equipment;

(16) establish, install, abandon, reestablish, change the location of, operate, maintain, and repair radio transmitting and receiving stations;

(17) provide medical and dental care for personnel entitled thereto by law or regulation, including care in private facilities;

(18) accept, under terms and conditions the Commandant establishes, the service of an individual ordered to perform community service under the order of a Federal, State, or municipal court;

(19) notwithstanding any other law, enter into cooperative agreements with States, local governments, non-governmental organizations, and individuals, to accept and utilize voluntary services for the maintenance and improvement of natural and historic resources on, or to benefit natural and historic research on, Coast Guard facilities, subject to the requirement that--

**14 U.S.C. § 504 - Commandant; general powers (continued)**

> (A) the cooperative agreements shall each provide for the parties to contribute funds or services on a matching basis to defray the costs of such programs, projects, and activities under the agreement; and
>
> (B) an individual providing voluntary services under this subsection shall not be considered a Federal employee except for purposes of chapter 81 of title 5, United States Code, with respect to compensation for work-related injuries, and chapter 171 of title 28, United States Code, with respect to tort claims;

(20) enter into cooperative agreements with other Government agencies and the National Academy of Sciences;

(21) require that any member of the Coast Guard or Coast Guard Reserve (including a cadet or an applicant for appointment or enlistment to any of the foregoing and any member of a uniformed service who is assigned to the Coast Guard) request that all information contained in the National Driver Register pertaining to the individual, as described in section 30304(a) of title 49, be made available to the Commandant under section 30305(b)(7) of title 49, may receive that information, and upon receipt, shall make the information available to the individual;

(22) provide for the honorary recognition of individuals and organizations that significantly contribute to Coast Guard programs, missions, or operations, including State and local governments and commercial and nonprofit organizations, and pay for, using any appropriations or funds available to the Coast Guard, plaques, medals, trophies, badges, and similar items to acknowledge such contribution (including reasonable expenses of ceremony and presentation);

### 14 U.S.C. § 504 - Commandant; general powers (continued)

(23) rent or lease, under such terms and conditions as are considered by the Secretary to be advisable, commercial vehicles to transport the next of kin of eligible retired Coast Guard military personnel to attend funeral services of the service member at a national cemetery;

(24) after informing the Secretary, make such recommendations to the Congress relating to the Coast Guard as the Commandant considers appropriate;

(25) enter into cooperative agreements, contracts, and other agreements with Federal entities and other public or private entities, including academic entities, to develop a positioning, navigation, and timing system to provide redundant capability in the event Global Positioning System signals are disrupted, which may consist of an enhanced LORAN system; and

(26) develop data workflows and processes for the leveraging of mission-relevant data by the Coast Guard to enhance operational effectiveness and efficiency.

(b)

(1) Notwithstanding subsection (a)(13), a lease described in paragraph (2) of this subsection may be for a term of up to 20 years.

(2) A lease referred to in paragraph (1) is a lease--

(A) to the United States Coast Guard Academy Alumni Association for the construction of an Alumni Center on the grounds of the United States Coast Guard Academy; or

(B) to an entity with which the Commandant has a cooperative agreement under section 4(e) of the Ports and

## 14 U.S.C. § 504 - Commandant; general powers (continued)

> Waterways Safety Act, and for which a term longer than 5 years is necessary to carry out the agreement.

(c) Marine safety responsibilities.--In exercising the Commandant's duties and responsibilities with regard to marine safety, the individual with the highest rank who meets the experience qualifications set forth in section 305(a)(3) shall serve as the principal advisor to the Commandant regarding--

> (1) the operation, regulation, inspection, identification, manning, and measurement of vessels, including plan approval and the application of load lines;
>
> (2) approval of materials, equipment, appliances, and associated equipment;
>
> (3) the reporting and investigation of marine casualties and accidents;
>
> (4) the licensing, certification, documentation, protection and relief of merchant mariners;
>
> (5) suspension and revocation of licenses and certificates;
>
> (6) enforcement of manning requirements, citizenship requirements, control of log books;
>
> (7) documentation and numbering of vessels;
>
> (8) State boating safety programs;
>
> (9) commercial instruments and maritime liens;
>
> (10) the administration of bridge safety;

## 14 U.S.C. § 504 - Commandant; general powers (continued)

(11) administration of the navigation rules;

(12) the prevention of pollution from vessels;

(13) ports and waterways safety;

(14) waterways management; including regulation for regattas and marine parades;

(15) aids to navigation; and

(16) other duties and powers of the Secretary related to marine safety and stewardship.

(d) Other authority not affected.--Nothing in subsection (c) affects--

(1) the authority of Coast Guard officers and members to enforce marine safety regulations using authority under section 522 of this title; or

(2) the exercise of authority under section 527 of this title and the provisions of law codified at sections 191 through 195 of title 50 on the date of enactment of this paragraph.

(e) Operation and maintenance of Coast Guard assets and facilities.--All authority, including programmatic budget authority, for the operation and maintenance of Coast Guard vessels, aircraft, systems, aids to navigation, infrastructure, and other assets or facilities shall be allocated to and vested in the Coast Guard and the department in which the Coast Guard is operating.

(f)Leasing of tidelands and submerged lands.--

(1)Authority.--The Commandant may lease under subsection (a)(13) submerged lands and tidelands under the control of the

### 14 U.S.C. § 504 - Commandant; general powers (continued)

Coast Guard without regard to the limitation under that subsection with respect to lease duration.

(2)Limitation.--The Commandant may lease submerged lands and tidelands under paragraph (1) only if--

(A) the lease is for cash exclusively;

(B) the lease amount is equal to the fair market value of the use of the leased submerged lands or tidelands for the period during which such lands are leased, as determined by the Commandant;

(C) the lease does not provide authority to or commit the Coast Guard to use or support any improvements to such submerged lands and tidelands, or obtain goods and services from the lessee; and

(D) proceeds from the lease are deposited in the Coast Guard Housing Fund established under section 2946.

## 28 U.S. Code § 2674 - Liability of United States

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof.

With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

With respect to any claim to which this section applies, the Tennessee Valley Authority shall be entitled to assert any defense which otherwise would have been available to the employee based upon judicial or legislative immunity, which otherwise would have been available to the employee of the Tennessee Valley Authority whose act or omission gave rise to the claim as well as any other defenses to which the Tennessee Valley Authority is entitled under this chapter.

## 28 U.S.C. § 2680 Exceptions

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a)   Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

(b)   Any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter.

(c)   Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer, except that the provisions of this chapter and section 1346(b) of this title apply to any claim based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if—

> (1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
> (2) the interest of the claimant was not forfeited;
> (3)  the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
> (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

## 28 U.S.C. § 2680(a) Exceptions (continued)

(d)   Any claim for which a remedy is provided by chapter 309 or 311 of title 46 relating to claims or suits in admiralty against the United States.

(e)   Any claim arising out of an act or omission of any employee of the Government in administering the provisions of sections 1–31 of Title 50, Appendix.[2]

(f)   Any claim for damages caused by the imposition or establishment of a quarantine by the United States.

(g)   [(g)Repealed. Sept. 26, 1950, ch. 1049, § 13 (5), 64 Stat. 1043.]

(h)   Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

(i)   Any claim for damages caused by the fiscal operations of the Treasury or by the regulation of the monetary system.

(j)   Any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war.

14

## 28 U.S.C. § 2680(a) Exceptions
## (continued)

(k)   Any claim arising in a foreign country.

(l)   Any claim arising from the activities of the Tennessee Valley Authority.

(m)   Any claim arising from the activities of the Panama Canal Company.

(n)   Any claim arising from the activities of a Federal land bank, a Federal intermediate credit bank, or a bank for cooperatives.

