No. 24-5064

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

NANCY FIEDLER, Personal Representative of
the ESTATE OF LISA FIEDLER, *et al*.,

Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

On Appeal from the United States District Court
for the Central District of California
No. 2:21cv7065 – Hon. Percy Anderson

_____

## APPELLEE UNITED STATES OF AMERICA'S
## SUPPLEMENTAL ADDENDUM

_____

YAAKOV M. ROTH
   *Acting Assistant Attorney*
   *General, Civil Division*

BILAL A. ESSAYLI
   *United States Attorney*

DAVID M. HARRIS
   *Assistant U.S. Attorney*
   *Chief, Civil Division*

GERARD SINZDAK
   *Assistant Director, Appellate Staff*
   *Civil Division*

ERIC KAUFMAN-COHEN
   *Attorney in Charge, West Coast*
   *Office*
JILL DAHLMANN ROSA
   *Senior Trial Counsel*
SCOTT PERRYGO
   *Trial Attorney*
   U.S. Department of Justice
   Civil Division, Torts Branch
   450 Golden Gate Avenue, 7-5395
   San Francisco, California 94102
   Telephone: (415) 436-6648
   Facsimile: (415) 436-6632
   Eric.Kaufman-Cohen@usdoj.gov
   Jill.Rosa@usdoj.gov
   Scott.Perrygo@usdoj.gov

# TABLE OF CONTENTS

Page(s)

Statutes

6 U.S.C. § 468 ..............................................................................4
14 U.S.C. § 101 .............................................................................5
14 U.S.C. § 501 .............................................................................5
16 U.S.C. § 831 .............................................................................6
16 U.S.C. § 831c ...........................................................................6
18 U.S.C. § 1115 ...........................................................................6
46 U.S.C. § 3315 ...........................................................................7

Regulations

46 C.F.R. § 71.25-15 (1994) ............................................... 7, 8, 9
46 C.F.R. § 175.110 ................................................................9, 10
46 C.F.R. § 175.112 .....................................................................10
46 C.F.R. § 175.400 .....................................................................10
46 C.F.R. § 175.550 .....................................................................11
46 C.F.R. § 176.105 .....................................................................11
46 C.F.R. § 176.110 ................................................................11, 12
46 C.F.R. § 176.400 ...............................................................12, 13
46 C.F.R. § 176.402 ...............................................................13, 14
46 C.F.R. § 176.404 ...............................................................14, 15
46 C.F.R. § 176.610 .....................................................................14
46 C.F.R. § 176.800 ...............................................................15, 16
46 C.F.R. § 176.801 .....................................................................16
46 C.F.R. § 176.802 ...............................................................16, 17
46 C.F.R. § 176.804 ...............................................................17, 18
46 C.F.R. § 176.806 ...............................................................18, 19
46 C.F.R. § 176.808 ...............................................................19, 20
46 C.F.R. § 176.810 ................................................. 20, 21, 22, 23
46 C.F.R. § 176.812 .....................................................................23
46 C.F.R. § 176.814 .....................................................................23
46 C.F.R. § 176.816 .....................................................................23
46 C.F.R. § 176.818 .....................................................................23
46 C.F.R. § 176.830 ...............................................................23, 24
46 C.F.R. § 176.840 .....................................................................24
46 C.F.R. § 177.30-7 (1995) ........................................................24

46 C.F.R. § 182.115 ......................................................... 24, 25

46 C.F.R. § 183.420 ............................................................. 25

46 C.F.R. § 183.430 ............................................................. 25

46 C.F.R. § 185.410 ............................................................. 25

Except for the following, all pertinent statutory and regulatory authorities are set out in the Appellant's previously filed Addendum to Opening Brief.

**6 U.S.C. § 468. Preserving Coast Guard mission performance**

(a) Definitions
  In this section:

   (1) Non-homeland security missions
   The term "non-homeland security missions" means the following missions of the Coast Guard:
     (A) Marine safety.
     (B) Search and rescue.
     (C) Aids to navigation.
     (D) Living marine resources (fisheries law enforcement).
     (E) Marine environmental protection.
     (F) Ice operations.

   (2) Homeland security missions
   The term "homeland security missions" means the following missions of the Coast Guard:
     (A) Ports, waterways and coastal security.
     (B) Drug interdiction.
     (C) Migrant interdiction.
     (D) Defense readiness.
     (E) Other law enforcement.

*** 

(c) Maintenance of status of functions and assets
Notwithstanding any other provision of this chapter, the authorities, functions, and capabilities of the Coast Guard to perform its missions shall be maintained intact and without significant reduction after the transfer of the Coast Guard to the Department, except as specified in subsequent Acts.

*** 

4

**14 U.S.C. § 101. Establishment of Coast Guard**

The Coast Guard, established January 28, 1915, shall be a military service and a branch of the armed forces of the United States at all times.

