Docket No. 24-5064

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

NANCY FIEDLER, et al.,

*Appellants,*

versus

UNITED STATES OF AMERICA,

*Appellee.*

_____

On Appeal from the United States District Court
for the Central District of California
U.S.D.C. Case No. 2-21-cv-07065-PA-MRW
Hon. Percy Anderson, Judge

## APPELLANTS' REPLY BRIEF

Gretchen M. Nelson (112566)
NELSON & FRAENKEL LLP
601 So. Figueroa, Suite 2050
Los Angeles, CA 90017
Telephone: (213) 622-6469
Telecopier: (213)-622-6019
gnelson@nflawfirm.com

John R. Hillsman (71220)
MCGUINN HILLSMAN & PALEFSKY
220 Jackson Street, Suite 350
San Francisco, CA 94111
Telephone: (415) 421-9292
Telecopier: (415) 403-0202
jrhillsman@mhpsf.com

*Counsel for Plaintiffs-Appellants – Add'tl Counsel on Signature Page*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................... 1

II.   ARGUMENT.................................................................................... 3

A. The Applicability of the Discretionary Function Exception Is Not
Evaluated on the Totality of the Inspection and Certification
Policies But, Rather, On Whether Defendant's Agent Had
Discretion as to Each Individual Act ........................................... 3

   1. The Statutes, Regulations and Policies Do Not Vest Coast
   Guard Inspectors with Discretion in Certifying a Vessel or in
   Conducting Inspections........................................................... 5

   2. The Subchapter T Regulations ................................................. 9

   3. The Coast Guard's Internal Guidance, Even if Considered,
   Requires Inspectors to Comply with All Applicable Statutes
   and Regulations ..................................................................... 14

   4. The Coast Guard Testimony is Consistent With The Statutes
   and Regulations ..................................................................... 18

B. Even Assuming Inspectors Had Discretion, Congress Did Not
Intend to Shield the Conduct at Issue Here ............................... 22

C. *Thacker* Provides The Correct Legal Principles For Evaluating
Whether The Discretionary Function Immunity May Be Implied
Into The SIAA............................................................................. 26

   1. Plaintiffs Have Not Waived *Thacker* Because It Is New
   Authority Supporting An Issue That Was Clearly Raised
   Below. .................................................................................... 27

   2. The Principle Underlying *Thacker's* Holding Apply To

i

Immunity Waiving Statutes Generally, And Are Not Limited
To Only Statutes Containing Sue-And-Be-Sued Language..32

CONCLUSION ................................................................................. 37

CERTIFICATE OF COMPLIANCE.................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ali v. Rogers,*
  780 F.3d 1229 (9th Cir. 2015) ............................................................. 34

*ARA Leisure Servs. v. United States,*
  831 F.2d 193 (9th Cir.1987) ........................................................ 22, 23

*Arcadia v. Ohio Power Co.,*
  498 U.S. 73 (1990) ............................................................................. 30

*Aslakson v. United States,*
  790 F.2d 688 (8th Cir.1986) .............................................................. 23

*Auer v. Robbins,*
  519 U.S. 452 (1997) ........................................................................... 17

*Bear Medicine v. United States,*
  341 F.3d 1208 (9th Cir. 2001) ........................................................... 25

*Berkovitz v. United States,*
  486 U.S. 531 (1988) ........................................................................... 22

*Bowen v. Georgetown Univ. Hosp.,*
  488 U.S. 204 (1988) ........................................................................... 17

*Cassens v. St. Louis River Cruise Lines, Inc.,*
  44 F.3d 508 (7th Cir. 1995) ................................................................. 9

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,*
  467 U.S. 837 (1984) ........................................................................... 16

*Christopher v. SmithKline Beecham Corp.,*
  567 U.S. 142 (2012) ........................................................................... 17

*Citizens United v. Fed. Election Comm'n*,
  558 U.S. 310 (2010) .............................................................................. 28

*Curtis v. Irwin Indus., Inc.*,
  913 F.3d 1146 (9th Cir. 2019) ............................................................. 28

*Dearborn v. Mar Ship Operations, Inc.*,
  113 F.3d 995 (9th Cir.1997) ................................................................ 34

*Earles v. United States*,
  935 F.2d 1028 (9th Cir. 1991) .................................................... 2, 27, 36

*Engquist v. Oregon Dept. of Ag.,,*
  478 F.3d 985 (9th Cir. 2007) ............................................................... 28

*Fed. Housing Admin. v. Burr*,
  309 U.S. 242 (1940) .............................................................................. 36

*Galt G/S v. Hapag-Lloyd A.G.*,
  60 F.3d 1370 (9th Cir. 1995) ................................................................. 1

*Gonzalez v. United States*,
  814 F.3d 1022 (9th Cir. 2016.) ............................................................ 25

*In re Glacier Bay*,
  71 F.3d 1447 (9th Cir. 1995) ................................................................. 4

*In re Greene*,
  223 F.3d 1064 (9th Cir. 2000) .............................................................. 30

*Irving v. United States*,
  162 F.3d 154 (1st Cir. 1998) ................................................................ 21

*Kaass Law v. Wells Fargo Bank, N.A.*,
  799 F.3d 1290 (9th Cir. 2015) ............................................................. 31

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991) ................................................................................ 30

*Kennewick Irrigation Dist. v. United States*,
  880 F.2d 1018 (9th Cir. 1989) ............................................................... 4

iv

*Lam v. United States,*
   979 F.3d 665 (9th Cir. 2020) ................................................................ 4

*Lebron v. National R.R. Passenger Corp.,*
   513 U.S. 374 (1995) ............................................................................. 28

*Loper Bright Enterprises v. Raimondo,*
   603 U.S. 369 (2024) ............................................................................. 16

*Nelson v. Adams USA, Inc.,*
   529 U.S. 460 (2000) ............................................................................. 29

*Perez v. Mortgage Bankers Ass'n,*
   575 U.S. 92 (2015) ............................................................................... 16

*Sentry Select Ins. Co. v. Royal Ins. Co. of America,*
   481 F.3d 1208 (9th Cir. 2007) ............................................................... 1

*Smith v. U.S. Coast Guard,*
   220 F.Supp.2d 275 (S.D.N.Y. 2002) ...................................................... 9

*Sweet v. Cardona,*
   121 F.4th 32 (9th Cir. 2024)................................................................. 29

*Thacker v. Tennessee Valley Authority,*
   587 U.S. 218 (2019) ...................................................................... passim

*Thompson v. Runnels,*
   705 F.3d 1089 (9th Cir. 2013) ............................................................. 28