## 46 U.S.C. § 2101 General Definitions

In this subtitle—

(1)"associated equipment"—

(A) means—

(i) a system, accessory, component, or appurtenance of a recreational vessel; or

(ii) a marine safety article intended for use on board a recreational vessel; but

(B) with the exception of emergency locator beacons for recreational vessels operating beyond 3 nautical miles from the baselines from which the territorial sea of the United States is measured or beyond 3 nautical miles from the coastline of the Great Lakes, does not include radio equipment.

(2) "Coast Guard" means the organization established and continued under section 1 [1] of title 14.

(3) "Commandant" means the Commandant of the Coast Guard.

(4) "commercial service" includes any type of trade or business involving the transportation of goods or individuals, except service performed by a combatant vessel.

(5) "consideration" means an economic benefit, inducement, right, or profit including pecuniary payment accruing to an individual, person, or entity, but not including a voluntary sharing of the actual expenses of the voyage, by monetary contribution or donation of fuel, food, beverage, or other supplies.

(6) "crude oil" means a liquid hydrocarbon mixture occurring naturally in the earth, whether or not treated to render it suitable for transportation, and includes crude oil from which certain

**46 U.S.C. § 2101 General Definitions (continued)**

distillate fractions may have been removed, and crude oil to which certain distillate fractions may have been added.

(7) "crude oil tanker" means a tanker engaged in the trade of carrying crude oil.

(8) "dangerous drug" means a narcotic drug, a controlled substance, or a controlled substance analog (as defined in section 102 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 802)).

(9) "discharge", when referring to a substance discharged from a vessel, includes spilling, leaking, pumping, pouring, emitting, emptying, or dumping, however caused.

(10) "ferry" means a vessel that is used on a regular schedule—

    (A)   to provide transportation only between places that are not more than 300 miles apart; and

    (B)   to transport only—

        (i)   passengers; or

        (ii)   vehicles, or railroad cars, that are being used, or have been used, in transporting passengers or goods.

(11) "fish" means finfish, mollusks, crustaceans, and all other forms of marine animal and plant life, except marine mammals and birds.

(12) "fishing vessel" means a vessel that commercially engages in the catching, taking, or harvesting of fish or an activity that can

**46 U.S.C. § 2101 General Definitions**
   **(continued)**

reasonably be expected to result in the catching, taking, or harvesting of fish.

(13) "fish processing vessel" means a vessel that commercially prepares fish or fish products other than by gutting, decapitating, gilling, skinning, shucking, icing, freezing, or brine chilling.

(14) "fish tender vessel" means a vessel that commercially supplies, stores, refrigerates, or transports fish, fish products, or materials directly related to fishing or the preparation of fish to or from a fishing, fish processing, or fish tender vessel or a fish processing facility.

(15) "freight vessel" means a motor vessel of more than 15 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title that carries freight for hire, except an oceanographic research vessel or an offshore supply vessel.

(16) "Great Lakes barge" means a non-self-propelled vessel of at least 3,500 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title operating on the Great Lakes.

(17) "hazardous material" means a liquid material or substance that is—

    (A)  flammable or combustible;

    (B)  designated a hazardous substance under section 311(b) of the Federal Water Pollution Control Act (33 U.S.C. 1321); or

**46 U.S.C. § 2101 General Definitions**
  **(continued)**

    (C)  designated a hazardous material under section 5103(a) of title 49.

(18) "major conversion" means a conversion of a vessel that—

    (A) substantially changes the dimensions or carrying capacity of the vessel;

    (B) changes the type of the vessel;

    (C) substantially prolongs the life of the vessel; or

    (D)  otherwise so changes the vessel that it is essentially a new vessel, as decided by the Secretary.

(19) "marine environment" means—

    (A)  the navigable waters of the United States and the land and resources in and under those waters;

    (B)  the waters and fishery resources of an area over which the United States asserts exclusive fishery management authority;

    (C)  the seabed and subsoil of the outer Continental Shelf of the United States, the resources of the Shelf, and the waters superjacent to the Shelf; and

    (D)  the recreational, economic, and scenic values of the waters and resources referred to in subclauses (A)–(C) of this clause.

(20) "mobile offshore drilling unit" means a vessel capable of engaging in drilling operations for the exploration or exploitation of subsea resources.

19

## 46 U.S.C. § 2101 General Definitions (continued)

(21) "motor vessel" means a vessel propelled by machinery other than steam.

(22) "nautical school vessel" means a vessel operated by or in connection with a nautical school or an educational institution under section 558 of title 40.

(23) "navigable waters of the United States" includes all waters of the territorial sea of the United States as described in Presidential Proclamation No. 5928 of December 27, 1988.

(24) "oceanographic research vessel" means a vessel that the Secretary finds is being employed only in instruction in oceanography or limnology, or both, or only in oceanographic or limnological research, including studies about the sea such as seismic, gravity meter, and magnetic exploration and other marine geophysical or geological surveys, atmospheric research, and biological research.

(25) "offshore supply vessel" means a motor vessel that regularly carries goods, supplies, individuals in addition to the crew, or equipment in support of exploration, exploitation, or production of offshore mineral or energy resources.

(26) "oil" includes oil of any type or in any form, including petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes except dredged spoil.

(27) "oil spill response vessel" means a vessel that is designated in its certificate of inspection as such a vessel, or that is adapted to respond to a discharge of oil or a hazardous material.

(28) "overall in length" means—

**46 U.S.C. § 2101 General Definitions (continued)**

    (A)   for a foreign vessel or a vessel engaged on a foreign voyage, the greater of—

        (i)   96 percent of the length on a waterline at 85 percent of the least molded depth measured from the top of the keel (or on a vessel designed with a rake of keel, on a waterline parallel to the designed waterline); or

        (ii)   the length from the fore side of the stem to the axis of the rudder stock on that waterline; and

    (B)   for any other vessel, the horizontal distance of the hull between the foremost part of the stem and the aftermost part of the stern, excluding fittings and attachments.

(29) "passenger"—

    (A)   means an individual carried on the vessel except—

        (i)   the owner or an individual representative of the owner or, in the case of a vessel under charter, an individual charterer or individual representative of the charterer;

        (ii)   the master; or

        (iii)   a member of the crew engaged in the business of the vessel who has not contributed consideration for carriage and who is paid for on board services;

    (B)   on an offshore supply vessel, means an individual carried on the vessel except—

## 46 U.S.C. § 2101 General Definitions
### (continued)

       (i)    an individual included in clause (i), (ii), or (iii) of subparagraph (A) of this paragraph;

       (ii)   an employee of the owner, or of a subcontractor to the owner, engaged in the business of the owner;

       (iii)  an employee of the charterer, or of a subcontractor to the charterer, engaged in the business of the charterer; or

       (iv)  an individual employed in a phase of exploration, exploitation, or production of offshore mineral or energy resources served by the vessel;

  (C)    on a fishing vessel, fish processing vessel, or fish tender vessel, means an individual carried on the vessel except—

       (i)    an individual included in clause (i), (ii), or (iii) of subparagraph (A) of this paragraph;

       (ii)   a managing operator;

       (iii)  an employee of the owner, or of a subcontractor to the owner, engaged in the business of the owner;

       (iv)  an employee of the charterer, or of a subcontractor to the charterer, engaged in the business of the charterer; or

       (v)   an observer or sea sampler on board the vessel pursuant to a requirement of State or Federal law; or

**46 U.S.C. § 2101 General Definitions**
    **(continued)**

      (D)   on a sailing school vessel, means an individual carried on the vessel except—

           (i)     an individual included in clause (i), (ii), or (iii) of subparagraph (A) of this paragraph;

           (ii)    an employee of the owner of the vessel engaged in the business of the owner, except when the vessel is operating under a demise charter;

           (iii)an employee of the demise charterer of the vessel engaged in the business of the demise charterer; or

           (iv)a sailing school instructor or sailing school student.

(30) "passenger for hire" means a passenger for whom consideration is contributed as a condition of carriage on the vessel, whether directly or indirectly flowing to the owner, charterer, operator, agent, or any other person having an interest in the vessel.