**14 U.S.C. § 501. Secretary; general powers**

For the purpose of executing the duties and functions of the Coast Guard the Secretary may within the limits of appropriations made therefor:

(a) establish, change the limits of, consolidate, discontinue, and re-establish Coast Guard districts;

(b) arrange with the Secretaries of the Army, Navy and Air Force to assign members of the Coast Guard to any school maintained by the Army, Navy, and Air Force, for instruction and training, including aviation schools;

(c) construct, or cause to be constructed, Coast Guard shore establishments;

(d) design or cause to be designed, cause to be constructed, accept as gift, or otherwise acquire vessels, aircraft, and systems, and subject to applicable regulations under subtitle I of title 40 and division C (except sections 3302, 3501(b), 3509, 3906, 4710, and 4711) of subtitle I of title 41 dispose of them;

(e) acquire land or interests in land, including acceptance of gifts thereof, where required for the purpose of carrying out any project or purpose for which an appropriation has been made;

(f) exchange land or interests in land in part or in full payment for such other land or interests in land as may be necessary or desirable, the balance of such part payment to be defrayable in accordance with other provisions of this section;

(g) exercise any of the powers vested by this title in the Commandant in any case in which the Secretary deems it appropriate; and

(h) do any and all things necessary to carry out the purposes of this title.

## 16 U.S.C. § 831. Creation; short title

For the purpose of maintaining and operating the properties now owned by the United States in the vicinity of Muscle Shoals, Alabama, in the interest of the National defense and for agricultural and industrial development, and to improve navigation in the Tennessee River and to control the destructive flood waters in the Tennessee River and Mississippi River Basins, there is created a body corporate by the name of the "Tennessee Valley Authority" (hereinafter referred to as the "Corporation"). The Board of Directors first appointed shall be deemed the incorporators, and the incorporation shall be held to have been effected from the date of the first meeting of the Board. This chapter may be cited as the "Tennessee Valley Authority Act of 1933."

## 16 U.S.C. § 831c. Corporate powers generally; eminent domain; construction of dams, transmission lines, etc.

Except as otherwise specifically provided in this chapter, the Corporation—

***

(b) May sue and be sued in its corporate name.

***

## 18 U.S.C. § 1115. Misconduct or neglect of ship officers

Every captain, engineer, pilot, or other person employed on any steamboat or vessel, by whose misconduct, negligence, or inattention to his duties on such vessel the life of any person is destroyed, and every owner, charterer, inspector, or other public officer, through whose fraud, neglect, connivance, misconduct, or violation of law the life of any person is destroyed, shall be fined under this title or imprisoned not more than ten years, or both.

When the owner or charterer of any steamboat or vessel is a corporation, any executive officer of such corporation, for the time being actually charged with the control and management of the operation, equipment, or navigation of such steamboat or vessel, who has knowingly and willfully caused or allowed such fraud, neglect, connivance, misconduct, or violation of law, by which the life of any person is destroyed, shall be fined under this title or imprisoned not more than ten years, or both.

**46 U.S.C. § 3315. Disclosure of defects and protection of informants**

(a) Each individual licensed under part E of this subtitle shall assist in the inspection or examination under this part of the vessel on which the individual is serving, and shall point out defects and imperfections known to the individual in matters subject to regulations and inspection. The individual also shall make known to officials designated to enforce this part, at the earliest opportunity, any marine casualty producing serious injury to the vessel, its equipment, or individuals on the vessel.

(b) An official may not disclose the name of an individual providing information under this section, or the source of the information, to a person except a person authorized by the Secretary. An official violating this subsection is liable to disciplinary action under applicable law.

**46 C.F.R. § 71.25-15 (1994). Lifesaving equipment**

(a) At each annual inspection, the inspector shall conduct the following tests and inspections of lifesaving equipment:

    (1) It shall be demonstrated that the air tanks of all lifesaving appliances are airtight.

    (2) Each lifeboat shall be lowered to near the water and then be loaded with its allowed capacity, evenly distributed throughout the length and then be lowered into the water until it is afloat and be released from the falls: Provided, That lifeboats on river ferryboats and on river vessels shall be lowered to the water and afloat before loading. In making this test persons or deadweight may be used. The total weight used shall be at least equal to the allowed capacity of the lifeboat, considering persons to weigh 165 pounds each.

    (3) Each life preserver or wood float shall be examined to determine its serviceability. If found to be satisfactory, it will be stamped "Passed," together with the date, the port, and the inspector's initials. If not in a serviceable condition, the life preserver or wood float shall be removed from the vessel. If the life preserver is beyond repair, it shall be destroyed in the presence of the inspector.

    (4) All lifeboat winch electrical control apparatus shall be opened up and inspected.

7

**46 C.F.R. § 71.25-15 (1994). Lifesaving equipment (continued)**

(5) Where gravity davits are installed, it shall be demonstrated that each lifeboat can be swung out and lowered from any stopped position by merely releasing the brake on the lifeboat winch. The use of force to start the davits or the lifeboat winch will not be permitted.