*U.S. Nat'l Bank of Oregon v. Ind. Ins. Agents of Am., Inc.,*
   508 U.S. 439 (1993) ....................................................................... 28, 30

*United States v. Flores-Montano,*
   424 F.3d 1044 (9th Cir. 2005) ............................................................... 1

*United States v. Gaubert,*
   499 U.S. 315 (1995) ............................................................................. 22

*United States v. Pallares–Galan,*
   359 F.3d 1088 (9th Cir. 2004) ............................................................. 38

*United States v. Robertson,*
52 F.3d 789 (9th Cir. 1994) ................................................................... 1


*United States v. Williams,*
846 F.3d 303 (9th Cir. 2017) ................................................................ 29

*Wolf v. Life Ins. Co. of N. Am.,*
46 F.4th 979 (9th Cir. 2022) ................................................................ 31

## Statutes

5 U.S.C. § 553 .................................................................................... 16
14 U.S.C. § 102(1) and (3) ...................................................................... 6
14 U.S.C. § 102(3) ............................................................................. 5, 6
28 U.S.C. §§ 1346(b), 2671 ..................................................................... 2
28 U.S.C. § 2680(a) ............................................................................. 27
46 U.S.C. 3309(a) ................................................................................. 3
46 U.S.C. § 3301 ................................................................................... 6
46 U.S.C. § 3305(a)(1)(E) and (F) ........................................................ 6,7
46 U.S.C. § 3305(d)(1) ..................................................................... 15, 23
46 U.S.C. § 3306 ................................................................................... 6
46 U.S.C. § 3306(a)(1) (2019) ................................................................ 7
46 U.S.C. § 3307 ................................................................................... 6
46 U.S.C. § 3308(1) ............................................................................... 6
46 U.S.C. § 3311 ................................................................................... 7
46 U.S.C.A. § 30903 ........................................................................ 34, 35
46 U.S.C § 3308 ................................................................................... 9

## Rules

Fed.R.App. 32(a)(5) and (6) ................................................................ 40
Fed.R.App. 32(f) ................................................................................. 40

## Regulations

46 C.F.R. § 72.05-55(c) ........................................................................ 20
46 C.F.R. § 72.05-55(a)(2) ..................................................................... 20
46 C.F.R. § 117.410(c)(5) ...................................................................... 20
46 C.F.R. § 176.402(b) (2019) ................................................................. 8
46 C.F.R. § 176.402(c) and § 176.404(a) ................................................... 8
46 C.F.R. § 176.500(b) ........................................................................... 8

46 C.F.R. § 176.500(b)(1) ........................................................................... 9

46 C.F.R. § 176.800 ................................................................................. 10

46 C.F.R. § 176.800(a) ............................................................................ 11

46 C.F.R. § 176.806(a) ............................................................................ 10

46 C.F.R. § 176.830(a) ...................................................................... 12, 18

46 C.F.R. § 177.115(b) ............................................................................ 12

46 C.F.R. § 177.405(f) ............................................................................. 12

# I.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The parties disagree on virtually every significant issue raised by this appeal.

Defendant argues that Plaintiffs waived a legal argument as to whether the discretionary function exception applies to the Suits in Admiralty Act ("SIAA"), 46 U.S.C. §§30901-30916. But that argument goes to this Court's subject matter jurisdiction and is not waivable. *Sentry Select Ins. Co. v. Royal Ins. Co. of America,* 481 F.3d 1208, 1217 (9th Cir. 2007); *Galt G/S v. Hapag-Lloyd A.G.,* 60 F.3d 1370, 1373 (9th Cir. 1995) ("We may review issues regarding subject matter jurisdiction *sua sponte.*").

Moreover, this Court considers issues not presented to the district court where, as here, "the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *United States v. Flores-Montano,* 424 F.3d 1044, 1047 (9th Cir. 2005) quoting *United States v. Robertson,* 52 F.3d 789, 791 (9th Cir. 1994).

1

Defendant next argues that *Earles v. United States,* 935 F.2d 1028 (9th Cir. 1991) is the law of this circuit and binding. Defendant contends that *Thacker v. Tennessee Valley Authority* ("*Thacker*")*,* 587 U.S. 218 (2019), is distinguishable because it dealt with a "sue and be sued" hybrid governmental/commercial corporation.

But that *Earles* is current circuit law or that *Thacker* involved a hybrid corporation, is of no merit. The Supreme Court made clear in *Thacker* that where Congress elects not to write a discretionary function exception into an immunity waiving statute, courts should not import one from the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq*. *Thacker* is the governing Supreme Court precedent, and *Earles* cannot be reconciled with it.

Finally, Defendant asserts that Plaintiffs failed to establish that the Coast Guard had a mandate to "catch **any and all** violations of safety regulations. . ." when inspecting the *Conception*. (RB, p. 17, emphasis added.) Defendant's position is that Coast Guard inspectors

2

can see and ignore a violation because they have absolute discretion in conducting their inspections.[1]

That is not the law.  Congress directs that the Coast Guard issue Certificates of Inspection ("COI") only to those vessels that are compliant with the law.  46 U.S.C. 3309(a).  Here, the Coast Guard issued a COI for the *Conception* when it was clearly *not* in compliance, and for which the Coast Guard had no discretion.

The District Court's order absolving the Defendant of liability for that failure should be reversed.

## II.

## ARGUMENT

### A. The Applicability of the Discretionary Function Exception Is Not Evaluated on the Totality of the Inspection and Certification Policies But, Rather, On Whether Defendant's Agent Had Discretion as to Each Individual Act

In applying the discretionary function exception, Defendant maintains the focus is on the totality of the statutory and regulatory regime.  (RB, pp. 20-21.)  According to Defendant, the specific mandates

---

[1] Defendant concedes "not every aspect of a vessel inspection is necessarily discretionary without exception."  (RB, p. 32.)

3

set forth in the statutes and regulations are irrelevant where there is any measure of discretion afforded.  Where any such modicum of discretion exists, Defendant asserts that the entirety of the policies, statutes and regulations vest inspectors with "discretion to determine which specific regulations to focus on and what items to inspect."  (*Id.,* p. 28.). This is not the law.

In evaluating the discretionary function exception "[t]he proper question to ask is not whether the Government as a whole had discretion at any point, but whether its allegedly negligent agents did in each instance."  *In re Glacier Bay,* 71 F.3d 1447, 1451 (9th Cir. 1995)); see also *Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018, 1025 (9th Cir. 1989) ("[w]e must first consider whether the action is a matter of choice for the acting employee").[2]

---

[2] *Lam v. United States,* 979 F.3d 665 (9th Cir. 2020) does not aid Defendant.  *Lam* addressed whether a national park operational management plan vested park rangers with discretion to trim or remove any particular tree.  Thus, it is unsurprising that there the court stated it "should look at all of the relevant policies in their totality and how they fit together to determine if they are discretionary or mandatory."  *Id.,* at 676.  (RB, p. 20.)