(31) "passenger vessel" means a vessel of at least 100 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title—

      (A)  carrying more than 12 passengers, including at least one passenger for hire;

      (B)  that is chartered and carrying more than 12 passengers;

      (C)  that is a submersible vessel carrying at least one passenger for hire; or

      (D)  that is a ferry carrying a passenger.

**46 U.S.C. § 2101 General Definitions (continued)**

(32) "product carrier" means a tanker engaged in the trade of carrying oil except crude oil.

(33) "public vessel" means a vessel that—

    (A) is owned, or demise chartered, and operated by the United States Government or a government of a foreign country; and

    (B) is not engaged in commercial service.

(34) "recreational vessel" means a vessel—

    (A) being manufactured or operated primarily for pleasure; or

    (B) leased, rented, or chartered to another for the latter's pleasure.

(35) "recreational vessel manufacturer" means a person engaged in the manufacturing, construction, assembly, or importation of recreational vessels, components, or associated equipment.

(36) "riding gang member" means an individual who—

    (A) has not been issued a merchant mariner document under chapter 73;

    (B) does not perform—

        (i) watchstanding, automated engine room duty watch, or personnel safety functions; or

        (ii) cargo handling functions, including any activity relating to the loading or unloading of cargo, the

**46 .S.C. § 2101 General Definitions (continued)**

> > operation of cargo-related equipment (whether or not integral to the vessel), and the handling of mooring lines on the dock when the vessel is made fast or let go;

> (C) does not serve as part of the crew complement required under section 8101;

> (D) is not a member of the steward's department; and

> (E) is not a citizen or temporary or permanent resident of a country designated by the United States as a sponsor of terrorism or any other country that the Secretary, in consultation with the Secretary of State and the heads of other appropriate United States agencies, determines to be a security threat to the United States.

(37) "sailing instruction" means teaching, research, and practical experience in operating vessels propelled primarily by sail and may include—

> (A) any subject related to that operation and to the sea, including seamanship, navigation, oceanography, other nautical and marine sciences, and maritime history and literature; and

> (B) only when in conjunction with a subject referred to in subclause (A) of this clause, instruction in mathematics and language arts skills to sailing school students having learning disabilities.

(38) "sailing school instructor" means an individual who is on board a sailing school vessel to provide sailing instruction, but does not include an operator or crewmember who is among those

**46 U.S.C. § 2101 General Definitions (continued)**

required to be on board the vessel to meet a requirement established under part F of this subtitle.

(39) "sailing school student" means an individual who is on board a sailing school vessel to receive sailing instruction.

(40) "sailing school vessel" means a vessel—

    (A) that is less than 500 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title;

    (B) carrying more than 6 individuals who are sailing school instructors or sailing school students;

    (C) principally equipped for propulsion by sail, even if the vessel has an auxiliary means of propulsion; and

    (D) owned or demise chartered, and operated by an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 (26 U.S.C. 501(c)(3)) and exempt from tax under section 501(a) of that Code, or by a State or political subdivision of a State, during times that the vessel is operated by the organization, State, or political subdivision only for sailing instruction.

(41)

    (A) Subject to subparagraph (B), "scientific personnel" means individuals on board an oceanographic research vessel only to engage in scientific research, or to instruct or receive instruction in oceanography or limnology.

**46 U.S.C. § 2101 General Definitions (continued)**

    (B)

        (i)   Such term includes an individual who is on board an oceanographic research vessel only to—

            (I)    engage in scientific research;
            (II)   instruct in oceanography or limnology; or
            (III)  receive instruction in oceanography or limnology.

        (ii)  For purposes of clause (i), the age of an individual may not be considered in determining whether the individual is described in such clause.

(42) "seagoing barge" means a non-self-propelled vessel of at least 100 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title making voyages beyond the Boundary Line.

(43) "seagoing motor vessel" means a motor vessel of at least 300 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title making voyages beyond the Boundary Line.

(44) "Secretary" means the Secretary of the department in which the Coast Guard is operating.

(45) "sexual assault" means any form of abuse or contact as defined in chapter 109A of title 18, or a substantially similar offense under State, local, or Tribal law.

(46) "sexual harassment" means—

    (A)  conduct that—

**46 U.S.C. § 2101 General Definitions**
   **(continued)**

     (i)    involves unwelcome sexual advances, requests for sexual favors, or deliberate or repeated offensive comments or gestures of a sexual nature if any—

           (I)    submission to such conduct is made either explicitly or implicitly a term or condition of employment, pay, career, benefits, or entitlements of the individual;

           (II)    submission to, or rejection, of such conduct by an individual is used as a basis for decisions affecting that individual's job, pay, career, benefits, or entitlements;

           (III)  such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile, or offensive work environment; or

           (IV)  conduct may have been by an individual's supervisor, a supervisor in another area, a co-worker, or another credentialed mariner; and

    (ii)    is so severe or pervasive that a reasonable person would perceive, and the victim does perceive, the environment as hostile or offensive;

  (B)  any use or condonation associated with first-hand or personal knowledge, by any individual in a supervisory or command position, of any form of sexual behavior to control, influence, or affect the career, pay, benefits, entitlements, or employment of a subordinate; and

28

## 46 U.S.C. § 2101 General Definitions (continued)

      (C)  any intentional or repeated unwelcome verbal comment or gesture of a sexual nature towards or about an individual by the individual's supervisor, a supervisor in another area, a coworker, or another credentialed mariner.

(47) "small passenger vessel" means a wing-in-ground craft, regardless of tonnage, carrying at least one passenger for hire, and a vessel of less than 100 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title—

      (A)  carrying more than 6 passengers, including at least one passenger for hire;

      (B)  that is chartered with the crew provided or specified by the owner or the owner's representative and carrying more than 6 passengers;

      (C)  that is chartered with no crew provided or specified by the owner or the owner's representative and carrying more than 12 passengers;

      (D)  that is a submersible vessel carrying at least one passenger for hire; or

      (E)  that is a ferry carrying more than 6 passengers.

(48) "steam vessel" means a vessel propelled in whole or in part by steam, except a recreational vessel of not more than 40 feet in length.

(49) "submersible vessel" means a vessel that is capable of operating below the surface of the water.

### 46 U.S.C. § 2101 General Definitions (continued)

(50) "tanker" means a self-propelled tank vessel constructed or adapted primarily to carry oil or hazardous material in bulk in the cargo spaces.

(51) "tank vessel" means a vessel that is constructed or adapted to carry, or that carries, oil or hazardous material in bulk as cargo or cargo residue, and that—

    (A)  is a vessel of the United States;

    (B)  operates on the navigable waters of the United States; or

    (C)  transfers oil or hazardous material in a port or place subject to the jurisdiction of the United States.(52) "towing vessel" means a commercial vessel engaged in or intending to engage in the service of pulling, pushing, or hauling along side, or any combination of pulling, pushing, or hauling along side.

(53) "uninspected passenger vessel" means an uninspected vessel—

    (A)  of at least 100 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title—

        (i)  carrying not more than 12 passengers, including at least one passenger for hire; or

        (ii)  that is chartered with the crew provided or specified by the owner or the owner's representative and carrying not more than 12 passengers; and

**46 U.S.C. § 2101 General Definitions (continued)**

> (B) of less than 100 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title—
>
>> (i) carrying not more than 6 passengers, including at least one passenger for hire; or
>>
>> (ii) that is chartered with the crew provided or specified by the owner or the owner's representative and carrying not more than 6 passengers.

(54) "uninspected vessel" means a vessel not subject to inspection under section 3301 of this title that is not a recreational vessel.

(55) "vessel of war" means a vessel—
> (A) belonging to the armed forces of a country;
>
> (B) bearing the external marks distinguishing vessels of war of that country;
>
> (C) under the command of an officer commissioned by the government of that country and whose name appears in the appropriate service list or its equivalent; and
>
> (D) staffed by a crew under regular armed forces discipline.