(6) Inflatable liferafts shall be serviced at an approved servicing facility in accordance with Subpart 160.051 of Subchapter Q (Specifications) of this chapter. Inflatable liferafts shall be serviced at an approved servicing facility every 12 months or not later than the next vessel inspection for certification provided the total time since date of last servicing does not exceed 15 months. The period for servicing is computed from date of last servicing. Except in emergencies no servicing should be done aboard vessels. If at any time external damage is found to the container or straps or if the seal is broken, the Officer in Charge, Marine Inspection, shall be notified and the raft shall be serviced by an approved servicing facility.

Note: After the raft has been satisfactorily serviced in the presence of a marine inspector at an approved servicing facility, the raft is repacked and sealed and the carrying case stamped "passed" together with the date, port, and the inspector's initials.

(7) Where launching devices for inflatable liferafts are installed, the launching device shall be proof tested with a weight equal to the raft and its full complement of persons and equipment.

(8) All other items of lifesaving equipment shall be examined to determine that they are in suitable condition.

(9) A hydraulic release used in the installation of any liferaft, inflatable liferaft, lifefloat, or buoyant apparatus shall undergo the periodic servicing and testing required by Subpart 160.062 of Subchapter Q (Specifications) of this chapter every 12 months which may be extended to 15 months as determined by the date shown on its inspection tag. The springs of a spring-tensioned gripe used in such an installation shall be renewed when the accompanying hydraulic release is serviced and tested.

(b) At each inspection for certification, and more often if necessary, a marine inspector inspects each exposure suit to determine its serviceability. Each

8

**46 C.F.R. § 71.25-15 (1994). Lifesaving equipment (continued)**

exposure suit found not to be in a serviceable condition must be removed from the vessel.

**46 C.F.R. § 175.110. General Applicability**

(a) Except as in paragraph (b) of this section, this subchapter applies to each vessel of less than 100 gross tons that carries 150 or less passengers, or has overnight accommodations for 49 or less passengers, and that -

(1) Carries more than six passengers, including at least one for hire;

(2) Is chartered with a crew provided or specified by the owner or the owner's representative and is carrying more than six passengers;

(3) Is chartered with no crew provided or specified by the owner or the owner's representative and is carrying more than 12 passengers; or

(4) If a submersible vessel, carries at least one passenger for hire; or

(5) Is a ferry carrying more than six passengers.

Note to paragraph (a): For a vessel of less than 100 gross tons that carries more than 150 passengers or has overnight accommodations for more than 49 passengers, see subchapter K of this chapter.

(b) This subchapter does not apply to:

(1) A vessel operating exclusively on inland waters that are not navigable waters of the United States;

(2) An oceanographic research vessel;

(3) A boat forming part of a vessel's lifesaving equipment and that is not used for carrying passengers except in emergencies or during emergency drills;

(4) A vessel of a foreign country that is a party to the International Convention for the Safety of Life at Sea, 1974, as amended (SOLAS), to

9

**46 C.F.R. § 175.110. General Applicability (continued)**

which the United States Government is currently a party, and that has on board a current valid SOLAS Passenger Ship Safety Certificate; or

(5) A vessel of a foreign country, whose government has inspection laws approximating those of the United States and that by its laws accords similar privileges to vessels of the United States, which has on board a current valid certificate of inspection, permitting the carrying of passengers, issued by its government.

**46 C.F.R. § 175.112. Specific applicability for individual parts**

At the beginning of certain parts of this subchapter, a more specific application is given for all or particular portions of that part. This application sets forth the type, size, service, or age of a vessel to which certain portions of that part apply or particular dates by which an existing vessel must comply with certain portions of that part.

**46 C.F.R. § 175.400. Definitions of terms used in this subchapter**

The following terms are used in this subchapter:

***

New vessel means a vessel:

(1) The initial construction of which began on or after March 11, 1996;

(2) Which was issued an initial Certificate of Inspection on or after September 11, 1996;

(3) Which underwent a major conversion that was initiated on or after March 11, 1996; or

(4) Which underwent a major conversion that was completed and for which an amended Certificate of Inspection was issued on or after September 11, 1996.

***

Existing vessel means a vessel that is not a new vessel.

\*\*\*

## 46 C.F.R. § 175.550. Special consideration

In applying the provisions of this subchapter, the OCMI may give special consideration to authorizing departures from the specific requirements when unusual circumstances or arrangements warrant such departures and an equivalent level of safety is provided. The OCMI of each marine inspection zone in which the vessel operates must approve any special consideration granted to a vessel.