### 1. The Statutes, Regulations and Policies Do Not Vest Coast Guard Inspectors with Discretion in Certifying a Vessel or in Conducting Inspections

Without dispute, the Coast Guard must conduct vessel inspections, which are done for safety purposes. The implementing statute unequivocally mandates: "[t]he Coast Guard shall … administer laws and promulgate and enforce regulations *for the promotion of safety of life and property...*." 14 U.S.C. § 102(3). While the Defendant focuses on the Coast Guard's obligation to *promulgate* regulations, (RB, pp. 4-5), the Coast Guard is also required to *enforce* those regulations. 14 U.S.C. § 102(3).

Defendant contends that the duty to ensure legal compliance is limited to the vessel owner. (RB, p. 22 ["regime imposes safety requirements on vessels and places the duty on vessels to comply with requirements" and "the regulations impose a duty of compliance on the *vessels*, not on the Coast Guard"] emphasis in original.)

This is not what Congress directed.

Congress has mandated that the Coast Guard "*shall* (1) *enforce* or assist in the enforcement of all applicable Federal laws on, under, and over the high seas and waters ...; and (3) administer laws and

5

promulgate *and enforce regulations* for the promotion of safety of life and property...." 14 U.S.C. § 102(1) and (3) (emphasis added).[3]

Congress even mandates the vessels subject to inspection, the scope of the regulations for inspections, the frequency or inspections, and the requirements for issuance of a COI. See, e.g., 46 U.S.C. § 3301 (identifying vessels to be inspected); 46 U.S.C. § 3306 ["to secure the safety of individuals and property on board vessels subject to inspection, the Secretary *shall* prescribe necessary regulations to ensure the proper execution of..." and then identifying vessel areas and equipment to be addressed by regulations]; 46 U.S.C. § 3307 ["[e]ach vessel subject to inspection ... *shall* undergo an initial inspection"]; 46 U.S.C. § 3308(1) ["the Secretary *shall* examine or have examined each vessel subject to inspection at proper times to ensure compliance with law and regulations"]); and 46 U.S.C. § 3309(a) [issuance of a COI "*shall*" only be to a "vessel found to be in compliance with the requirements of law and regulations." (Emphasis added.) And in 46 U.S.C. § 3305(a)(1)(E) and

---

[3] While Congress vested the Coast Guard with some measure of discretion in deciding what regulations to promulgate, the Congressional mandate that the Coast Guard "shall . . . enforce regulations" eliminates any discretion as to its obligation to enforce them. 14 U.S.C. § 102(3).

6

(F), Congress made clear that: "The inspection process *shall* ensure that a vessel subject to inspection—is in a condition to be operated with safety to life and property; and complies with applicable marine safety laws and regulations." (Emphasis added.)[4]

Defendant avoids these mandates by arguing that inspectors have near limitless discretion because Congress "has not mandated *what* regulations the Coast Guard must promulgate, nor how, specifically, it must enforce them." (RB, p. 24.) But Congress dictated the scope of the regulations to be promulgated in 46 U.S.C. § 3306(a)(1) (2019).

Congress also mandated how the inspection process must be enforced. Specifically, under 46 U.S.C. § 3309(a), a COI may only be issued to a compliant vessel. And a vessel that is not in possession of a COI may not operate. 46 U.S.C. § 3311.

The use of language in various regulations such as "may be checked" or "may include" or "normally includes" does *not* show that inspectors are vested with discretion to disregard regulations. (RB, p.

---

[4] Defendant's argument that Plaintiffs cite to a single "shall" in the enabling statutes is wrong. (RB, p. 23.) Congress repeatedly employed the mandatory "shall" in its implementing statutes.

24.)  For example, 46 C.F.R. § 176.402(b) (2019) makes clear that the initial vessel inspection is "conducted to determine that the vessel and its equipment comply with applicable regulations."  The "may be checked" language refers to additional checks inspectors may do beyond those required by regulation.  *Id.*  Far from giving inspectors discretion not to inspect the vessel as required by regulations, it merely allows an inspector to exceed the scope of that required.  The same is true for 46 C.F.R. § 176.402(c) and § 176.404(a) cited by Defendant.

As for Defendant's argument that annual inspections mandated by 46 C.F.R. § 176.500(b) are just "spot checks," (RB, p. 24), nothing about that regulation limits annual inspections.  Rather it makes clear that the "scope of the annual inspection is the same as the inspection for certification but in less detail …."  *Id.*  That an inspection may be in less detail does not call for "spot checks" or otherwise change the fact that all the same areas must still be inspected.[5]  The Coast Guard's

---

[5] Defendant relies on Commander Hodgdon's testimony. (RB, p. 24.) However, her testimony contradicts 46 C.F.R. § 176.500(b) that "the scope of the annual inspection [be] the same."  And it conflicts with Officer Price Larson.  (Compare 4 E.R. 595 [Hodgdon Dep., 168:7-16] with 4 E.R. 620 [Price Larson Dep., 49:1-23].)

witness confirmed: "an annual and a COI very closely resemble each other.  There is not too much difference.  Just that … whereas we may be looking at things from 5 feet away on an annual, on a COI we are actually putting our face up against it and checking it very closely at that point."  (4 E.R. 620; [Price Larson Dep., 49:1-23].)[6]

Echoing the District Court, Defendant relies on *Cassens v. St. Louis River Cruise Lines, Inc.*, 44 F.3d 508 (7th Cir. 1995) and *Smith v. U.S. Coast Guard,* 220 F.Supp.2d 275 (S.D.N.Y. 2002). Neither is binding and as explained in the Opening Brief, *Cassens* and *Smith* conflict with controlling opinions of this Court.  (AOB, p. 62, n. 4, p. 66.)

### 2. The Subchapter T Regulations

Defendant asserts that the Subchapter T regulations do not mandate that the Coast Guard do *anything,* claiming the subchapter only applies to vessel owners.  (RB, pp. 7 and 29.)  Defendant claims

---

[6] The Defendant takes issue with Plaintiffs' claim that annual inspections of the *Conception* were mandated by Congress, arguing that 46 U.S.C § 3307 mandates annual inspections for vessels carrying more than twelve people on a foreign voyage.  (RB, p. 7, n. 4.)  But, in 46 U.S.C § 3308, also cited by Plaintiffs, Congress mandated inspections as proscribed by regulations.  The statute and implementing regulation required annual inspections of *Conception*.  46 C.F.R. § 176.500(b)(1).