(56) "wing-in-ground craft" means a vessel that is capable of operating completely above the surface of the water on a dynamic air cushion created by aerodynamic lift due to the ground effect between the vessel and the water's surface.

## 46 U.S.C. § 3301 - Vessels subject to inspection

The following categories of vessels are subject to inspection under this part:

(1) freight vessels.

(2) nautical school vessels.

(3) offshore supply vessels.

(4) passenger vessels.

(5) sailing school vessels.

(6) seagoing barges.

(7) seagoing motor vessels.

(8) small passenger vessels.

(9) steam vessels.

(10) tank vessels.

(11) fish processing vessels.

(12) fish tender vessels.

(13) Great Lakes barges.

(14) oil spill response vessels.

(15) towing vessels.

**46 U.S.C. § 3305 - Scope and standards of inspection [Effective 12-4-2018 – 12-31-2020]**

(a) (1) The inspection process shall ensure that a vessel subject to inspection--

> (A) is of a structure suitable for the service in which it is to be employed;
>
> (B) is equipped with proper appliances for lifesaving, fire prevention, and firefighting;
>
> (C) has suitable accommodations for the crew, sailing school instructors, and sailing school students, and for passengers on the vessel if authorized to carry passengers;
>
> (D) has an adequate supply of potable water for drinking and washing by passengers and crew;
>
> (E) is in a condition to be operated with safety to life and property; and
>
> (F) complies with applicable marine safety laws and regulations.

(2) In determining the adequacy of the supply of potable water under paragraph (1)(D), the Secretary shall consider--

> (A) the size and type of vessel;
>
> (B) the number of passengers or crew on board;
>
> (C) the duration and routing of voyages; and
>
> (E)  guidelines for potable water recommended by the Centers for Disease Control and Prevention and the Public Health Service.

**46 U.S.C. § 3305 - Scope and standards of inspection (continued)**

(b) If an inspection, or examination under section 3308 of this title, reveals that a life preserver, lifesaving device, or firehose is defective and incapable of being repaired, the owner or master shall destroy the life preserver, lifesaving device, or firehose in the presence of the official conducting the inspection or examination.

(c) A nautical school vessel operated by a civilian nautical school or by an educational institution under section 558 of title 40 shall be inspected like a small passenger vessel or a passenger vessel, depending on its tonnage.

(d)  (1) The Commandant of the Coast Guard shall ensure that Officers in Charge, Marine Inspections consistently interpret regulations and standards under this subtitle and chapter 700 to avoid disruption and undue expense to industry.

    (2)

        (A) Subject to subparagraph (B), in the event of a disagreement regarding the condition of a vessel or the interpretation of a regulation or standard referred to in subsection (a) between a local Officer in Charge, Marine Inspection conducting an inspection of the vessel and the Officer in Charge, Marine Inspection that issued the most recent certificate of inspection for the vessel, such Officers shall seek to resolve such disagreement.

        (B) If a disagreement described in subparagraph (A) involves vessel design or plan review, the Coast Guard marine safety center shall be included in all efforts to resolve such disagreement.

## 46 U.S.C. § 3305 - Scope and standards of inspection (continued)

    (C)  If a disagreement described in subparagraph (A) or (B) cannot be resolved, the local Officer in Charge, Marine Inspection shall submit to the Commandant of the Coast Guard, through the cognizant Coast Guard district commander, a request for a final agency determination of the matter in disagreement.

(3) The Commandant of the Coast Guard shall--

    (A)  provide to each person affected by a decision or action by an Officer in Charge, Marine Inspection or by the Coast Guard marine safety center all information necessary for such person to exercise any right to appeal such decision or action; and

    (B)  if such an appeal is filed, process such appeal under parts 1 through 4 of title 46, Code of Federal Regulations, as in effect on the date of enactment of the Coast Guard Authorization Act of 2017.

(4) In this section, the term "Officer in Charge, Marine Inspection" means any person from the civilian or military branch of the Coast Guard who--

(A) is designated as such by the Commandant; and

(B) under the superintendence and direction of the cognizant Coast Guard district commander, is in charge of an inspection zone for the performance of duties with respect to the inspections under, and enforcement and administration of, subtitle II, chapter 700, and regulations under such laws.

**46 U.S.C. § 3306 – Regulations [Effective 2018-2020]**

(a)    To carry out this part and to secure the safety of individuals and property on board vessels subject to inspection, the Secretary shall prescribe necessary regulations to ensure the proper execution of, and to carry out, this part in the most effective manner for—

   (1)    the design, construction, alteration, repair, and operation of those vessels, including superstructures, hulls, fittings, equipment, appliances, propulsion machinery, auxiliary machinery, boilers, unfired pressure vessels, piping, electric installations, and accommodations for passengers and crew, sailing school instructors, and sailing school students;

   (2)    lifesaving equipment and its use;

   (3)    firefighting equipment, its use, and precautionary measures to guard against fire;

   (4)    inspections and tests related to paragraphs (1), (2), and (3) of this subsection; and

   (5)    the use of vessel stores and other supplies of a dangerous nature.

(b)

   (1)    Equipment and material subject to regulation under this section may not be used on any vessel without prior approval of the Secretary.

   (2)    Except with respect to use on a public vessel, the Secretary may treat an approval of equipment or materials by a foreign government as approval by the Secretary for purposes of paragraph (1) if the Secretary determines that—

**46 U.S.C. 3306 – Regulations**
    **(continued)**

    (A)  the design standards and testing procedures used by that government meet the requirements of the International Convention for the Safety of Life at Sea, 1974;

    (B)  the approval of the equipment or material by the foreign government will secure the safety of individuals and property on board vessels subject to inspection; and

    (C)  for lifesaving equipment, the foreign government—

        (i)  has given equivalent treatment to approvals of lifesaving equipment by the Secretary; and

        (ii)  otherwise ensures that lifesaving equipment approved by the Secretary may be used on vessels that are documented and subject to inspection under the laws of that country.

(c)    In prescribing regulations for sailing school vessels, the Secretary shall consult with representatives of the private sector having experience in the operation of vessels likely to be certificated as sailing school vessels. The regulations shall—

    (1)  reflect the specialized nature of sailing school vessel operations, and the character, design, and construction of vessels operating as sailing school vessels; and

    (2)  include requirements for notice to sailing school instructors and sailing school students about the specialized nature of sailing school vessels and applicable safety regulations.

(d)    In prescribing regulations for nautical school vessels operated by the United States Merchant Marine Academy or by a State maritime academy (as defined in section 51102 of this title), the Secretary shall

**46 U.S.C. 3306 – Regulations**
   **(continued)**

consider the function, purpose, and operation of the vessels, their routes, and the number of individuals who may be carried on the vessels.

(e)    When the Secretary finds it in the public interest, the Secretary may suspend or grant exemptions from the requirements of a regulation prescribed under this section related to lifesaving and firefighting equipment, muster lists, ground tackle and hawsers, and bilge systems.

(f)    In prescribing regulations for offshore supply vessels, the Secretary shall consider the characteristics, methods of operation, and the nature of the service of offshore supply vessels.

(g)    In prescribing regulations for fish processing or fish tender vessels, the Secretary shall consult with representatives of the private sector having experience in the operation of these vessels. The regulations shall reflect the specialized nature and economics of fish processing or fish tender vessel operations and the character, design, and construction of fish processing or fish tender vessels.

(h)    The Secretary shall establish appropriate structural fire protection, manning, operating, and equipment requirements for vessels of at least 100 gross tons but less than 300 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title carrying not more than 150 passengers on domestic voyages, which meet the eligibility criteria of section 2113(4) of this title.

(i)    The Secretary shall establish appropriate structural fire protection, manning, operating, and equipment requirements for former public vessels of the United States of at least 100 gross tons but less that 500 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title carrying

### 46 U.S.C. 3306 – Regulations
###    (continued)

not more than 150 passengers on domestic voyages, which meet the eligibility criteria of section 2113(4) of this title.