## 46 C.F.R. § 176.105. How to obtain or renew

(a) A Certificate of Inspection is obtained or renewed by making application on Form CG 3752, "Application for Inspection of U.S. Vessel," to the Coast Guard OCMI of the marine inspection zone in which the inspection is to be made. Form CG-3752 may be obtained at any U.S. Coast Guard Sector Office or Marine Inspection Office.

(b) The application for initial inspection of a vessel being newly constructed or converted must be submitted prior to the start of the construction or conversion.

(c) The construction, arrangement, and equipment of each vessel must be acceptable to the cognizant OCMI as a prerequisite of the issuance of the initial Certificate of Inspection. Acceptance is based on the information, specifications, drawings and calculations available to the OCMI, and on the successful completion of an initial inspection for certification.

(d) A Certificate of Inspection is renewed by the issuance of a new Certification of Inspection.

(e) The condition of the vessel and its equipment must be acceptable to the cognizant OCMI as a prerequisite to the Certificate of Inspection renewal. Acceptance is based on the condition of the vessel as found at the periodic inspection for certification.

## 46 C.F.R. § 176.110. Routes permitted

(a) The area of operation for each vessel and any necessary operational limits are determined by the cognizant OCMI, and recorded on the vessel's Certificate of Inspection. Each area of operation, referred to as a route, is described on the Certificate of Inspection under the major headings "Oceans," "Coastwise,"

11

**46 C.F.R. § 176.110. Routes permitted (continued)**

"Limited Coastwise," "Great Lakes," "Lakes, Bays, and Sounds," or "Rivers," as applicable. Further limitations imposed or extensions granted are described by reference to bodies of waters, geographical points, distance from geographical points, distances from land, depths of channel, seasonal limitations, and similar factors.

(b) Operation of a vessel on a route of lesser severity than those specifically described or designated on the Certificate of Inspection is permitted unless expressly prohibited on the Certificate of Inspection. The general order of severity of routes is: oceans, coastwise, limited coastwise, Great Lakes, lakes, bays, and sounds, and rivers. The cognizant OCMI may prohibit a vessel from operating on a route of lesser severity than the primary route a vessel is authorized to operate on if local conditions necessitate such a restriction.

(c) Non-self-propelled vessels are prohibited from operating on an oceans, coastwise, limited coastwise, or Great Lakes route unless the Commandant approves such a route.

(d) When designating a permitted route or imposing any operational limits on a vessel, the OCMI may consider:

> (1) Requirements of this subchapter for which compliance is based on the route of the vessel;

> (2) The performance capabilities of the vessel based on design, scantlings, stability, subdivision, propulsion, speed, operating modes, maneuverability, and other characteristics;

> (3) The suitability of the vessel for nighttime operations; and

> (4) The suitability of the vessel for all environmental conditions.

**46 C.F.R. § 176.400. General**

(a) An inspection is required before the issuance of a Certificate of Inspection. Such an inspection for certification is not made until after receipt of the application for inspection required by § 176.105.

**46 C.F.R. § 176.400. General (continued)**

(b) Upon receipt of a written application for inspection, the cognizant OCMI assigns a marine inspector to inspect the vessel for compliance with this subchapter at a time and place mutually agreed upon by the OCMI and the owner, managing operator, or representative thereof.

(c) The owner, managing operator, or a representative thereof shall be present during the inspection.

**46 C.F.R. § 176.402. Initial inspection for certification**

(a) Before construction or conversion of a vessel intended for small passenger vessel service, the owner of the vessel shall submit plans, manuals, and calculations indicating the proposed arrangement, construction, and operations of the vessel, to the cognizant OCMI for approval, except when submitted to the Marine Safety Center (MSC) as allowed by part 177 of this subchapter. The plan, manuals, and calculations required to be submitted and the disposition of these plans are set forth in part 177, Subpart B of this chapter.

(b) The initial inspection is conducted to determine that the vessel and its equipment comply with applicable regulations and that the vessel was built or converted in accordance with approved plans, manuals, and calculations. Additionally, during the inspection, the materials, workmanship, and condition of all parts of the vessel and its machinery and equipment may be checked to determine if the vessel is satisfactory in all respects for the service intended.

(c) The owner or managing operator of a vessel shall ensure that the vessel complies with the laws and regulations applicable to the vessel and that the vessel is otherwise satisfactory for the intended service. The initial inspection may include an inspection of the following items:

> (1) The arrangement, installation, materials, and scantlings of the structure including the hull and superstructure, yards, masts, spars, rigging, sails, piping, main and auxiliary machinery, pressure vessels, steering apparatus, electrical installation, fire resistant construction materials, life saving appliances, fire detecting and extinguishing equipment, pollution prevention equipment, and all other equipment;

> (2) Sanitary conditions and fire hazards; and

**46 C.F.R. § 176.402. Initial inspection for certification (continued)**

(3) Certificates and operating manuals, including certificates issued by the FCC.