Plaintiffs "mischaracterize these regulations" by "omitting the 'owner or managing operator' language." (*Id.,* p. 8, n. 5.)

46 C.F.R. § 176.806(a) states: "[a]t each initial and subsequent inspection for certification of a vessel, the owner or managing operator shall be prepared to conduct tests and have the vessel ready for inspection of electrical equipment and systems, including the following: (a) Inspection of all cable as far as practicable without undue disturbance of the cable or electrical apparatus." *Id.* Defendant argues that such references to "owner and operator" which also appear in 46 C.F.R. § 176.402(c), impose compliance obligations only on vessel owners and operators and not the Coast Guard. (RB, pp. 6-8.) But who determines compliance? The answer, of course, is the Coast Guard.

Subpart H of Section 176, which relates to "Material Inspections," makes clear that "[a] vessel is inspected for compliance with the standards required by this subchapter," 46 C.F.R. § 176.800, including the electrical requirements set forth in 46 C.F.R. § 176.806(a). Although section 176.806 imposes an obligation to be "prepared to conduct tests and have the vessel ready for inspection," this language

10

cannot negate the Coast Guard's inspection and compliance obligations. 46 C.F.R. § 176.800(a).

Defendant insists that Subpart H "says nothing about what Coast Guard inspectors must do other than what tests they *may* require." (RB, p. 8, n. 5, emphasis in original.) As the regulation makes clear, "a vessel is inspected for compliance with the *standards* required by this subchapter." 46 C.F.R. § 176.800(a), (emphasis added). And while the regulation allows some deviation for "[m]achinery, equipment, materials, and arrangements *not covered by standards* in this subchapter. . ." (*id.,* emphasis added), the electrical equipment and other items at issue here were expressly covered.

Section 176.801(a) confirms that inspectors must inspect in accordance with Subpart H because it imposes an obligation on the inspector to identify deficiencies and discuss them with the vessel owner or operator. *Id.,* ["If *during the inspection of a vessel*, the vessel or its equipment is found not to conform to the requirements of law or the regulations in this subchapter, the *marine inspector will* point out deficiencies observed and discuss all requirements with the owner, managing operator, or a representative thereof" (emphasis added)].

11

Similarly, Defendant's contention that 46 C.F.R. § 176.830(a) does not impose any mandate on inspectors because it does not define "fire hazards" or "unsafe practices," (RB, p. 29), contradicts Coast Guard witnesses who testified without hesitation that plastic trash cans or chairs were obvious fire hazards that had to be recorded and reported under section 176.830(a). (2 E.R. 255-257 [Hodgdon Dep., 229:23-231:8]; 3 E.R. 389-390 [Hager Dep. 93;25-94;4].)

Defendant's argument that *Conception* was not required to comply with regulations relating to plastic chairs or trash cans because it was an Old T vessel is incorrect. Regulations require that any change in "outfit items such as furnishings and mattresses" comply with *New T* regulations. 46 C.F.R. § 177.115(b). (See also (2 E.R. 121 [Caputo Dep. 95:6-12]; 3 E.R. 367-375 [Compher Dep. 136:21-145:3].)

Equally specious is Defendant's argument that 46 C.F.R. § 177.405(f) affords inspectors discretion to determine whether a trash can is a fire hazard because it states, "unless other means are provided." (RB, p. 30.) The regulation is not discretionary – it mandates that trash cans be of non-combustible material. It is only if some "other means" is present to "ensure" that a fire would be limited to

12

the trash can, that the receptible may be made of something else. There were no "other means" present on *Conception* and no discretion to allow a plastic trash bin.

Defendant nonetheless insists that inspectors can simply ignore fire hazards like the plastic trash cans and chairs by not observing them. (RB, p. 31.)[7] In the face of the duties imposed by these regulations and reinforced by the corroborating testimony, the argument that inspectors have discretion to simply ignore non-compliant electrical systems or fire hazards would vitiate Congress's intent to ensure the safety of a vessel.[8]

---

[7] The plastic trash can was present on *Conception* from at least 2015 until 2019 and was right in front of the salon each occasion the vessel was inspected. (2 E.R. 267:1-284:6, 286-288; see also 2 E.R. 44; 3 E.R. 499, 500, 503; 4 E.R. 761, 760; 5 E.R. 848-850 (images).) It cannot be summarily argued that it was never observed.

[8] Defendant argues that Plaintiffs mischaracterize the testimony of Chief Warrant Officer Hager. (RB, p. 32, n. 13.) Not so. Hager confirmed that he saw the salon area with the plastic chairs when he boarded the *Conception* for inspections. (3 E.R. 385-386 [Hager Dep.: 64:3-64:19].) He knew that observed fire hazards were required to be marked as a deficiency. (*Id.,* at 389 [93:1-10].) And he testified that plastic chairs are potential fire hazards subject to regulation. (*Id.,* 389-390 [93:20-94:11].) Although he denied knowing what polypropylene was, he knew that plastic chairs are a fire hazard. (*Id.*, 93:25-94:4 ["[a]re you aware that plastic chairs are potentially a fire hazard on

13

### 3. The Coast Guard's Internal Guidance, Even if Considered, Requires Inspectors to Comply with All Applicable Statutes and Regulations.

Defendant relies on the Marine Safety Manual ("Manual"), (RB, pp. 9-12), claiming it does not "prescribe step-by-step procedures that must be used on every inspection." (*Id.,* p. 9.) According to Defendant, the Manual vests vast discretion in inspectors due to a "wide variation in vessels and their operational needs" as well as the alleged "competing goals of promoting safety and facilitating commercial operations." (*Id.,* pp. 11, 12.)

Implicit in this argument is a theme that Defendant makes explicit—that critical safety inspections are subject to variation based on *ad hoc* financial considerations. Defendant claims that the Manual seeks to not "place unnecessary economic and operational burdens upon the maritime industry," (*id.*, p. 12), and it contends that Congress instructed the Coast Guard "to balance competing policy goals and 'interpret regulations and standards under this subtitle . . . to avoid

---

vessels? A: Yes, I think there is a regulation that speaks to – I think we are talking about what are called furnishings"].)

disruption and undue expense to industry. (*Id.,* p. 5, quoting 46 U.S.C. § 3305(d)(1).)

But Congress made clear that its directive to promulgate *and enforce* regulations was for safety purposes. The only financial caveat is that the Coast Guard "*consistently* interpret regulations and standards under this subtitle and chapter 700 to avoid disruption and undue expense to industry." 46 U.S.C § 3305(d)(1) (emphasis added). The term, "consistently," which the Government fails to include in its argument, is critical. It means Coast Guard inspectors should interpret the regulations uniformly, not that they may exercise discretion in applying them. (See AOB, p. 51, n. 13.)