(j)    The Secretary may establish by regulation a safety management system appropriate for the characteristics, methods of operation, and nature of service of towing vessels.

(k)

   (1)    Each vessel of the United States that is constructed under a contract entered into after the date of enactment of the Maritime Safety Act of 2010, or that is delivered after January 1, 2011, with an aggregate capacity of 600 cubic meters or more of oil fuel, shall comply with the requirements of Regulation 12A under Annex I to the Protocol of 1978 relating to the International Convention for the Prevention of Pollution from Ships, 1973, entitled "Oil Fuel Tank Protection".

   (2)    The Secretary may prescribe regulations to apply the requirements described in Regulation 12A to vessels described in paragraph (1) that are not otherwise subject to that convention. Any such regulation shall be considered to be an interpretive rule for the purposes of section 553 of title 5.

   (3)    In this subsection the term "oil fuel" means any oil used as fuel in connection with the propulsion and auxiliary machinery of the vessel in which such oil is carried.

(l)
   (1)    The Secretary shall require that a freight vessel inspected under this chapter be outfitted with distress signaling and location technology for the higher of—

**46 U.S.C. 3306 – Regulations**
   **(continued)**

   (A)   the minimum complement of officers and crew specified
         on the certificate of inspection for such vessel; or

   (B)   the number of persons onboard the vessel; and

(2)   the requirement described in paragraph (1) shall not apply
      to vessels operating within the baseline from which the
      territorial sea of the United States is measured.

(m)

(1)   The Secretary shall promulgate regulations requiring
      companies to maintain records of all incremental weight
      changes made to freight vessels inspected under this
      chapter, and to track weight changes over time to facilitate
      rapid determination of the aggregate total.

(2)   Records maintained under paragraph (1) shall be stored, in
      paper or electronic form, onboard such vessels for not less
      than 3 years and shoreside for the life of the vessel.

## 46 U.S.C. § 3307 – Frequency of Inspection

Each vessel subject to inspection under this part shall undergo an initial inspection for certification before being put into service. After being put into service—

(1) each passenger vessel, nautical school vessel, and small passenger vessel allowed to carry more than 12 passengers on a foreign voyage shall be inspected at least once a year; and

(2) any other vessel shall be inspected at least once every 5 years.

**46 U.S.C. § 3308 – Examinations**

In addition to inspections required by section 3307 of this title, the Secretary shall examine or have examined—

    (1) each vessel subject to inspection at proper times to ensure compliance with law and regulations; and

    (2)  crewmember accommodations on each vessel subject to inspection at least once a month or when the vessel enters United States ports to ensure that the accommodations are—

        (A) of the size required by law and regulations;

        (B) properly ventilated and in a clean and sanitary condition; and

        (C) equipped with proper plumbing and mechanical appliances required by law and regulations, and the appliances are in good working condition.

## 46 U.S.C. § 3309 – Certificate of Inspection

(a)     When an inspection under section 3307 of this title has been made and a vessel has been found to be in compliance with the requirements of law and regulations, a certificate of inspection, in a form prescribed by the Secretary, shall be issued to the vessel.

(b)     The Secretary may issue a temporary certificate of inspection in place of a regular certificate of inspection issued under subsection (a) of this section.

(c)     At least 30 days before the current certificate of inspection issued to a vessel under subsection (a) of this section expires, the owner, charterer, managing operator, agent, master, or individual in charge of the vessel shall submit to the Secretary in writing a notice that the vessel—

  (1) will be required to be inspected; or

  (2) will not be operated so as to require an inspection.

(d)     A certificate of inspection issued under this section shall be signed by the senior Coast Guard member or civilian employee who inspected the vessel, in addition to the officer in charge of marine inspection.

## 46 U.S.C. § 3311 – Certification of inspection required

(a)    Except as provided in subsection (b), a vessel subject to inspection under this part may not be operated without having on board a certificate of inspection issued under section 3309 of this title.

(b)    The Secretary may direct the owner, charterer, managing operator, agent, master, or individual in charge of a vessel subject to inspection under this chapter and not having on board a certificate of inspection—

   (1) to have the vessel proceed to mooring and remain there until a certificate of inspection is issued;

   (2) to take immediate steps necessary for the safety of the vessel, individuals on board the vessel, or the environment; or

   (3) to have the vessel proceed to a place to make repairs necessary to obtain a certificate of inspection.

## 46 U.S.C. § 3313 Compliance with certificate of inspection

(a) During the term of a vessel's certificate of inspection, the vessel must be in compliance with its conditions, unless relieved by a suspension or an exemption granted under section 3306(e) of this title.

(b) When a vessel is not in compliance with its certificate or fails to meet a standard prescribed by this part or a regulation prescribed under this part--

   (1) the owner, charterer, managing operator, agent, master, or individual in charge shall be ordered in writing to correct the noted deficiencies promptly;
   (2) the Secretary may permit any repairs to be made at a place most convenient to the owner, charterer, or managing operator when the Secretary decides the repairs can be made with safety to those on board and the vessel;
   (3) the vessel may be required to cease operating at once; and
   (4) if necessary, the certificate shall be suspended or revoked.

(c) The vessel's certificate of inspection shall be revoked if a condition unsafe to life that is ordered to be corrected under this section is not corrected at once.

(d) The owner, charterer, managing operator, agent, master, or individual in charge of a vessel whose certificate has been suspended or revoked shall be given written notice immediately of the suspension or revocation. The owner or master may appeal to the Secretary the suspension or revocation within 30 days of receiving the notice, as provided by regulations prescribed by the Secretary.

**Suits in Admiralty Act**
**46 U.S. Code § 30903 - Waiver of immunity**

(a) In General.—

In a case in which, if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States or a federally-owned corporation. In a civil action in admiralty brought by the United States or a federally-owned corporation, an admiralty claim in personam may be filed or a setoff claimed against the United States or corporation.

(b) Non-Jury.—

A claim against the United States or a federally-owned corporation under this section shall be tried without a jury.

**Suits in Admiralty Act**
**46 U.S. Code § 30904 - Exclusive remedy**

If a remedy is provided by this chapter, it shall be exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United States or the federally-owned corporation whose act or omission gave rise to the claim.

**46 C.F.R. § 72.05–55 - Furniture and furnishings.**

(a)    For the purpose of this subpart, rooms containing "fire resistant furnishings" will be considered to be those in which:

> (1) All case furniture such as desks, wardrobes, dressing tables, bureaus, dressers, etc., shall be constructed entirely of approved incombustible materials; except that a combustible veneer not exceeding ⅛ inch may be used on the top surface of such articles.
> (2) All free standing furniture such as chairs, sofas, tables, etc., shall be constructed with frames of approved incombustible materials.
> (3) All draperies shall be of approved fire resistant fabrics.
> (4) All rugs and carpets shall be of wool or other material having equivalent fire resistive qualities.

(b)    Waste paper baskets shall be constructed of approved incombustible materials with solid sides and bottoms.

(c)    Passageways and stairway enclosures shall contain only fire resistant furnishings. In addition, all upholstery and padding of chairs, sofas, etc., in these areas, shall be of approved fire resistant materials.

### 46 C.F.R. § 116.423 - Furniture and furnishings.

(a) For the purpose of this subpart, rooms containing "fire resistant furnishings" are considered to be those in which:

(1) Furniture such as chairs, sofas, and similar items are tested and meet the requirements in UL 1056 "Fire Test of Upholstered Furniture," or meet the requirements in § 72.05–55 in subchapter H of this chapter.

(2) Case furniture such as bookshelves, desks, cabinets, counters, beds, or other freestanding furniture are constructed in accordance with the requirements in § 72.05–55 (a)(1) in subchapter H of this chapter.

(3) Draperies, curtains and other similar furnishings and decorations are flame resistant. These materials must be tested in accordance with National Fire Protection Association (NFPA) 701 "Fire Tests for Flame Resistant Textiles and Films," and must comply with either the small or large scale tests.