(d) During an initial inspection for certification the owner or managing operator shall conduct all tests and make the vessel available for all applicable inspections discussed in this paragraph, and in Subpart H of this part, to the satisfaction of the cognizant OCMI, including the following:

(1) The installation of each rescue boat, liferaft, inflatable buoyant apparatus, and launching appliance as listed on its Certificate of Approval (Form CGHQ-10030).

(2) The operation of each rescue boat and survival craft launching appliance required by part 180 of this chapter.

(3) Machinery, fuel tanks, and pressure vessels as required by part 182 of this chapter.

(4) A stability test or a simplified stability test when required by § 170.175 of this chapter or § 178.320 of this chapter.

(5) Watertight bulkheads as required by part 179 of this chapter.

(6) Firefighting systems as required by part 181 of this chapter.

(7) The operation of all smoke and fire detecting systems, and fire alarms and sensors.

**46 C.F.R. § 176.404. Subsequent inspections for certification**

(a) An inspection for renewal of a Certificate of Inspection is conducted to determine if the vessel is in satisfactory condition, fit for the service intended, and complies with all applicable regulations. It normally includes inspection and testing of the structure, machinery, equipment, and on a sailing vessel, rigging and sails. The owner or operator must conduct all tests as required by the OCMI, and make the vessel available for all specific inspections and drills required by subpart H of this part. In addition, the OCMI may require the vessel to get underway.

**46 C.F.R. § 176.404. Subsequent inspections for certification (continued)**

(b) You must submit your written application for renewal of a Certificate of Inspection to the OCMI at least 30 days prior to the expiration date of the Certificate of Inspection, as required in § 176.105 of this part.

**46 C.F.R. § 176.610. Scope of drydock and internal structural examinations**

(a) A drydock examination conducted in compliance with § 176.600 must be conducted while the vessel is hauled out of the water or placed in a drydock or slipway. During the examination all accessible parts of the vessel's underwater body and all through hull fittings, including the hull plating and planking, appendages, propellers, shafts, bearings, rudders, sea chests, sea valves, and sea strainers shall be made available for examination. Sea chests, sea valves, and sea strainers must be opened for examination. On wooden vessels, fastenings may be required to be pulled for examination. The accuracy of draft or loading marks, if required by § 185.602 of this chapter, must be verified if not verified at a previous drydock examination.

(b) An internal structural examination conducted in compliance with § 176.600 may be conducted while the vessel is afloat or out of the water and consists of a complete examination of the vessel's main strength members, including the major internal framing, the hull plating and planking, voids, and ballast, cargo, and fuel oil tanks. Where the internal framing, plating, or planking of the vessel is concealed, sections of the lining, ceiling or insulation may be removed or the parts otherwise probed or exposed so that the inspector may be satisfied as to the condition of the hull structure. Fuel oil tanks need not be cleaned out and internally examined if the marine inspector is able to determine by external examination that the general condition of the tanks is satisfactory.

**46 C.F.R. § 176.800. Inspection standards**

(a) A vessel is inspected for compliance with the standards required by this subchapter. Machinery, equipment, materials, and arrangements not covered by standards in this subchapter may be inspected in accordance with standards acceptable to the cognizant OCMI as good marine practice.

(b) In the application of inspection standards due consideration must be given to the hazards involved in the operation permitted by a vessel's Certificate of

15

**46 C.F.R. § 176.800. Inspection standards (continued)**

Inspection. Thus, the standards may vary in accordance with the vessel's area of operation or any other operational restrictions or limitations.

(c) The published standards of classification societies and other recognized safety associations may be used as guides in the inspection of vessels when such standards do not conflict with the requirements of this subchapter.

**46 C.F.R. § 176.801. Notice of inspection deficiencies and requirements**

(a) If during the inspection of a vessel, the vessel or its equipment is found not to conform to the requirements of law or the regulations in this subchapter, the marine inspector will point out deficiencies observed and discuss all requirements with the owner, managing operator, or a representative thereof. Normally, the marine inspector will list all such requirements that have not been completed and present the list to the owner, managing operator, or a representative thereof. However, when a deficiency presents a serious safety hazard to the vessel or its passengers or crew, and exists through negligence or willful noncompliance, the marine inspector may issue a Report of Violation (ROV) to the owner, managing operator, or a representative thereof.

(b) In any case where further clarification of or reconsideration of any requirement placed against the vessel is desired, the owner, managing operator, or a representative thereof, may discuss the matter with the cognizant OCMI.