The Manual has no legal relevance to this case. The Government concedes that, the Manual only "provides 'information and guidance.'" (RB, p. 9.) The Manual makes clear that inspectors are bound to enforce the statutes and regulations that govern vessel inspections. (4 E.R. 575 ["[t]he Coast Guard's objective is to administer vessel

15

inspection laws and regulations and promote safe, well-equipped vessels that are suitable for their intended service"].) [9]

This Court need not defer to an agency's interpretation of the law even when a statute is ambiguous. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412-413 (2024) (overruling *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984) and holding that "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous"). And, to the extent the Manual was not issued pursuant to Section 4 of the Administrative Procedures Act, 5 U.S.C. § 553, it does not have the "force and effect of law." *Perez v. Mortgage Bankers Ass'n,* 575 U.S. 92, 96-97 (2015) (distinguishing "legislative rules" issued pursuant to the APA's notice and comment rulemaking, and "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice," and holding that "interpretive

---

[9] Further, the Manual provides: "[t]his document does not establish or change Federal laws or regulations" (4 E.R. 615); "[t]he [Manual] must be used in concert with appropriate marine safety laws and regulations" and "[i]n any case of apparent conflict between provisions of this manual and any statute or regulation, the legal requirements shall be observed." (4 E.R. 609.)

16

rules "'do not have the force and effect of law and are not accorded that weight in the adjudicatory process'").

Even if the Manual had the force of law—it does not—deference is not appropriate where "the agency's interpretation is ' "plainly erroneous or inconsistent with the regulation" ' " or "there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question' " or "when it appears that the interpretation is nothing more than a 'convenient litigating position' " or a " ' "*post hac* rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack.' " *Christopher v. SmithKline Beecham Corp.,* 567 U.S. 142, 154 (2012) quoting *Auer v. Robbins,* 519 U.S. 452, 461-62 (1997) and *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988).

Defendant's argument that the Manual vests inspectors with so much discretion that the statutory and regulatory inspection regime becomes nothing more than a collection of recommendations, smacks of a "convenient litigating position" or a "*post hac* rationalization" to eliminate the Government's liability for the *Conception* tragedy.

17

Defendant fails to demonstrate that the District Court was not in error when it relied on the Manual to override the mandates imposed by the applicable statutes and regulations.  (1 E.R. 8-9.)

### 4. The Coast Guard Testimony is Consistent With The Statutes and Regulations.

Defendant claims "Plaintiffs' questions did not pinpoint *who* was bound by the regulatory mandates at issue." (RB, p. 34, emphasis in original.)  Not true.  Commander Hodgdon's testimony makes clear that the duty to ensure that trash cans were not plastic was a mandate imposed on *Conception*'s inspectors.  (2 E.R. 255-257 [Hodgdon Dep. 229:23-231:8: "And w[h]ere such a fire hazard, a non-steel trash can is observed, at least according [to] 176.830, the inspector should take action to correct it. True? Answer: Yes."].)

The Government's argument that "no one testified that the regulations placed a mandate on the Coast Guard" (RB, p. 34) is also inaccurate.  Commander Hodgdon testified that 46 C.F.R. § 176.830(a) is a mandate to Coast Guard inspectors.  (2 E.R. 255-260 [Hodgdon Dep., 229:23-236:3].)  "Question: Now given that hypothetical, can we agree that a marine inspector had a mandatory duty to list that

18

deficiency [plastic trash can], to log it, and to ensure that it had been rectified. Answer: Per policy, yes." (2 E.R. 259-260 [Hodgdon Dep., 235:24-236:3].) [10]

Next the Government repeats its argument that Plaintiffs "ignore the distinction between Old T regulations and New T Regulations because Old T apparently only barred plastic trash cans below the main deck. (RB, p. 34-36.)  Plaintiffs have made clear that the conduct at issue is governed by New T Regulations.  (*Supra*, p. 16).  The argument that Old T regulations purportedly only barred plastic trash cans below deck is simply make-weight given the mandate of 46 C.F.R. §§ 176.830(a) and 177.115(b).[11]

---

[10] Defendant argues there is no evidence any inspector saw "any deficiency that, in his discretion, constituted a hazard to the vessel." (RB, p. 34.)  But the plastic trash can that Boylan's prosecutors identified as the source of the fire was in plain sight for years and a multitude of inspections occurred during that time. (*Supra* p. 16, n. 7.) Commander Hodgdon's testimony made clear the "easiest" example of a fire hazard "would be a non-steel trash can," (2 E.R. 256 [Hodgdon Dep., 230:17-24].)

[11] Section 177.115(b) does not apply only to "furnishings" but "*outfit items* such as furnishings and mattresses."  (*Id.,* emphasis added.) Thus, new trash cans are governed by New T regulations.  (See also, *supra,* p. 16.)

The Government argues that the New T regulations do not ban plastic deck chairs. They do. 46 C.F.R. § 117.410(c)(5) provides that "general purpose resins" may be used instead of fire retardant resins if "[f]urniture and furnishings [ ] comply with § 116.423." Section 116.423(a)(2) specifies that ". . . other freestanding furniture [be] constructed in accordance with the requirements in § 72.05-55(a)(1) . . ." And 46 C.F.R. § 72.05-55(a)(2) requires that "all free standing furniture such as chairs, sofas, tables, etc., shall be constructed with frames of approved *incombustible* materials." (Emphasis added.) Defendant's argument disregards this plain language.

Moreover, 46 C.F.R. § 72.05-55(c) states that "passageways and stairway enclosures shall contain only fire-resistant furnishings." *Id.,* § 72.05-55(c). Defendant claims that the plastic chairs were acceptable on the *Conception* because they allegedly were not in a passageway. (RB, p. 36, n. 15.) But those chairs forested the salon—the only passageway by which passengers could reach the open deck. (4 E.R. 760, 761 [images]; 3 E.R. 425, 430, 503, 504 [images].) This violated both Sections 72.05-55(a)(2) and 72.05-55(c).

Defendant contends that "anecdotal testimony" is a "last ditch resort" for analyzing policies. (RB, p. 34, citing *Irving v. United States,* 162 F.3d 154, 166 (1st Cir. 1998) *en banc*.) In *Irving*, the court declined to consider testimony of certain agency witnesses because their testimony either conflicted with the statutes or regulations or was sufficiently ambiguous to render it "insufficient to alter the nature of the actions as defined by authoritative formal and informal sources." 162 F.3d at 167.