(4) Rugs and carpet may be used in addition to deck coverings. Rugs and carpets must be constructed of 100 percent wool or equivalent as determined by a flame spread rating not exceeding 75 and a smoke developed rating not exceeding 100 when tested according to ASTM E 84 (incorporated by reference, see § 114.600) or have a critical radiant flux not less than 0.8 watts per square centimeter (18 BTU's per hour per square inch) when tested according to ASTM E 648 (incorporated by reference, see § 114.600) "Critical Radiant Flux of Floor–Covering Systems Using a Radiant Heat Energy Source," and with a specific optical density not to exceed 450 in both flaming and nonflaming modes when tested according to ASTM E 662 (incorporated by reference, see § 114.600) "Specific Optical Density of Smoke generated by Solid Materials." Also:

(i) Rugs and carpets shall not extend up bulkheads or vertical surfaces more than 10 centimeters (4 inches) above the deck.

## 46 C.F.R. § 116.423 - Furniture and furnishings.
### (continued)

> (ii) Rugs and carpets are not permitted in machinery spaces, high risk service spaces, or areas where the spillage or leakage of flammable or combustible liquids is possible including areas immediately adjacent to bar service areas.

(b) Passageways and stairway enclosures shall contain only fire resistant furnishings. In addition, all upholstered chairs, sofas, etc., in these areas, shall be tested and meet the requirements in UL 1056 or have padding and upholstery of approved fire resistant materials.

**46 C.F.R. § 175.100 Purpose.**

The purpose of this subchapter is to implement applicable sections of
Subtitle II of Title 46, United States Code, which require the inspection
and certification of small passenger vessels. The regulations in this
subchapter have preemptive effect over State or local regulations in the
same field

**46 C.F.R. § 176.25-50 (1968 & 1995 Version)**

(a) At each initial and subsequent inspection for certification, reinspection and at every other vessel inspection the marine inspector shall require that all observed unsafe practices and hazardous situations be corrected.

(b) At each inspection for certification and reinspection the marine inspector shall examine the bilges and other spaces to see that there is no accumulation of oil or other matter which might create a fire hazard.

**46 C.F.R. § 176.100 - When required.**

(a) A vessel to which this subchapter applies may not be operated without having on board a valid U.S. Coast Guard Certificate of Inspection.

(b) Except as noted in § 176.114 of this part, each vessel inspected and certificated under the provisions of this subchapter must, when any passengers are aboard during the tenure of the certificate, be in full compliance with the terms of the certificate.

(c) If necessary to prevent delay of the vessel, a temporary Certificate of Inspection may be issued pending the issuance and delivery of the regular Certificate of Inspection. The temporary certificate must be carried in the same manner as the regular certificate and is considered the same as the regular Certificate of Inspection that it represents.

(d) A vessel on a foreign voyage between a port in the United States and a port in a foreign country, whose Certificate of Inspection expires during the voyage, may lawfully complete the voyage without a valid Certificate of Inspection provided the voyage is completed within 30 days of expiration and the certificate did not expire within 15 days of sailing on the foreign voyage from a U.S. port.

**46 C.F.R. § 176.500 - When required.**

(a) Vessels carrying more than 12 passengers on international voyages must undergo an inspection for certification each year as specified in § 176.404.

(b) All other vessels must undergo an inspection for certification as specified in § 176.404 and annual inspection as specified in paragraph (b)(1) of this section.

> (1) Annual inspection. Your vessel must undergo an annual inspection within the 3 months before or after each anniversary date.

>> (i) You must contact the cognizant OCMI to schedule an inspection at a time and place which he or she approves. No written application is required.

>> (ii) The scope of the annual inspection is the same as the inspection for certification but in less detail unless the cognizant marine inspector finds deficiencies or determines that a major change has occurred since the last inspection. If deficiencies are found or a major change to the vessel has occurred, the marine inspector will conduct an inspection more detailed in scope to ensure that the vessel is in satisfactory condition and fit for the service for which it is intended. If your vessel passes the annual inspection, the marine inspector will endorse your current Certificate of Inspection.

>> (iii) If the annual inspection reveals deficiencies in your vessel's maintenance, you must make any or all repairs or improvements within the time period specified by the OCMI.

>> (iv) Nothing in this subpart limits the marine inspector from conducting such tests or inspections he or she deems necessary to be assured of the vessel's seaworthiness.

(2) [Reserved]

**46 C.F.R. § 176.600 – Drydock and internal structural examination intervals.**

(a) The owner or managing operator shall make a vessel available for drydock examinations, internal structural examinations, and underwater surveys (UWILD) required by this section.

(b) If your vessel is operated on international voyages subject to SOLAS requirements, it must undergo a drydock examination once every 12 months unless it has been approved to undergo an underwater survey (UWILD) per § 176.615 of this part. If the vessel becomes due for a drydock examination or an internal structural examination during the voyage, it may lawfully complete the voyage prior to the examination if it undergoes the required examination upon completion of the voyage to the United States but not later than 30 days after the examination was due. If the vessel is due for an examination within 15 days of sailing on an international voyage from the United States port, it must undergo the required examination before sailing.

(c) If your vessel is not operated on international voyages and does not meet the conditions in paragraph (d) of this section, it must undergo a drydock and internal structural examination as follows unless it has been approved to undergo an underwater survey (UWILD) per § 176.615 of this part:

    (1) A vessel that is exposed to salt water more than three months in any 12 month period since the last examination must undergo a drydock examination and an internal structural at least once every two years; and

    (2) A vessel that is exposed to salt water not more than three months in any 12 month period since the last examination must undergo a drydock examination and an internal structural examination at least once every five years.

## 46 C.F.R. § 176.600 - Drydock and internal structural examination intervals.
### (continued)

(d) Whenever damage or deterioration to hull plating or structural members that may affect the seaworthiness of a vessel is discovered or suspected, the cognizant OCMI may conduct an internal structural examination in any affected space including fuel tanks, and may require the vessel to be drydocked or taken out of service to assess the extent of the damage, and to effect permanent repairs. The OCMI may also decrease the drydock examination intervals to monitor the vessel's structural condition.

(e) For a vessel that is eligible per § 115.625, and if the owner opts for an alternate hull examination with the underwater survey portion conducted exclusively by divers, the vessel must undergo two alternate hull exams and two internal structural exams within any five-year period. If a vessel completes a satisfactory alternate hull exam, with the underwater survey portion conducted predominantly by an approved underwater remotely operated vehicle (ROV), the vessel must undergo one alternate hull and one internal structural exam, within any five-year period. The vessel may undergo a drydock exam to satisfy any of the required alternate hull exams.

**46 C.F.R. § 176.806 Electrical**

At each initial and subsequent inspection for certification of a vessel, the owner or managing operator shall be prepared to conduct tests and have the vessel ready for inspection of electrical equipment and systems, including the following:

     (a) Inspection of all cable as far as practicable without undue disturbance of the cable or electrical apparatus;

     (b) Test of circuit breakers by manual operation;

     (c) Inspection of fuses including ensuring the ratings of fuses are suitable for the service intended;

     (d) Inspection of rotating electrical machinery essential to the routine operation of the vessel;

     (e) Inspection of all generators, motors, lighting fixtures and circuit interrupting devices located in spaces or areas that may contain flammable vapors;

     (f) Inspection of batteries for condition and security of stowage;

     (g) Operational test of electrical apparatus, which operates as part of or in conjunction with a fire detection or alarms system installed on board the vessel, by simulating, as closely as practicable, the actual operation in case of fire; and

     (h) Operational test of all emergency electrical systems.

## 46 C.F.R. § 176.830. Unsafe practices.

(a) At each inspection for certification and at every other vessel inspection all observed unsafe practices, fire hazards, and other hazardous situations must be corrected and all required guards and protective devices must be in satisfactory condition.

(b) At each inspection for certification and at every other vessel inspection the bilges and other spaces may be examined to see that there is no excessive accumulation of oil, trash, debris, or other matter that might create a fire hazard, clog bilge pumping systems, or block emergency escapes.