**46 C.F.R. § 176.802. Hull**

(a) At each initial and subsequent inspection for certification of a vessel, the owner or managing operator shall be prepared to conduct tests and have the vessel ready for inspections of the hull structure and its appurtenances, including the following:

> (1) Inspection of all accessible parts of the exterior and interior of the hull, the watertight bulkheads, and weather decks;

> (2) Inspection and operation of all watertight closures in the hull, decks, and bulkheads including through hull fittings and sea valves;

16

**46 C.F.R. § 176.802. Hull (continued)**

(3) Inspection of the condition of the superstructure, masts, and similar arrangements constructed on the hull, and on a sailing vessel all spars, standing rigging, running rigging, blocks, fittings, and sails;

(4) Inspection of all railings and bulwarks and their attachment to the hull structure;

(5) Inspection to ensure that guards or rails are provided in dangerous places;

(6) Inspection and operation of all weathertight closures above the weather deck and the provisions for drainage of sea water from the exposed decks; and

(7) Inspection of all interior spaces to ensure that they are adequately ventilated and drained, and that means of escape are adequate and properly maintained.

(b) The vessel must be afloat for at least a portion of the inspection as required by the marine inspector.

(c) When required by the marine inspector, a portion of the inspection must be conducted while the vessel is underway so that the hull and internal structure can be observed.

**46 C.F.R. § 176.804. Machinery**

At each initial and subsequent inspection for certification of a vessel, the owner or managing operator shall be prepared to conduct tests and have the vessel ready for inspections of machinery, fuel, and piping systems, including the following:

(a) Operation of the main propulsion machinery both ahead and astern;

(b) Operational test and inspection of engine control mechanisms including primary and alternate means of starting machinery;

(c) Inspection of all machinery essential to the routine operation of the vessel including generators and cooling systems;

**46 C.F.R. § 176.804. Machinery (continued)**

(d) External inspection of fuel tanks and inspection of tank vents, piping, and pipe fittings;

(e) Inspection of all fuel system;

(f) Operational test of all valves in fuel lines by operating locally and at remote operating positions;

(g) Operational test of all overboard discharge and intake valves and watertight bulkhead pipe penetration valves;

(h) Operational test of the means provided for pumping bilges; and

(i) Test of machinery alarms including bilge high level alarms.

**46 C.F.R. § 176.806. Electrical**

At each initial and subsequent inspection for certification of a vessel, the owner or managing operator shall be prepared to conduct tests and have the vessel ready for inspection of electrical equipment and systems, including the following:

(a) Inspection of all cable as far as practicable without undue disturbance of the cable or electrical apparatus;

(b) Test of circuit breakers by manual operation;

(c) Inspection of fuses including ensuring the ratings of fuses are suitable for the service intended;

(d) Inspection of rotating electrical machinery essential to the routine operation of the vessel;

(e) Inspection of all generators, motors, lighting fixtures and circuit interrupting devices located in spaces or areas that may contain flammable vapors;

(f) Inspection of batteries for condition and security of stowage;

(g) Operational test of electrical apparatus, which operates as part of or in conjunction with a fire detection or alarms system installed on board the vessel, by simulating, as closely as practicable, the actual operation in case of fire; and

18

**46 C.F.R. § 176.806. Electrical (continued)**

(h) Operational test of all emergency electrical systems.

**46 C.F.R. § 176.808. Lifesaving**

(a) At each initial and subsequent inspection for certification of a vessel, the owner or managing operator shall be prepared to conduct tests and have the vessel ready for inspection of lifesaving equipment and systems, including the following:

>   (1) Tests of each rescue boat and each rescue boat launching appliance and survival craft launching appliance in accordance with § 185.520 of this chapter;

>   (2) Inspection of each lifejacket, work vest, and marine buoyant device;

>   (3) If used, inspection of the passenger safety orientation cards or pamphlets allowed by § 185.506(b)(2) of this chapter;

>   (4) Inspection of each inflatable liferaft, inflatable buoyant apparatus, and inflatable lifejacket to determine that it has been serviced as required by § 185.730 of this chapter; and

>   (5) Inspection of each hydrostatic release unit to determine that it is in compliance with the servicing and usage requirements of § 185.740 of this chapter.

(b) Each item of lifesaving equipment determined by the marine inspector to not be in serviceable condition must be repaired or replaced.

(c) Each item of lifesaving equipment with an expiration date on it must be replaced if the expiration date has passed.

(d) The owner or managing operator shall destroy, in the presence of the marine inspector, each lifejacket, other personal floatation device, and other lifesaving device found to be defective and incapable of repair.

(e) At each initial and subsequent inspection for certification of a vessel, the vessel must be equipped with an adult size lifejacket for each person authorized. The vessel must also be equipped with child size lifejackets equal to at least:

>   (1) 10 percent of the maximum number of passengers permitted to be carried unless children are prohibited from being carried aboard the vessel; or

19

**46 C.F.R. § 176.808. Lifesaving (continued)**

(2) 5 percent of the maximum number of passengers permitted to be carried if all extended size lifejackets are provided.

(f) Lifejackets, work vests, and marine buoyant devices may be marked with the date and marine inspection zone to indicate that they have been inspected and found to be in serviceable condition by a marine inspector.

(g) At each initial and subsequent inspection for certification, the marine inspector may require that an abandon ship or man overboard drill be held under simulated emergency conditions specified by the inspector.