Here, in contrast, the Coast Guard testimony corroborates the regulatory language and confirms inspectors are required to enforce the regulations, including regulations regarding fire hazards, trash cans, furnishings and electrical components. (See *supra*, pp. 15-16; see also AOB, pp. 18-19, 22-25).[12]

---

[12] No matter how Defendant tries to avoid the fact that no inspection of the electrical systems of *Conception* was done in February 2019, it is undisputed that no inspection was identified in the MISLE system as required. And, Chief Warrant Officer Hager could not recall inspecting the electrical system. (3 E.R. 358-360; 393-396 [Hager Dep. 127:16-128-21; 132:12-133:3] 2 E.R. 116 [Hager Dep., 130:19-131:25].)

21

### B. Even Assuming Inspectors Had Discretion, Congress Did Not Intend to Shield the Conduct at Issue Here.

Under the Supreme Court's two-step analysis to determine the applicability of the discretionary function exception, *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988), the first step requires finding whether the challenged actions involve an "element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1995). Where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," *Berkovitz*, 486 U.S. at 536, discretionary function cannot bar a claim. Plaintiffs identify many statutes and regulations directing mandatory action.

But even where there is discretion, courts must decide whether the "judgment is of the kind that the discretionary function exception was designed to shield" which are "governmental actions and decisions based on considerations of public policy." *Berkovitz*, 486 U.S. at 536–37.

This Court has held that the discretionary function exception is not applicable "'where the challenged governmental activity involves safety considerations under an established policy rather than the balancing of competing public policy considerations.'" *ARA Leisure*

22

*Servs. v. United States*, 831 F.2d 193, 195 (9th Cir.1987) (quoting

*Aslakson v. United States,* 790 F.2d 688, 693 (8th Cir.1986).)

Defendant argues that Congress ordered the Coast Guard to

"avoid disruption and undue expense to industry" in vessel inspections.

(RB, p. 39, quoting 46 U.S.C. § 3305(d)(1).)  Defendant's reliance on that

statute is misplaced.  (*Supra*, 19.)  Congress mandated vessel

inspections to ensure the safety of passengers and property and gave no

leeway for the industry's financial interests.  *Id.*  The Coast Guard's

Strategic Plan 2018-2022 (RB, p. 40 citing 4 ER 651), and the Manual

(RB, p. 40), cannot and do not override or displace that unwavering

Congressional mandate.  Nor can it be credibly argued that requiring

plastic trash bins and chairs to be replaced with metal ones would

disrupt commerce or impose a significant financial burden.

Next, Defendant argues that policy considerations are inherent in

the Coast Guard's need to evaluate each vessel's unique characteristics

and balance those against promoting a uniform level of safety.  (RB, pp.

40-42.)  But there is nothing about the statutes or regulations at issue

here that requires an evaluation of any vessel characteristic or

operational limits.  Nor does the Manual give Coast Guard inspectors a

23

pass in deciding whether to allow non-compliant plastic chairs, trash bins or electrical wiring.

Defendant claims the Manual mandates that inspectors "must consider situations in which regulations that seem applicable are actually inappropriate for the situation or not in the best interest of overall safety." (RB, p. 41.) Defendant stretches the Manual's language which states only that "an inspector must take care to ensure that each regulation being applied is relevant to the vessel and situation." The Manual states nothing more than that an inspector ensure that he/she is applying the regulations to a vessel.

Defendant's argument that a "one-size-fits-none approach is not the vessel safety regime that Congress ordered the Coast Guard to implement, and would directly harm future passenger vessel safety" is completely misplaced. (RB, p. 42.) Of course, the regulations vary depending on the type of vessel, but Congress made clear that the Coast Guard was to consider the various types of marine vessels when implementing the regulations. (46 U.S.C. §§ 3301, 3305, 3306.) The regulations already account for those differences. They do not render

24

marine inspections a free-for-all granting inspectors license to ignore

any given regulation under the pretense of "discretion."

Last, Defendant insists the Coast Guard must balance resources,

asserting legal accountability leads to the alteration of priorities or may

require additional appropriations from Congress.  (RB, pp. 43-46.)  But

financial considerations as to the Coast Guard's various missions do not

implicate policy-based decisions.  The inspection mandates are

Congressionally ordered, and the Coast Guard has implemented the

inspection regime.  Requiring Coast Guard inspectors to enforce those

regulations does not alter the fact that the inspections are conducted

annually and are thus considered by the Coast Guard in setting

priorities and allocating financial resources.  Moreover, if Congress had

wanted to enshroud the inspection regime with immunity, it could have

done so through its many legislative acts.

In addressing the "design-implementation" analysis outlined in

*Bear Medicine v. United States,* 341 F.3d 1208, 1217 (9th Cir. 2001),

Defendant claims it only applies where "'a private party would likely be

held liable for the same conduct or omission.'"  (RB, p. 44, quoting

*Gonzalez v. United States,* 814 F.3d 1022, 1036 (9th Cir. 2016.)

25

Defendant argues that a private party would not be held liable for the same conduct or omission. But *Conception's* Captain *was* convicted of Seaman's Manslaughter for failing to comply with Coast Guard regulations. Any private party that failed to properly inspect the *Conception* pursuant to the statutes and regulations, or allowed the vessel to sail in a non-compliant condition would unquestionably be liable for the tragic deaths of thirty-four people. So, too, must the Coast Guard.

## C. *Thacker* provides the correct legal principles for evaluating whether the discretionary function immunity may be implied into the SIAA

Defendant attacks *Thacker v. Tennessee Valley Authority*, 587 U.S. 218 (2019), for its holding that the discretionary function exception may not be implied into a statute that waives sovereign immunity, such as the SIAA. Defendant asserts, alternatively, Plaintiffs have waived the argument, and that *Thacker* is distinguishable because it construes an unrelated statute that applies to unrelated entities. Defendant's arguments fall flat.

### 1. Plaintiffs Have Not Waived *Thacker* Because It Is New Authority Supporting An Issue That Was Clearly Raised Below.

Appellants are permitted to raise new arguments in support of existing claims or issues. Here, the issue of the discretionary function immunity's application to claims arising under the SIAA was the exclusive issue Defendant raised in its motion to dismiss. (3 ER 541-561.) Defendant devoted a significant portion of its motion to an explanation of the waiver of sovereign immunity under the SIAA and its contention that discretionary function immunity was nevertheless a carve out to that waiver. (3 ER 532-534, 541-544.) Defendant flatly asserted that "[t]he exception, explicitly stated in the Federal Tort Claims Act, 28 U.S.C. § 2680(a), is implied in the Suits in Admiralty Act. *Earles v. United States*, 935 F.2d 1028, 1032 (9th Cir. 1991)." (3 ER 542.)