**46 C.F.R. § 177.115 Applicability to existing vessels.**

(a) Except as otherwise required by paragraph (b) of this section, an existing vessel must comply with the construction and arrangement regulations that were applicable to the vessel on March 10, 1996, or, as an alternative, the vessel may comply with the regulations in this part.

(b) Alterations, or modifications made to the structure or arrangements of an existing vessel, that are a major conversion, on or after March 11, 1996, must comply with the regulations of this part. Repairs or maintenance conducted on an existing vessel, resulting in no significant changes to the original structure or arrangement of the vessel, must comply with the regulations applicable to the vessel on March 10, 1996, or, as an alternative, with the regulations in this part. However, when outfit items such as furnishings and mattresses are renewed, they must comply with the regulations in this part.

(c) Vessels described by 46 C.F.R. 175.110(d) must comply with the regulations in § 177.500.

**46 C.F.R. § 177.405 - General arrangement and outfitting.**

(a) Fire hazards to be minimized. The general construction of the vessel must be such as to minimize fire hazards insofar as it is reasonable and practicable.

(b) Combustibles insulated from heated surfaces. Internal combustion engine exhausts, boiler and galley uptakes, and similar sources of ignition must be kept clear of and suitably insulated from combustible material. Dry exhaust systems for internal combustion engines on wooden or fiber reinforced plastic vessels must be installed in accordance with ABYC P-1 (incorporated by reference, see 46 CFR 175.600).

(c) Separation of machinery and fuel tank spaces from accommodation spaces. Machinery and fuel tank spaces must be separated from accommodation spaces by boundaries that prevent the passage of vapors.

(d) Paint and flammable liquid lockers. Paint and flammable liquid lockers must be constructed of steel or equivalent material, or wholly lined with steel or equivalent material.

(e) Vapor barriers. Vapor barriers must be provided where insulation of any type is used in spaces where flammable and combustible liquids or vapors are present, such as machinery spaces and paint lockers.

(f) Waste receptacles. Unless other means are provided to ensure that a potential waste receptacle fire would be limited to the receptacle, waste receptacles must be constructed of noncombustible materials with no openings in the sides or bottom.

(g) Mattresses. All mattresses must comply with either:

> (1) The U.S. Department of Commerce "Standard for Mattress Flammability" (FF 4-72.16), 16 CFR Part 1632, Subpart A and not contain polyurethane foam; or

## 46 C.F.R. § 177.405 - General arrangement and outfitting. (continued)

(2) IMO Resolution A.688(17) (incorporated by reference, see 46 CFR 175.600). Mattresses that are tested to this standard may contain polyurethane foam.

## 46 C.F.R. § 177.410 - Structural fire protection.

(a) Cooking areas. Vertical or horizontal surfaces within 910 millimeters (3 feet) of cooking appliances must have an ASTM E–84 (incorporated by reference, see 46 CFR 175.600) flame spread rating of not more than 75. Curtains, draperies, or free hanging fabrics must not be fitted within 910 millimeters (3 feet) of cooking or heating appliances.

(b) Composite materials. When the hull, bulkheads, decks, deckhouse, or superstructure of a vessel is partially or completely constructed of a composite material, including fiber reinforced plastic, the resin used must be fire retardant and meet as accepted by the Commandant as meeting NPFC MIL–R–21607E(SH) (incorporated by reference, see 46 CFR 175.600). Resin systems that have not been accepted as meeting NPFC MIL–R–21607E(SH) may be accepted as fire retardant if they have an ASTM E–84 flame spread rating of not more than 100 when tested in laminate form. The laminate submitted for testing the resin system to ASTM E–84 must meet the following requirements:

(1) The test specimen laminate total thickness must be between 3.2 and 6.4 millimeters ( ⅛ to ¼ inch).

(2) The test specimen laminate must be reinforced with glass fiber of any form and must have a minimum resin content of 40 percent by weight.

(3) Tests must be performed by an independent laboratory.

(4) Test results must include, at a minimum, the resin manufacturer's name and address, the manufacturer's designation (part number) for the resin system including any additives used, the test laboratory's name and address, the test specimen laminate schedule, and the flame spread index resulting from the ASTM E–84 test.

## 46 C.F.R. § 177.410 - Structural fire protection. (continued)

(5) Specific laminate schedules, regardless of resin type, that have an ASTM E–84 flame spread rating of not more than 100 may be considered as equivalent to the requirement in this section to use a fire retardant resin. Requests for qualifying a specific laminate schedule as fire retardant for use in a particular vessel may be submitted for consideration by visitors to the Commanding Officer, Marine Safety Center, U.S. Coast Guard, 2703 Martin Luther King Jr. Avenue SE., Washington, DC 20593, or by mail to: Commanding Officer (MSC), Attn: Marine Safety Center, U.S. Coast Guard Stop 7430, 2703 Martin Luther King Jr. Avenue SE., Washington, DC 205930–7430, in a written or electronic format. Information for submitting the VSP electronically can be found at http://www.uscg.mil/HQ/MSC.

(c) Use of general purpose resin. General purpose resins may be used instead of fire retardant resins if the following additional requirements are met:

(1) Cooking and heating appliances. Galleys must be surrounded by B–15 Class fire boundaries. This may not apply to concession stands that are not considered high fire hazards areas (galleys) as long as they do not contain medium to high heat appliances such as deep fat fryers, flat plate griddles, and open ranges with heating surfaces exceeding 121 °C(250 °F). Open flame systems for cooking and heating are not allowed.

(2) Sources of ignition. Electrical equipment and switch boards must be protected from fuel or water sources. Fuel lines and hoses must be located as far as practical from heat sources. Internal combustion engine exhausts, boiler and galley uptakes, and similar sources of ignition must be kept clear of and suitability insulated from any woodwork or other combustible matter. Internal combustion engine dry exhaust systems must be installed in accordance with ABYC P–1 (incorporated by reference, see 46 CFR 175.600).

**46 C.F.R. § 177.410 - Structural fire protection. (continued)**

    (3) Fire detection and extinguishing systems.

        (i)      Fire detection and extinguishing systems must be installed in compliance with §§ 181.400 through 181.420 of this subchapter.

        (ii)    All fiber reinforced plastic (FRP) vessels constructed with general purpose resins must be fitted with a smoke activated fire detection system of an approved type, installed in accordance with § 76.27 in subchapter H of this chapter, in—

            (A) Accommodation spaces;

            (B) Service spaces; and

            (C) Isolated spaces that contain an ignition source as defined in § 175.400 of this chapter.

    (4) Machinery space boundaries. Boundaries that separate machinery spaces from accommodation spaces, service spaces, and control spaces must be lined with noncombustible panels or insulation approved in accordance with § 164.009 in subchapter Q of this chapter, or other standard specified by the Commandant.

    (5) Furnishings. Furniture and furnishings must comply with § 116.423 in subchapter K of this chapter.

  (d) Limitations on the use of general purpose resin—

    (1) Overnight accommodations. Vessels with overnight passenger accommodations for more than 12 persons must not be constructed with general purpose resin.

**46 C.F.R. § 177.410 - Structural fire protection. (continued)**

    (2) Gasoline fuel systems. Vessels with engines powered by gasoline or other fuels having a flash point of 43.3° C (110° F) or lower must not be constructed with general purpose resin, except for vessels powered by outboard engines with portable fuel tanks stored in an open area aft, if, as determined by the cognizant OCMI, the arrangement does not produce an unreasonable hazard.

    (3) Cargo. Vessels carrying or intended to carry hazardous combustible or flammable cargo must not be constructed with general purpose resin.

**46 C.F.R. § 183.115 Applicability to existing vessels**.

(a)      Except as otherwise required by paragraphs (b) and (c) of this section, an existing vessel must comply with the regulations on electrical installations, equipment, and material that were applicable to the vessel on March 10, 1996, or, as an alternative, the vessel may comply with the regulations in this part.