**46 C.F.R. § 176.810. Fire protection**

(a) At each initial and subsequent inspection for certification, the owner or managing operator must be prepared to conduct tests and have the vessel ready for inspection of its fire protection equipment, including the following:

(1) Inspection of each portable fire extinguisher, semi-portable fire extinguisher, and fixed gas fire extinguishing system to check for excessive corrosion and general condition;

(2) Inspection of piping, controls, and valves, and the inspection and testing of alarms and ventilation shutdowns, for each fixed gas fire extinguishing system and detection system to determine that the system is in operating condition;

(3) Operation of the fire main system and checking of the pressure at the most remote and highest outlets;

(4) Testing of each firehose to a test pressure equivalent to its maximum service pressure;

(5) Checking of each cylinder containing compressed gas to ensure it has been tested and marked in accordance with 46 C.F.R. § 147.60;

(6) Testing or renewal of flexible connections and discharge hoses on semi-portable extinguishers and fixed gas extinguishing systems in accordance with 46 C.F.R. § 147.65; and

(7) Inspection and testing of all smoke and fire detection systems, including sensors and alarms.

**46 C.F.R. § 176.810. Fire protection (continued)**

(b) The owner, managing operator, or a qualified servicing facility as applicable must conduct the following inspections and tests:

(1) Portable and semi-portable extinguishers must be inspected and maintained in accordance with NFPA 10 (incorporated by reference, see § 175.600 of this chapter) as amended here:

(i) Certification or licensing by a state or local jurisdiction as a fire extinguisher servicing agency will be accepted by the Coast Guard as meeting the personnel certification requirements of NFPA 10 for annual maintenance and recharging of extinguishers.

(ii) Monthly inspections required by NFPA 10 may be conducted by the owner, operator, person-in-charge, or a designated member of the crew.

(iii) Non-rechargeable or non-refillable extinguishers must be inspected and maintained in accordance with NFPA 10; however, the annual maintenance need not be conducted by a certified person and can be conducted by the owner, operator, person-in-charge, or a designated member of the crew.

(iv) The owner or managing operator must provide satisfactory evidence of the required servicing to the marine inspector. If any of the equipment or records have not been properly maintained, a qualified servicing facility must perform the required inspections, maintenance procedures, and hydrostatic pressure tests. A tag issued by a qualified servicing organization, and attached to each extinguisher, may be accepted as evidence that the necessary maintenance procedures have been conducted.

(2) For fixed-gas fire extinguishing systems, the inspections and tests required by Table 176.810(b) of this section, in addition to the tests required by 46 C.F.R. §§ 147.60 and 147.65. The owner or managing operator must provide satisfactory evidence of the required servicing to the marine inspector. If any of the equipment or records have not been properly maintained, a qualified servicing facility may be required to perform the required inspections, maintenance procedures, and hydrostatic pressure tests.

**46 C.F.R. § 176.810. Fire protection (continued)**

TABLE 176.810(b)—FIXED FIRE EXTINGUISHING SYSTEMS

| Type system | Test |
|---|---|
| Carbon dioxide | Weigh cylinders. Recharge if weight loss exceeds 10 percent of weight of charge. Test time delays, alarms, and ventilation shutdowns with carbon dioxide, nitrogen, or other nonflammable gas as stated in the system manufacturer's instruction manual. Inspect hoses and nozzles to be sure they are clean. |
| Halon | Weigh cylinders. Recharge if weight loss exceeds 5 percent of weight of charge. If the system has a pressure gauge, also recharge if pressure loss (adjusted for temperature) exceeds 10 percent. Test time delays, alarms and ventilation shutdowns with carbon dioxide, nitrogen, or other nonflammable gas as stated in the system manufacturer's instruction manual. Inspect hoses and nozzles to be sure they are clean. |
| Dry Chemical (cartridge operated) | Examine pressure cartridge and replace if end is punctured or if determined to have leaked or to be in unsuitable condition. Inspect hose and nozzle to see if they are clear. Insert charged cartridge. Ensure extinguisher contains full charge. |
| Dry Chemical (stored pressure) | See that pressure gauge is in operating range. If not, or if the seal is broken, weigh or otherwise determine that extinguisher is fully charged with dry chemical. Recharge if pressure is low or if dry chemical is needed. |
| Foam (stored pressure) | See that pressure gauge, if so equipped, is in the operating range. If not, or if the seal is broken, weigh or otherwise determine that extinguisher is fully charged with foam. Recharge if pressure is low or if foam is needed. Replace premixed agent every 3 years. |
| Clean Agents (Halon replacements) | Same as Halon. |

(c) The owner, managing operator, or master must destroy, in the presence of the marine inspector, each firehose found to be defective and incapable of repair.