While Plaintiffs did not cite *Thacker*, Plaintiffs addressed all of Defendant's arguments in their opposition. (2 E.R. 143-180.) As presented by Defendant, the issue resolved by the District Court was whether discretionary immunity nevertheless applied to Plaintiffs' claims which all arose under the SIAA's waiver of sovereign immunity.

27

*Thacker* provides additional authority concerning an issue otherwise briefed below.

It is axiomatic that "'parties are not limited to the precise arguments they made below.'" *Lebron v. National R.R. Passenger Corp*., 513 U.S. 374, 379 (1995); *see also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010) (allowing plaintiffs to raise a new argument on appeal to support a "consistent claim" that a statute violated First Amendment rights); *Engquist v. Oregon Dept. of Ag.*, 478 F.3d 985, 996, n. 5 (9th Cir. 2007) (even in the face of a claim of waiver, the court will hear new arguments on appeal if they are "intertwined with the validity of the claim"); *United States v. Pallares–Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004) ("[I]t is claims that are deemed waived or forfeited, not arguments"); *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013) (the court "'is free to "consider an issue antecedent to ... and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief'" quoting *U.S. Nat'l Bank of Oregon v. Ind. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993)).  In short, this Court may consider new legal arguments raised by the parties relating to claims previously raised in the litigation. *Curtis v. Irwin Indus., Inc*.,

28

913 F.3d 1146, 1156 (9th Cir. 2019) ("'it is claims that are deemed waived or forfeited, not arguments.'")

As an adjunct, *Sweet v. Cardona*, 121 F.4th 32 (9th Cir. 2024), addressed a waiver argument based on a party's failure to cite a particular case. The court explained that "a party does not have to cite a particular case to adequately raise an issue." *Id.,* at 44, citing *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000) ("[T]his principle [of preserving an issue] does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue.")

Here, the district court was on notice that Defendant was seeking to have it imply a discretionary function exception to the SIAA's waiver of sovereign immunity, immunizing them from liability. That Plaintiffs did not cite to *Thacker* does not alter the fact that this is not a new issue, but, rather, a new argument, and thus is not waived. *United States v. Williams*, 846 F.3d 303, 311 (9th Cir. 2017) (a party does not waive or forfeit arguments relating to claims it properly presents to the district court)

This Court must apply the correct legal standard to resolve the applicability of discretionary function immunity to Plaintiffs' claims. "The Supreme Court has made clear that in adjudicating a claim or issue pending before us, we have the authority to identify and apply the correct legal standard, whether argued by the parties or not. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). Once "an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties." *Id*. Instead, the court "retains the independent power to identify and apply the proper construction of governing law," *id*., and is free to "'consider an issue antecedent to ... and ultimately dispositive' of the dispute before it, even an issue the parties fail to identify and brief." *U.S. Nat'l Bank of Oregon v. Ind. Ins. Agents of Am., Inc*., 508 U.S. 439, 447 (1993) (quoting *Arcadia v. Ohio Power Co*., 498 U.S. 73, 77 (1990)); see also *In re Greene*, 223 F.3d 1064, 1068, n. 7 (9th Cir. 2000) (court could consider statutory interpretation argument not raised because, "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties" (quoting *Ind. Ins. Agents*, 508 U.S. at 446)).

30

That courts should apply the correct legal standard is integral to judicial administration and the common law system. If the rule were otherwise, courts could apply one or the other version of the law as argued by the parties. This would divest courts of their independent obligation to say what the law is generating holdings that affirm the parties previously argued interpretations of the law, irrespective of their objective correctness or the extent to which these positions taken by the parties are the results of vociferous advocacy or outright gamesmanship.

In any event, an "issue" raised for the first time on appeal may be considered "where 'the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court.'" *Wolf v. Life Ins. Co. of N. Am*., 46 F.4th 979, 985 (9th Cir. 2022) quoting *Kaass Law v. Wells Fargo Bank, N.A*., 799 F.3d 1290, 1293 (9th Cir. 2015).

The application of *Thacker* presents a question of pure law: whether discretionary function immunity may be implied into the SIAA, a statutory scheme that waives sovereign immunity and does not

31

contain an express discretionary function carveout.  Defendant

identifies no prejudice by having this Court address the case.

> ### 2. The Principles Underlying *Thacker*'s Holding Apply To Immunity Waiving Statues Generally, And Are Not Limited To Only Statutes Containing Sue-And-Be-Sued Language

Defendant confronts *Thacker* by arguing that the "Tennessee

Valley Authority ("TVA"), is a hybrid government-commercial

corporation with a unique enabling statute, the Tennessee Valley

Authority Act."  (RB, p. 54.)  Defendant flatly asserts that "[t]he

*Thacker-Burr* analysis is unique to sue-and-be-sued clauses and entities

and is inapplicable to the SIAA or any other waivers of sovereign

immunity."  (*Id*, p. 55.)  These arguments miss the mark.

*Thacker* does not directly address the SIAA.  (AOB, p. 38.)

Rather, *Thacker* provides a parallel analysis of a statute—the TVA

Act—that waived sovereign immunity and did not contain a

discretionary function exception. 587 U.S. at 223.  *Thacker* provides the

Supreme Court's framework for determining when a discretionary

function exception may be read into a  waiver of sovereign immunity.

32

Defendant argues that *Thacker* only applies to "sue-and-be-sued" clauses" which it contends the SIAA does not contain. But the "sue-and-be-sued" language *Thacker* addressed in the TVA Act does not carry some talismanic force that sets it apart from any other waiver of sovereign immunity. Instead, this phrasing is merely a shorthand reference to a waiver of sovereign immunity. To this end, the Supreme Court defined the term "sue-and-be-sued" with the following explanation: "Nothing in the statute establishing the TVA … expressly recognizes immunity for discretionary functions … that law provides simply that the TVA "'[m]ay sue and be sued'" … Such a sue-and-be-sued clause serves only to waive sovereign immunity otherwise belonging to an agency of the Federal Government." 587 U.S. at 223.

Though the SIAA does not employ the precise "sue-and-be-sued" phrase, and is not concerned directly with "commercial activity," it addresses the unique ambit of claims and public entities for which the SIAA waives sovereign immunity:

> A civil action in admiralty in personam may be brought against the United States or a federally-owned corporation. In a civil action in admiralty brought by the United States or a federally-owned corporation, an admiralty claim in personam

33

> may be filed or a setoff claimed against the United States or
> corporation.