(b)      An existing vessel must comply with the requirements of §§ 183.420 and 183.430.

(c)      New installations of electrical equipment and material, and the repair or replacement of wire and cable, on an existing vessel, which are completed to the satisfaction of the cognizant Officer in Charge, Marine Inspection (OCMI) on or after March 11, 1996, must comply with this part. Replacement of existing equipment, not including wire or cable, installed on the vessel prior to March 11, 1996 need not comply with the regulations in this part.

## 46 C.F.R. § 183.200 General design, installation, and maintenance requirements.

Electrical equipment on a vessel must be installed and maintained to:

(a) Provide services necessary for safety under normal and emergency conditions;

(b) Protect passengers, crew, other persons, and the vessel from electrical hazards, including fire, caused by or originating in electrical equipment, and electrical shock;

(c) Minimize accidental personnel contact with energized parts; and

(d) Prevent electrical ignition of flammable vapors.

## 46 C.F.R. § 183.340 Cable and wiring requirements.

(a)    If individual wires, rather than cable, are used in systems greater than 50 volts, the wire must be in conduit.

(b)    All cable and wire must:

(1) Have stranded copper conductors with sufficient current carrying capacity for the circuit in which they are used;

(2) Be installed in a manner to avoid or reduce interference with radio reception and compass indication;

(3) Be protected from the weather;

(4) Be installed with metal supports spaced not more than 610 millimeters (24 inches) apart, and in such a manner as to avoid chafing and other damage. The use of plastic tie wraps must be limited to bundling or retention of multiple cable installations, and not used as a means of support, except that on vessels of not more than 19.8 meters (65 feet) in length, installations in accordance with paragraph 14.h of ABYC E-8 and paragraph 15.h of ABYC E-9 (both incorporated by reference; see 46 CFR 175.600) are acceptable as meeting the requirements of this section;

(5) Not be installed with sharp bends;

(6) Be protected by metal coverings or other suitable means if in areas subject to mechanical abuse. Horizontal pipes used for protection shall have 6 millimeter (.25 inch) holes for drainage every 1,520 millimeters (5 feet);

(7) Be suitable for low temperature and high humidity if installed in refrigerated compartments;

(8) Not be located in a tank unless the cable provides power to equipment in the tank; and

(9) Have sheathing or wire insulation compatible with the fluid in a tank when installed as allowed by paragraph (b)(8) of this section.

## 46 C.F.R. § 183.340 Cable and wiring requirements. (continued)

(c)     Conductors in power and lighting circuits must be No. 14 American Wire Gauge (AWG) or larger. Conductors in control and indicator circuits must be No. 22 AWG or larger.

(d)     Cable and wire for power and lighting circuits must:

   (1) Meet Section 310-13 of NFPA 70 (incorporated by reference; see 46 CFR 175.600) except that asbestos insulated cable and dry location cables may not be used;

   (2) Be listed by Underwriters Laboratories (UL), as UL Boat or UL Marine cable; or

   (3) Meet § 111.60-1 in subchapter J of this chapter for cable, and § 111.60-11 in subchapter J of this chapter for wire.

(e)     Cable or wire serving vital systems listed in § 182.710 of this chapter or emergency loads must be routed as far as practicable from high risk fire areas, such as galleys, laundries, and machinery spaces.

(f)     Cable or wire serving duplicated equipment must be separated so that a casualty that affects one cable does not affect the other.

(g)     Each connection to a conductor or terminal part of a conductor must be made within an enclosure and have either:

   (1) A pressure type connector on each conductor;

   (2) A solder lug on each conductor;

   (3) A splice made with a pressure type connector to a flexible lead or conductor; or

   (4) A splice that is soldered, brazed, or welded to a flexible lead or conductor.

(h)     A connector or lug of the set screw type must not be used with a stranded conductor smaller than No. 14 AWG except if there is a nonrotating follower that travels with the set screw and makes pressure contact with the conductor.

69

**46 C.F.R. § 183.340 Cable and wiring requirements. (continued)**

(i)     Each pressure type wire connector and lug must meet UL 486A (incorporated by reference; see 46 CFR 175.600) or other standard specified by the Commandant. The use of twist-on type wire nuts is permitted under the following conditions:

(1) The connections must be made within an enclosure and the insulated cap of the connector must be secured to prevent loosening due to vibration; and

(2) Twist-on type connectors may not be used for making joints in cables, facilitating a conductor splice, or extending the length of a circuit.

(j)     Each terminal block must have 6-32 terminal screws or larger.

(k)     Wire connectors utilized in conjunction with screw type terminal blocks must be of the captive type such as the ring or the flanged spade type.

(l)     A cable must not be spliced in a hazardous location.

(m)     A cable may be spliced in a location, other than a hazardous location, under the following conditions:

(1) A cable installed in a subassembly may be spliced to a cable installed in another subassembly;

(2) For a vessel receiving alterations, a cable may be spliced to extend a circuit;

(3) A cable having a large size or exceptional length may be spliced to facilitate its installation; and

(4) A cable may be spliced to replace a damaged section of the cable if, before replacing the damaged section, the insulation resistance of the remainder of the cable is measured, and it is determined that the condition of the insulation is unimpaired.

(n)     All material in a cable splice must be chemically compatible with all other material in the splice and with the materials in the cable.

## 46 C.F.R. § 183.340 Cable and wiring requirements.

### (continued)

(o)    Ampacities of wires must meet Section 310-15 of NFPA 70 or other standard specified by the Commandant. Ampacities of cable must meet table A6 of IEEE 45-1977 (incorporated by reference; see 46 CFR 175.600) or other standard specified by the Commandant.

(p)    Conductors for direct current systems must be sized so that the voltage drop at the load terminals does not exceed 10 percent. Table 183.340(p) indicates the size of conductor required for corresponding lengths and steady state (stable) values to obtain not more than this voltage drop at the load terminals of a two conductor circuit.

**Table 183.340(p)—Conductor Sizes for Amperes—Lengths**

| Total current on circuit, amperes | Length of conductor in meters (feet) from source of current to most distant fixture | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3.1(10) | 4.5(15) | 6.1(20) | 7.6(25) | 9.2(30) | 10.7(35) | 12.2(40) | 13.7(45) | 15.2(50) | 16.8(55) | 18.3(60) |
| | 12-volts, 2 wire—10 percent drop wire sizes (A.W.G.) | | | | | | | | | | |
| 5 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 12 | 12 | 12 |
| 10 | 14 | 14 | 14 | 12 | 12 | 12 | 10 | 10 | 10 | 10 | 8 |
| 15 | 14 | 14 | 12 | 10 | 10 | 10 | 8 | 8 | 8 | 8 | 8 |
| 20 | 12 | 12 | 10 | 10 | 8 | 8 | 8 | 8 | 6 | 6 | 6 |
| 25 | 10 | 10 | 10 | 8 | 8 | 8 | 6 | 6 | 6 | 6 | 4 |

Other values can be computed by means of the following formula:

$$cm = \frac{K \times I \times L \text{ (x 2 for two-wire circuit)}}{E}$$

Where:
cm=Circular-mil area of conductor
K=3.28 ohms/mil-meter (metric)
=10.75 ohm/mil-foot (english)
(a constant representing the resistance of copper).

71

## 46 C.F.R. § 183.340 Cable and wiring requirements.
### (continued)

I=Load current, in amperes.
L=length of conductor from center of distribution, in meters (feet).
E=Voltage drop at load, in volts.

(q)    If used, each armored cable metallic covering must:

   (1) Be electrically continuous; and

   (2) Be grounded at each end of the run to:

      (i) The metallic hull; or

      (ii) The common ground plate on nonmetallic vessels; and

   (3) Have final sub-circuits grounded at the supply end only.

   (r) A portable or temporary electric cord or cable must be
constructed and used in compliance with the requirements of § 111.60-
13 in subchapter J of this chapter for a flexible electric cord or cable.