22

**46 C.F.R. § 176.810. Fire protection (continued)**

(d) At each initial and subsequent inspection for certification, the marine inspector may require that a fire drill be held under simulated emergency conditions to be specified by the inspector.

**46 C.F.R. § 176.812. Pressure vessels and boilers**

(a) Pressure vessels must be tested and inspected in accordance with part 61, subpart 61.10, of this chapter.

(b) Periodic inspection and testing requirements for boilers are contained in § 61.05 in subchapter F of this chapter.

**46 C.F.R. § 176.814. Steering systems**

At each initial and subsequent inspection for certification the owner or managing operator shall be prepared to test the steering systems of the vessel and make them available for inspection to the extent necessary to determine that they are in suitable condition and fit for the service intended. Servo-type power systems, such as orbital systems, must be tested and capable of smooth operation by a single person in the manual mode, with hydraulic pumps secured.

**46 C.F.R. § 176.816. Miscellaneous systems and equipment**

At each initial and subsequent inspection for certification the owner or managing operator shall be prepared to test and make available for inspection all items in the ship's outfit, such as ground tackle, navigation lights and equipment, markings, and placards, which are required to be carried by the regulations in this subchapter, as necessary to determine that they are fit for the service intended.

**46 C.F.R. § 176.818. Sanitary inspection**

At each inspection for certification and at every other vessel inspection, quarters, toilet and washing spaces, galleys, serving pantries, lockers, and similar spaces may be examined to determine that they are serviceable and in a sanitary condition.

**46 C.F.R. § 176.830. Unsafe practices**

(a) At each inspection for certification and at every other vessel inspection all observed unsafe practices, fire hazards, and other hazardous situations must be corrected and all required guards and protective devices must be in satisfactory condition.

**46 C.F.R. § 176.830. Unsafe practices (continued)**

(b) At each inspection for certification and at every other vessel inspection the bilges and other spaces may be examined to see that there is no excessive accumulation of oil, trash, debris, or other matter that might create a fire hazard, clog bilge pumping systems, or block emergency escapes.

**46 C.F.R. § 176.840. Additional tests and inspections**

The cognizant OCMI may require that a vessel and its equipment undergo any additional test or inspection deemed reasonable and necessary to determine that the vessel and its equipment are suitable for the service in which they are to be employed.

**46 C.F.R. § 177.30-7 (1995). Lounge arrangements**

(a) The specific requirements in this section apply to passenger lounge areas located below the main deck. Variation from these requirements may be authorized by the Officer in Charge, Marine Inspection, for unusual arrangements or design: Provided, That there is no significant reduction of space, accessibility or sanitation.

\*\*\*

(d) Covered metal trash containers shall be provided in lounge areas and the spaces shall be maintained to minimize fire and safety hazards and to preserve sanitary conditions. Portable fire extinguishers shall be provided as indicated in Subpart 181.30 of this subchapter.

**46 C.F.R. § 182.115. Applicability; preemptive effect**

(a) Except as otherwise required by paragraphs (b), (c) and (d) of this section, an existing vessel must comply with the regulations on machinery, bilge and ballast system equipment, steering apparatus, and piping systems or components that were applicable to the vessel on March 10, 1996 or, as an alternative, the vessel may comply with the regulations in this part.

(b) New installations of machinery, bilge and ballast system equipment, steering equipment, and piping systems or components on an existing vessel, which are completed to the satisfaction of the cognizant Officer in Charge, Marine Inspection (OCMI) on or after March 11, 1996, must comply with the regulations of this part. Replacement of existing equipment installed on the vessel prior to March 11, 1996, need not comply with the regulations in this part.

24

**46 C.F.R. § 182.115. Applicability; preemptive effect (continued)**

(c) An existing vessel equipped with machinery powered by gasoline or other fuels having a flash point of 43.3 °C (110 °F) or lower must comply with the requirements of § 182.410(c) on or before March 11, 1999.

(d) On or before March 11, 1999, an existing vessel must comply with the bilge high level alarm requirements in § 182.530.

(e) The regulations in this part have preemptive effect over State or local regulations in the same field.

**46 C.F.R. § 183.420. Navigation lights**

All vessels must have navigation lights that are in compliance with the applicable sections of the International and Inland Navigation Rules, except that a vessel of more than 19.8 meters (65 feet) in length must also have navigation lights that meet UL 1104, "Standards for Marine Navigation Lights," or other standard specified by the Commandant.

**46 C.F.R. § 183.430. Portable lights**

Each vessel must be equipped with at least two operable portable battery lights. One of these lights must be located at the operating station and the other at the access to the propulsion machinery space.

**46 C.F.R. § 185.410. Watchmen**

The owner, charterer, master, or managing operator of a vessel carrying overnight passengers shall have a suitable number of watchmen patrol throughout the vessel during the nighttime, whether or not the vessel is underway, to guard against, and give alarm in case of, a fire, man overboard, or other dangerous situation.