46 U.S.C.A. § 30903. Rephrased in contemporary terms: "[I]f a vessel is

owned by the United States, and someone is harmed by the vessel or

one if its employees, and the harm is one for which, if the vessel were

privately owned, the harmed individual could have sued its owner in

admiralty, then the person can bring—indeed, must bring—that

admiralty claim against the United States." *Ali v. Rogers*, 780 F.3d

1229, 1233 (9th Cir. 2015); see *Dearborn v. Mar Ship Operations, Inc.*,

113 F.3d 995, 996 (9th Cir.1997) (through the SIAA, government is

subject to "the same liability ... as is imposed by the admiralty law on

the private shipowner"). It cannot be seriously argued that the SIAA's

phrasing of its sovereign immunity waiver, which has its roots in the

vernacular of the 1920s, is not a "sue-and-be-sued" clause.

Defendant's contention that the analysis outlined in *Thacker* vis-

à-vis the TVA Act only applies to "sue-and-be-sued" entities also fails.

Congress narrowly tailored the SIAA to address the ambit of liability

arising from harm caused by vessels, and their employees, that are

owned by the United States or federally-owned corporations.

Unquestionably, the TVA Act addressed liability arising in connection

with the commercial activity engaged in by the public corporation the
Tennessee Valley Authority, but this is a distinction without a
difference.

To the extent Congress has the inherent authority to limit the
ambit of sovereign immunity for "hybrid government-corporate" entities
(RB, p. 54), it has the identical authority to limit sovereign immunity in
"civil actions in admiralty" as may be brought against federally owned
corporations and the United States. 46 U.S.C.A. § 30903. As *Thacker*
explained: "Congress generally 'intend[s] the full consequences of what
it sa[ys]'—even if 'inconvenient, costly, and inefficient.'" 587 U.S. at 224.

*Thacker* did narrowly recognize circumstances where, for statutes
that waive sovereign immunity but do not contain a discretionary
function exception, "a court should recognize 'an implied restriction.'"
*Id*. Accordingly, "a court should take that route if one of the following
circumstances is 'clearly shown': either the 'type[ ] of suit [at issue is]
not consistent with the statutory or constitutional scheme' or the
restriction is 'necessary to avoid grave interference with the
performance of a governmental function.'" *Id*. *Thacker* explained that
"[t]he possibility of immunity arises only when a suit challenges

35

governmental activities—the kinds of functions private parties typically do not perform. And even then, an entity with a sue-and-be-sued clause may receive immunity only if it is 'clearly shown' that prohibiting the 'type[ ] of suit [at issue] is necessary to avoid grave interference' with a governmental function's performance. … That is a high bar." *Thacker*, 587 U.S. at 228, quoting *Fed. Housing Admin. v. Burr*, 309 U.S. 242, 245 (1940).  In other words, *Thacker* stands for the proposition that discretionary function exception to waivers of sovereign immunity is broader than the "clearly shown to gravely interfere with governmental performance" that would otherwise implicate the continued existence of sovereign immunity, notwithstanding the applicable immunity waiver statute.

Defendant offers no justification for countermanding Congress' manifest intent not to include a discretionary function exception in the SIAA.

Finally, Defendant asks this Court to disregard *Thacker* because the issue was decided by *Earles v. United States*, *supra,* 35 F.2d 1028, and "[t]he Circuit is bound by its own precedent absent higher

36

intervening authority." (RB, p. 53.)  But *Thacker* is higher intervening authority which this Circuit must follow.

## CONCLUSION

The lower court's Order should be reversed and the case remand for further proceedings.

Dated: July 28, 2025,                Respectfully submitted,

                                     NELSON & FRAENKEL LLP

                                     McGUINN HILLSMAN & PALEFSKY


                                     By: */s/ Gretchen M. Nelson*
                                          Gretchen M. Nelson

                                     Todd Abbott
                                     ABBOTT & ABBOTT LAW
                                     2127 Olympic Parkway, # 1006-348
                                     Chula Vista, CA 91915
                                     Tel: (619) 578-3429
                                     Email: tmabbottlaw@gmail.com

                                     Cory Itkin
                                     ARNOLD & ITKIN LLP
                                     6609 Memorial Dr.
                                     Houston, TX 77007-7035
                                     Tel: 713-222-3800
                                     Fax: 713-222-3850
                                     Email: citkin@arnolditkin.com

37

A. Edwards Fields
W. Russell Fields
W. Van Fields
LAW OFFICES OF W. RUSSELL FIELDS
1792 Tribute Road, Suite 400
Sacramento, CA 95815
Tel: (916) 646-6100
Fax: (916) 646-8769
Email: ed@russfieldslaw.com
russ@russfieldslaw.com
van@russfieldslaw.com

Jennifer Fiore
Sophia Achermann
FIORE ACHERMANN
340 Pine Street, Suite 503
San Francisco, CA 94104
Tel: (415)550-0650
Email: sophia@thefafirm.com
jennifer@thefafirm.com

Ilya Frangos
GALINE, FRYE, FITTING & FRANGOS
411 Borel Avenue, Suite 405
San Mateo, CA 94402
Telephone: (650) 345-8484
Facsimile: (650) 345-9875
Email: ifrangos@gff-law.com

Kevin Mahoney
Daniel Rose
KREINDLER & KREINDLER LLP
485 Lexington Avenue, 28th Floor
New York, NY 10017
Tel: (212) 687-8181
Fax: (212) 972-9432
Email: kmahoney@kreindler.com
drose@kreindler.com

Robert J. Mongeluzzi
Jeffrey P. Goodmam
E.Douglas Disandro, Jr.
SALTZ MONGELUZZI & BENDESKY P.C.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Tel: 215-496-8282
Fax: 215-496-0999
Email:
rmonteluzzi@smbb.com
jgoodman@smbb.com
ddisandro@smbb.com

Theodore Poppinga
SCHUERING ZIMMERMAN & DOYLE, LLP
400 University Avenue
Sacramento, CA 95825
Tel: (916)567-0400
Fax: (916) 568-0400
Email:  tdp@szs.com

Michael A. Kelly
Matthew Davis
Spencer Pahlke
WALKUP, MELODIA, KELLY &
SCHOENBERGER
650 California Street, 26th Floor
San Francisco, CA 94108
Tel: 415-981-7210
Fax: 415-391-6965
Email: mdavis@walkuplawoffice.com
mkelly@walkuplawoffice.com
spahlke@walkuplawoffice.com

39

## CERTIFICATE OF COMPLIANCE

I am one of the attorneys for the Plaintiffs/Appellants in this case.

This brief contains 6,990 words, and excluding the items exempted by Fed.R.App. 32(f). The brief's type size and typeface comply with Fed.R.App. 32(a)(5) and (6).

I certify that this brief complies with the word count limitations set forth in Cir. R. 32-1.

Dated: July 28, 2025            */s/ Gretchen M. Nelson*
                              Gretchen M. Nelson