No. 24-5064
January 30, 2026 panel decision:
Judges Clifton, Owens, and Bumatay

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

NANCY FIEDLER, et al.,
*Appellants,*

versus

UNITED STATES OF AMERICA,
*Appellee.*

On Appeal from the United States District Court
for the Central District of California
U.S.D.C. Case No. 2-21-cv-07065-PA-MRW
Hon. Percy Anderson, Judge

## PETITION FOR REHEARING *EN BANC* OF PLAINTIFFS/APPELLANTS

Gretchen M. Nelson (112566)
Nelson & Fraenkel LLP
601 So. Figueroa St., Suite 2050
Los Angeles, CA 90017
Telephone: 213-622-6469
Email: gnelson@nflawfirm.com

Holly Boyer (221788)
Shea S. Murphy (255554)
Esner Chang Boyer Murphy
600 So. Lake Ave., Suite 408
Pasadena, CA 91106-3955
Telephone: 626-535-9860
Email: hboyer@ecbm.law
smurphy@ecbm.law

John R. Hillsman (71220)
McGuinn Hillsman & Palefsky
220 Jackson St., Suite 350
San Francisco, CA 94111-1800
Telephone: 415-421-9292
Email:jrhillsman@mhpsf.com

Jeffrey L. Fisher (256040)
Hecker Fink LLP
1150 So. Olive St., 10th Floor
Los Angeles, CA 90015
Telephone: 213-720-5299
Email: jfisher@heckerfink.com

*Counsel for Plaintiffs-Appellants – Add'tl Counsel on Signature Page*

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................2

TABLE OF AUTHORITIES.............................................................3

I. INTRODUCTION AND RULE 40(b)(2) STATEMENT ......................5

II. SUMMARY OF THE CASE .........................................................9

III. ARGUMENT ..........................................................................13

    A.    Circuit precedent engrafting a discretionary function exception onto the SIAA conflicts with the Supreme Court's unanimous decision in *Thacker v. United States*, 587 U.S. 218 (2019). ............................................................................13

        1.    In all relevant respects, *Thacker*'s sovereign immunity analysis governs here. ...................................................13

        2.    Neither of the potential distinctions the panel majority identified between *Thacker* and *Earles* hold water. .........18

    B.    The Court should use this opportunity to correct its erroneous construction of the SIAA.....................................20

IV. CONCLUSION .......................................................................21

CERTIFICATE OF COMPLIANCE.....................................................25

CERTIFICATE OF SERVICE............................................................26

OPINION...................................................................................27

2

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Department of Agriculture Rural Development Rural Housing Service v. Kirtz*
601 U.S. 42 (2024) ........................................................................8

*Earles v. United States*
935 F.2d 1028 (9th Cir. 1991) ....................................................*passim*

*Fed. Hous. Admin., Region No. 4 v. Burr*
309 U.S. 242 (1940) ...................................................................19

*Jones v. United States*
155 F.4th 1270 (11th Cir. 2025)..................................................7

*Tanzin v. Tanvir*
592 U.S. 43 (2020) ....................................................................17

*Thacker v. Tennessee Valley Authority*
587 U.S. 218 (2019) .................................................................*passim*

*Tobar v. United States*
731 F.3d 938 (9th Cir. 2013) .....................................................8

*Wu Tien Li-Shou v. United States*
777 F.3d 175 (4th Cir. 2015) .....................................................8

## <u>Statutes</u>

7 U.S.C. section 1506(d) ............................................................8

12 U.S.C. section 635.................................................................8

12 U.S.C. section 1452(c)...........................................................8

12 U.S.C. section 1702...............................................................8

12 U.S.C. section 1723a(a) .........................................................8

12 U.S.C. section 1819(a) ...........................................................8

12 U.S.C. section 2013...............................................................8

15 U.S.C. section 714b(c)............................................................8

15 U.S.C.A. section 1681n..........................................................8

15 U.S.C.A. section 1681o ..........................................................8

16 U.S.C. section 831c(b)................................................................8

28 U.S.C. chapter 171 sections 2671–2680.................................5

28 U.S.C. section 1346(a)(2) ........................................................8

28 U.S.C. section 1346(b) ..........................................................15

28 U.S.C. section 1491................................................................8

28 U.S.C. sections 2671–2680 ..................................................15

28 U.S.C. section 2680(d) ..........................................................15

29 U.S.C. section 633a................................................................8

29 U.S.C. section 794a................................................................8

33 U.S.C. section 984(a)(3) .........................................................8

42 U.S.C. section 2000e-16.........................................................8

46 U.S.C. section 30903.............................................................11

46 U.S.C. section 30903(a) ........................................ 5, 6, 18, 19

46 U.S.C. section 30904.............................................................15

46 U.S.C. sections 31101–31113 ...............................................8

Pub. L. No. 79-601, 60 Stat. 812, 842 tit. IV, §§ 401–24 (1946).............15

Pub. L. No. 86–770, 74 Stat. 912, 912 section 3 (1960) ..........................15

**Rules**

Federal Rules of Appellate Procedure rule 40(b)(2) ................................5

Federal Rules of Civil Procedure rule 12(b)(1) ......................................11

# I.

## INTRODUCTION AND RULE 40(b)(2) STATEMENT

The Suits in Admiralty Act (SIAA) is captioned "Waiver of immunity." 46 U.S.C. § 30903(a). Its operative provision states that when a civil action in admiralty could be maintained against a private person, vessel, or cargo, "a civil action in admiralty in personam may be brought against the United States or a federally-owned corporation." *Id.* None of the statute's conditions depend on whether the Government acted within its discretion. Yet in *Earles v. United States*, 935 F.2d 1028 (9th Cir. 1991), a panel of this Court imported the Federal Tort Claims Act's (FTCA)[1] discretionary function exception into the SIAA based on policy concerns about judicial review of executive branch decisions. *Id.* at 1031–32.

That holding conflicts with the Supreme Court's more recent decision *Thacker v. Tennessee Valley Authority*, 587 U.S. 218 (2019). In that case, the Court established a roadmap for evaluating statutory waivers of sovereign immunity: begin with the text, give those words their usual and ordinary meaning, do not engraft exceptions that

---

[1] 28 U.S.C. Chapter 171 (§§2671–2680).

Congress did not provide. *Id.* at 223–26. Per a unanimous opinion by Justice Kagan, that roadmap dictated that the waiver of sovereign immunity in the Tennessee Valley Authority Act ("TVA Act") did not include an atextual discretionary function exception.

The same analysis applies here. Like the TVA Act, the SIAA—the statutory scheme at issue in this appeal—contains a waiver of sovereign immunity, 46 U.S.C. § 30903(a). Like the TVA Act, the SIAA's text contains no discretionary function exception. Thus, *Thacker* lays bare the impropriety of engrafting a discretionary function exception onto the SIAA. And like in *Thacker*, invoking "separation of powers" to do so turns that concept on its head.

Nevertheless, by published opinion, a divided panel here declined to hold that *Thacker* abrogates *Earles*, electing instead to adhere to *Earles* as "controlling precedent." (Slip. Op. at 17.) While the panel majority acknowledged that "*Thacker* brings *Earles* into question," it declined to directly address that disjoint, concluding that it did not "rise[] to the level of [the] 'clear irreconcilability'" necessary to permit a three-judge panel to overrule a prior panel opinion due to intervening Supreme Court authority. (*Id.* at 16.) As such, the majority reserved

resolution of whether *Earles* remains sound to the *en banc* process. (*Id.,* at 15 n.5 [declining to "overrule *Earles at this point*" (emphasis added)].)

In dissent, Judge Bumatay applied *Thacker* to the SIAA and concluded that *Earles*' holding is impossible to square with *Thacker*. (see Slip Op. at 36 (Bumatay, dissenting).) In so doing, he registered his agreement with a similar opinion expressed by Chief Judge William Pryor in *Jones v. United States*, 155 F.4th 1270 (11th Cir. 2025), in a statement respecting the denial of initial hearing en banc. There, Chief Judge Pryor concluded that, in *Thacker*, "the Supreme Court removed any doubt" that federal appellate decisions engrafting the discretionary function exception onto the SIAA are erroneous. *Id.* at 1271.

Regardless of whether the panel majority is correct that *Earles* and *Thacker* are not "clearly irreconcilable" or Judge Bumatay and Chief Judge Pryor are correct that the two are impossible to square, (see Slip Op. at 36 (Bumatay, dissenting)), this Court should grant *en banc* review. Under *Thacker*'s roadmap, *Earles*' holding that the SIAA contains an atextual discretionary function exception to the statute's waiver of sovereign immunity is incorrect. In addition, the panel's suggestion that *Thacker* might be read as limited to the TVA Act has

7

implications that extend beyond the SIAA. Other federal statutes waive

sovereign immunity (either expressly or through sue-and-be-sued

provisions) and lack any express discretionary function exception.[2] This

court as a whole should make clear that *Thacker* is not as narrowly

constrained as the panel suggested it might be.

---

[2] Congress has on many occasions enacted waivers of sovereign immunity that apply in a wide variety of contexts, and which do not contain express discretionary function exceptions. See e.g. Tucker Act, 28 U.S.C. § 1491; Little Tucker Act, 28 U.S.C. § 1346(a)(2); Public Vessels Act (PVA), 46 U.S.C. §§ 31101–31113 (but see *Tobar v. United States,* 731 F.3d 938, 941 (9th Cir. 2013) (reading discretionary function exception into PVA); see also *Wu Tien Li-Shou v. United States,* 777 F.3d 175, 184  (4th Cir. 2015) (same)); Fair Credit Reporting Act**,** 15 U.S.C.A. § 1681n, 1681o (see *Department of Agriculture Rural Development Rural Housing Service v. Kirtz* (2024) 601 U.S. 42, 42 (finding the FCRA clearly waives sovereign immunity)); Age Discrimination in Employment Act (ADEA**)**, 29 U.S.C. § 633a; Rehabilitation Act of 1973, 29 U.S.C. § 794a; Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16. Similarly, Congress has enacted numerous statutes creating federal entities which contain sue-and-be-sued provisions. See e.g. Tennessee Valley Authority, 16 U.S.C. § 831c(b); Federal Deposit Insurance Corporation**,** 12 U.S.C. § 1819(a); Federal Housing Administration (now HUD), 12 U.S.C. § 1702); Federal National Mortgage Association (Fannie Mae), 12 U.S.C. § 1723a(a); Federal Home Loan Mortgage Corporation (Freddie Mac), 12 U.S.C. § 1452(c); Farm Credit Banks, 12 U.S.C. § 2013; Export-Import Bank, 12 U.S.C. § 635; Commodity Credit Corporation, 15 U.S.C. § 714b(c); Federal Crop Insurance Corporation, 7 U.S.C. § 1506(d); St. Lawrence Seaway Development Corporation, 33 U.S.C. § 984(a)(3).

Moreover, the harm caused by the panel's misstep is significant. The SIAA, as applied here, determines whether the families of the thirty-four people killed in the fire on the vessel *Conception* will have an opportunity to prove in court that the Coast Guard was negligent in inspecting and certifying that vessel as fit for its route and service—or whether the Government's sovereign immunity will shield it from even the possibility of accountability. What's more, this Court's construction of the SIAA in this case will continue to govern all future lawsuits in admiralty brought against the United States for events arising in the Pacific Ocean, as well as other waterways throughout the American West. This case thus raises a question that this Court's full bench should answer.

## II.

## SUMMARY OF THE CASE

On August 31, 2019, thirty-three passengers and six crew members boarded the *Conception* for a three-night scuba diving excursion off California's Channel Islands. The vessel had three levels: an upper deck with the wheelhouse and crew quarters, a main deck with the galley and bathrooms, and a lower deck deep in the hull where

all passengers and one crew member slept. In the early morning hours of September 2, 2019, a fire ignited on the vessel. The five crew members berthed on the upper deck awoke to find the main deck engulfed in flames and abandoned ship. All thirty-four people trapped in the hull below the main deck perished. Post-accident investigators identified the vessel's electrical system, electronic devices, and batteries as possible ignition sources, and plastic trash cans and plastic chairs as potential accelerants. (Slip Op. at 8.) Among the victims was Lisa Fiedler, whose mother Nancy—the lead plaintiff in this action—now seeks accountability for a tragedy she contends was preventable.

The *Conception* was a small passenger vessel subject to Coast Guard inspection under Subchapter T of the Code of Federal Regulations. The Coast Guard had issued the *Conception* its most recent Certificate of Inspection in November 2014 and performed an annual inspection in February 2019—just months before the fire— deeming the vessel "fit for route and service." Neither during that inspection nor during prior annual inspections did the Coast Guard identify the electrical wiring or the ubiquitous plastic trash cans and plastic furnishings as safety hazards. (Slip Op. at 10.)

Plaintiffs—personal representatives of the deceased and one surviving injured crew member—sued the United States under the Suits in Admiralty Act, 46 U.S.C. § 30903, alleging that the Coast Guard negligently certified the *Conception* as fit for service despite those obvious fire hazards. The Government moved to dismiss under Rule 12(b)(1), invoking the discretionary function exception—an exception that appears nowhere in the SIAA's text, but was instead imported from the FTCA by this Circuit in *Earles v. United States*, 935 F.2d 1028 (9th Cir. 1991). The lower court granted the motion, and a divided panel of this Court affirmed. (Slip Op. at 11, 22.)

The division within the panel was sharp. The majority acknowledged that the Supreme Court's 2019 opinion in *Thacker*, "brings *Earles* into question," but concluded this tension did not rise to "clear irreconcilability," and therefore treated *Earles* as binding. (Slip Op. at 16.) The majority expressly declined to reach the merits of whether *Earles* was correctly decided, explaining: "our inquiry today is a narrower one." (Slip Op. at 15 n.5.) The majority then affirmed the district court's determination that the government was immune because

11

the Coast Guard was performing acts that were within those deemed discretionary functions here. (*Id.* at 18-22.)

Judge Bumatay dissented, concluding that *Earles* has been "effectively overruled" by *Thacker* and that the SIAA's plain text contains no discretionary function exception. (Slip Op. at 24 (Bumatay dissenting).) He accordingly would have reversed and "allowed this suit to proceed" to permit Fiedler and the others "to have their day in court." (*Id.* at 23, 24.)[3]

---

[3] As Judge Bumatay explained, "[t]he question on appeal is not about whether the United States should be held liable for the *Conception* fire, but simply whether" Plaintiffs should be allowed the opportunity to prove their case. (Slip Op., at 23, (Bumatay, dissenting).)

## III.

## ARGUMENT

**A. Circuit precedent engrafting a discretionary function exception onto the SIAA conflicts with the Supreme Court's unanimous decision in *Thacker v. United States*, 587 U.S. 218 (2019).**

Both *Thacker* and this case involve the same inquiry—whether a federal statute waiving sovereign immunity that does not contain a discretionary function exception should be construed as having one. The answer in both cases should be the same: no.

**1. In all relevant respects, *Thacker*'s sovereign immunity analysis governs here.**

As Judge Bumatay explained in dissent, this Court's previous holding in *Earles*—which the panel majority adhered to here—conflicts with *Thacker* on every relevant touchpoint of statutory interpretation.

**a. Text.** In *Thacker*, the Court held that because the TVA Act's waiver of sovereign immunity did not "expressly recognize[] immunity for discretionary functions," that was nearly the "end of the story." 587 U.S. at 223–24. That's because Congress has the "full power" to waive sovereign immunity, and federal courts must enforce unqualified

13

waivers—just like the plain language of most any other statute—as written. *Id.* at 223-224.

*Earles* confronted the same textual reality. It acknowledged that "the SIAA does not expressly immunize the government for the exercise of a discretionary function." *Earles*, 935 F.2d at 1031. But where *Thacker* treated this absence as dispositive, *Earles* treated it as immaterial, concluding that "the omission of the Exception from the SIAA does not necessarily mean that the SIAA is not subject to it." *Id.* These two approaches to the same question cannot both be correct. Under *Thacker*'s framework, the absence of a textual exception is where the analysis begins and, absent a recognized basis for implying an exception, where it ends. *Earles*'s willingness to look past the text is irreconcilable with that.

**b. Structure.** The Court in *Thacker* emphasized that Congress had expressly excluded TVA Act claims from the FTCA's scope, and thus importing the FTCA's discretionary function exception would "let the FTCA in through the back door, when Congress has locked the front one." 587 U.S. at 225.

14

The same statutory architecture exists here. The FTCA expressly excludes from its scope "[a]ny claim for which a remedy is provided by" the SIAA. 28 U.S.C. § 2680(d). And the SIAA contains its own exclusive-remedy provision that independently bars resort to FTCA remedies. 46 U.S.C. § 30904.

Beyond the express exclusion of the SIAA from the FTCA, Congress last made significant amendments to the SIAA in 1960, (Pub. L. No. 86–770, 74 Stat. 912, 912 § 3 (1960)), well after the FTCA and its discretionary function exception had been enacted in 1946, (Pub. L. No. 79-601, 60 Stat. 812, 842 tit. IV, §§ 401–24 (1946) (codified at 28 U.S.C. §§ 1346(b), 2671–80)) but nevertheless elected not to include a comparable discretionary function exception in its amendments. As is manifestly clear from this record, Congress purposefully kept these two statutes separate, and yet *Earles* coupled them together by importing the FTCA's exception into the SIAA wholesale. 935 F.2d at 1032. This is precisely what *Thacker* forbids.

**c. Separation of powers.** *Thacker* rejected the separation-of-powers rationale that was the foundation of *Earles*'s holding. *Earles* justified importing the discretionary function exception into the SIAA—

15

"even in the absence of an explicit statutory command"—on the ground that failing to do so "would subject all administrative and legislative decisions concerning the public interest in maritime matters … to independent judicial review." 935 F.2d at 1032. But in *Thacker*, the Supreme Court expressly rejected this line of reasoning. Congress's decision to waive immunity—even for discretionary governmental conduct—does not "offend the separation of powers." 587 U.S. at 226. It simply reflects that "[t]he right governmental actor (Congress) is making a decision within its bailiwick (to waive immunity) that authorizes an appropriate body (a court) to render a legal judgment." *Id*. The very policy rationale on which *Earles* was built has been dismantled by the Supreme Court.

Lest there be any doubt, the Government in *Thacker* expressly likened the SIAA to the TVA Act and urged the Supreme Court to engraft a discretionary function exception based on "[t]he same separation-of-powers concerns . . . that have justified its recognition under the SIAA." U.S. Br. at 29.  Expressly citing *Earles* and equivalent case law from other circuits, the Government argued that even though the text of the Act contains no discretionary function exception, "as a

16

matter of judicial construction, [courts] should not read a general waiver of sovereign immunity to include a waiver of immunity with respect to damage occasioned by policy decisions." *Id.* (internal quotation marks and citation omitted).[4]

The Supreme Court squarely rebuked this argument, explaining that construing a statute waiving sovereign immunity, but lacking a discretionary function exception, according to its plain text "raises no separation of powers problems." *Thacker*, 587 U.S. at 226. So too here.[5]

---

[4] The Government's brief is available at https://www.supremecourt.gov/DocketPDF/17/17-1201/76181/20181213200913296_17-1201bsUnitedStates.pdf.

[5] Beyond rejecting separation of powers as a justification for importing language into a statute, the Supreme Court has now firmly recognized that it compels judicial deference to Congress's power to legislate. *See Tanzin v. Tanvir,* 592 U.S. 43, 52 (2020) ("The Government also posits that we should be wary of damages against government officials because these awards could raise separation-of-powers concerns. But this exact remedy has coexisted with our constitutional system since the dawn of the Republic. To be sure, there may be policy reasons why Congress may wish to shield Government employees from personal liability, and Congress is free to do so. But there are no constitutional reasons why we must do so in its stead.")

### 2. Neither of the potential distinctions the panel majority identified between *Thacker* and *Earles* hold water.

The panel majority recognized that the Supreme Court's decision in *Thacker* "brings [this Court's prior decision] *Earles* into question." (Slip Op. at 16.) But the majority believed, for two reasons, that the cases were not sufficiently "irreconcilable" to allow it to overrule *Earles*. Regardless of whether that conclusion is right, the question now is simply whether *Earles* is correct. It is not. Neither of the potential distinctions the majority identified between *Thacker* and *Earles* justifies the rule adopted in *Earles*. If anything, the purported distinctions cut in Plaintiffs' favor and make this case an *easier* one than *Thacker*.

First, the majority noted that the SIAA does not contain a "sue-and-be-sued" clause like the TVA Act. (Slip Op. at 16–17.) In *Thacker*, the Court noted that the phrase "sue and be sued" is a term of art that has a recognized history of implied exceptions. 587 U.S. at 224. The SIAA's straightforward waiver language—"a civil action in admiralty in personam may be brought against the United States," 46 U.S.C. § 30903(a)—has no comparable history. If *Thacker* refused to import a

18

discretionary function exception into a statute whose operative language did have recognized implied exceptions, the case for importing one into a statute whose language does not, is weaker, not stronger. (See Slip Op. at 30 (Bumatay, dissenting).)

Second, the majority noted that "unlike the TVA, the Navy in *Earles* and the Coast Guard here are not mixed entities"—that is, "hybrid" entities that conduct commercial as well as governmental activities. (Slip Op. at 17.) The fact that the TVA sometimes engages in commercial activity was relevant in *Thacker* because "sue and be sued" clauses waive sovereign immunity subject to an implied exception for suits challenging certain governmental activity. 587 U.S. at 227-28 quoting *Fed. Hous. Admin., Region No. 4 v. Burr*, 309 U.S. 242, 245 (1940). That analysis does not apply here; as the panel itself emphasized, the SIAA does not contain "sue and be sued" language.

To be sure, as the majority also notes (Slip Op. at 16-17), the SIAA contains its own express proviso limiting its waiver of sovereign immunity to situations (relevant here) in which, "if a private person or property were involved, a civil action in admiralty could be maintained." 46 U.S.C. § 30903(a). But that proviso establishes a different test than

*Thacker*'s implied "governmental activities" exception—one that can be met even when the defendant was acting in a governmental capacity. And the district court did not find the SIAA's proviso to be met here; it dismissed Plaintiffs' claim solely on "discretionary function" grounds. The only issue in this appeal, therefore, is whether the SIAA contains a discretionary function exception. This Court should make clear it does not and remand the case back to the district court for further proceedings.

### B. The Court should use this opportunity to correct its erroneous construction of the SIAA.

Not only is this Court's misreading in *Earles* of the SIAA now manifest, but the question of whether the Act includes a discretionary function exception is one of particular importance. For one thing, the stakes for injured parties in maritime cases could hardly be higher. In this case, for example, the families of thirty-four people who died in a preventable fire aboard a vessel seek redress. The SIAA also governs all manner of governmental maritime activity on the Pacific Ocean and inland waterways.

What's more, this Court's misreading of the SIAA "turns the separation of powers on its head." (Slip Op. at 33 (Bumatay, dissenting).) Judge Bumatay elaborated this point in his dissent:

> As the Supreme Court has instructed us, "the power to waive the federal government's immunity is Congress's prerogative, not ours[.] *Kirtz*, 601 U.S. at 48. That definitionally precludes us from second-guessing Congress's choice to waive immunity. "[W]e have no business rewriting the statute to supply exceptions that Congress did not provide." *Jones v. United States*, 155 F.4th 1270, 1270-71 (11th Cir. 2025) (respecting the denial of initial hearing en banc) . . . . Indeed, "judges engage in activism, not 'restraint,' when they amend statutes Congress writes."

(Slip. Op. 34 [Bumatay, dissenting].).  In short, this case squarely implicates the proper role of the judiciary in our constitutional system. That is a matter that should command the attention of this full Court.

## IV.

## CONCLUSION

Whether the majority is correct that *Thacker* merely "brings *Earles* into question" and can potentially be limited to the TVA Act, or the dissent is correct that *Thacker* "effectively overruled" *Earles*, the result is the same: *en banc* review is necessary to resolve a conflict that the panel itself identified but could not decide. Plaintiffs respectfully request that the Court grant this petition, hold *Thacker* to be

21

controlling authority for construing the SIAA, overrule *Earles*, and reverse the panel's judgment affirming the dismissal of Plaintiffs' claims.

Dated: April 15, 2026    Respectfully submitted,

           NELSON & FRAENKEL LLP

           MCGUINN HILLSMAN & PALEFSKY

           ESNER CHANG BOYER MURPHY

           HECKER FINK LLP

           By: *s/ Shea S. Murphy*
             Shea S. Murphy
           *Attorneys for Plaintiffs/Appellants*

           Todd Abbott
           ABBOTT & ABBOTT LAW
           2127 Olympic Parkway, # 1006-348
           Chula Vista, CA 91915
           Tel: (619) 578-3429
           Email: tmabbottlaw@gmail.com

           Cory Itkin
           ARNOLD & ITKIN LLP
           6609 Memorial Dr.
           Houston, TX 77007-7035
           Tel: 713-222-3800
           Fax: 713-222-3850
           Email: citkin@arnolditkin.com

22

A. Edwards Fields
W. Russell Fields
W. Van Fields
LAW OFFICES OF W. RUSSELL FIELDS
1792 Tribute Road, Suite 400
Sacramento, CA 95815
Tel: (916) 646-6100
Fax: (916) 646-8769
Email: ed@russfieldslaw.com
russ@russfieldslaw.com
van@russfieldslaw.com

Jennifer Fiore
Sophia Achermann
FIORE ACHERMANN
340 Pine Street, Suite 503
San Francisco, CA 94104
Tel: (415)550-0650
Email: sophia@thefafirm.com
jennifer@thefafirm.com

Ilya Frangos
GALINE, FRYE, FITTING & FRANGOS
411 Borel Avenue, Suite 405
San Mateo, CA 94402
Telephone: (650) 345-8484
Facsimile: (650) 345-9875
Email: ifrangos@gff-law.com

Kevin Mahoney
Daniel Rose
KREINDLER & KREINDLER LLP
485 Lexington Avenue, 28th Floor
New York, NY 10017
Tel: (212) 687-8181
Fax: (212) 972-9432
Email: kmahoney@kreindler.com
drose@kreindler.com

23

Robert J. Mongeluzzi
Jeffrey P. Goodmam
E.Douglas Disandro, Jr.
SALTZ MONGELUZZI & BENDESKY P.C.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Tel: 215-496-8282
Fax: 215-496-0999
Email:
rmonteluzzi@smbb.com
jgoodman@smbb.com
ddisandro@smbb.com

Michael A. Kelly
Matthew Davis
Spencer Pahlke
WALKUP, MELODIA, KELLY &
SCHOENBERGER
650 California Street, 26th Floor
San Francisco, CA 94108
Tel: 415-981-7210
Fax: 415-391-6965
Email: mdavis@walkuplawoffice.com
mkelly@walkuplawoffice.com
spahlke@walkuplawoffice.com

24

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *https://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 24-5064

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/response to petition is *(select one)*:

◉ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 3,313 .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** s/ Shea S. Murphy **Date** April 15, 2026
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/24*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the **PETITION FOR REHEARING *EN BANC* OF PLAINTIFFS/APPELLANTS** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on April 15, 2026.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

Signature  *s/ Shea S. Murphy*

26

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NANCY FIEDLER, Personal Representative of the Estate of Lisa Fiedler (Deceased); MATTHEW GUINEY, Personal Representative of the Estate of Marybeth Guiney (Deceased); OLGA FAYNSHTEYN, Personal Representative of the Estate of Yuliya Krashennaya (Deceased); KATIE OSBORNE, Personal Representative of the Estate of Daniel Garcia (Deceased); CHRISTINA QUITASOL, Personal Representative of the Estate of Michael Quitasol (Deceased); SARMA WILLIAMS, Personal Representative of the Estate of Vaidehi Devi Campbell Williams (Deceased); CHRISTINE ALEXANDRA DIGNAM, Personal Representative of the Estate of Justin Dignam (Deceased); JASMINE LORD, Personal Representative of the Estate of Charles McIllvain (Deceased); VICTORIA E. MOORE, Personal Representative of the Estates of Raymond Scott Chan (Deceased) and Kendra Chan (Deceased); YUKA OHASHI MERRITT, Personal Representative | No. 24-5064<br><br>D.C. No.<br>2:21-cv-07065-PA-MRW<br><br><br>OPINION |

of the Estate of Yuko Hatano (Deceased); VIKRAM SINGH, Personal Representative of the Estate of Sunil Singh Sandhu (Deceased); NINA HUTTEGGER, Personal Representative of the Estate of Juha-Pekka Ahopelto (Deceased); YADIRA ALVAREZ, Personal Representative of the Estate of Berenice Felipe (Deceased); SEJAY TAN, Personal Representative of the Estate of Wei Tan (Deceased); ERIC BALTZ, Personal Representative of the Estate of Neal Baltz (Deceased); ANTHONY BEITZINGER, Personal Representative of the Estate of Patricia Beitzinger (Deceased); SHRUTI DEOPUJARI, Personal Representative of the Estate of Sanjeeri Deopujari (Deceased); ATLEE FRITZ, Personal Representative of the Estate of Andrew Fritz (Deceased); SEEMA SHARMA, Personal Representative of the Estate of Kaustubh Nirmal (Deceased); MARGARET STROM, Personal Representative of the Estate of Ted Strom (Deceased); RICHARD X. LIU, Personal Representative of the Estate of Xiang Lin (Deceased); SUSANA SOLANO ROSAS, Personal Representative of the Estates of Evanmichel Solano

Quitasol (Deceased), Angela Rose
Solano Quitasol (Deceased), and
Nicole Solano Quitasol (Deceased);
ARIEL TAKVAM, Personal
Representative of the Estate of
Kristian Takvam (Deceased);
DOMINIC MICAEL SELGA,
Personal Representative of the Estate
of Fernisa June Sison (Deceased);
ROBERT KURTZ, Personal
Representative of the Estate of
Alexandra Haley Kurtz (Deceased);
CHERIE MCDONOUGH, Personal
Representative of the Estate of
Alexandra Haley Kurtz (Deceased);
JEAN ANNE ALLEN, as Executor
of the Estate of Steven John Salika,
Executor of the Estate of Carol Diana
Adamic and Administrator of the
Estate of Tia Nicole Adamic Salika;
JAMES ADAMIC, individually and
as beneficiary of the Estate of Carol
Diana Adamic (Deceased);
ANGELIKA ADAMIC, individually
and as beneficiary of the Estate of
Carol Diana Adamic (Deceased);
MARK ADAMIC, individually and
as beneficiary of the Estate of Carol
Diana Adamic (Deceased);
SHIRLEY SALIKA, individually and
as beneficiary of the Estate of Steven
John Salika (Deceased) and Tia
Nicole Salika (Deceased); DANIEL

4  FIEDLER V. USA

POH-HOCK CHUA, Personal
Representative of the Estate of
Kristina Oline Finstad (Deceased);
RYAN SIMS, individually; CHENG
LENG TAN; HENRY GARCIA,
Beneficiary of the Estate of Daniel
Garcia (Deceased); GREGORY
KRASHENNY, Beneficiary of the
Estate of Yuliya Krashennaya
(Deceased),

> *Plaintiffs - Appellants*,

 v.

UNITED STATES OF AMERICA,

> *Defendant - Appellee*.

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted October 22, 2025
San Francisco, California

Filed January 30, 2026

Before: Richard R. Clifton, John B. Owens, and Patrick J.
Bumatay, Circuit Judges.

Opinion by Judge Owens;
Dissent by Judge Bumatay

# SUMMARY[*]

## Suits in Admiralty Act

The panel affirmed the district court's dismissal, under the discretionary function doctrine, of an action against the United States under the Suits in Admiralty Act ("SIAA") brought by personal representatives of people who were killed and injured in a fire on the passenger dive boat *M.V. Conception*.

Plaintiffs alleged that the United States Coast Guard was negligent in authorizing the *Conception* to operate despite various purported safety violations.

The panel held that the discretionary function exception to the Federal Tort Claims Act ("FTCA") applies to the SIAA. The panel held that *Thacker v. Tennessee Valley Authority*, 587 U.S. 218, 223 (2019), did not effectively overrule *Earles v. United States*, 935 F.2d 1028, 1032 (9th Cir. 1991) (holding that the discretionary function to the FTCA applies to the SIAA), and *Earles* remains controlling precedent.

The panel held that the district court correctly applied the discretionary function exception. First, because no federal statute, regulation, or policy mandates that Coast Guard inspectors identify and correct the fire hazards alleged— plastic trash cans and chairs and improper electrical wiring—the inspectors' alleged misfeasance was discretionary. Second, Coast Guard inspections are

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

textbook discretionary judgments, rooted in public policy considerations, of the kind that the discretionary function exception was designed to shield. Accordingly, the district court correctly dismissed the suit for lack of subject matter jurisdiction.

Dissenting, Judge Bumatay would hold that the plain text of the SIAA expressly waives the United States' sovereign immunity over admiralty cases involving its vessels and personnel. He would also hold that *Earles* has been effectively overruled by *Thacker*, and would allow this suit to proceed.

---

## COUNSEL

Gretchen M. Nelson (argued) and Gabriel S. Barenfeld, Nelson & Fraenkel LLP, Los Angeles, California; Matthew D. Davis, Michael A. Kelly, and Spencer Pahlke, Walkup Melodia Kelly & Schoenberger, San Francisco, California; John R. Hillsman, McGuinn Hillsman & Palefsky, San Francisco, California; E. Douglas DiSandro Jr., Robert J. Mongeluzzi, and Jeffrey P. Goodman, Saltz Mongeluzzi & Bendesky PC, Philadelphia, Pennsylvania; Ilya D. Frangos, Galine Frye Fitting & Frangos, San Mateo, California; Robert H. Zimmerman, Zimmerman Law PC, Sacramento, California; Jennifer Fiore and Sophia Achermann, Fiore Achermann, San Francisco, California; A. Edward Fields, W. Russell Fields, and W. Van Fields, The Law Offices of W. Russell Fields, Sacramento, California; Alan Van Gelder, Greene Broillet & Wheeler LLP, El Segundo, California; Todd Abbott, Abbott & Abbott Law, Chula Vista, California; Cory Itkin, Arnold & Itkin LLP, Houston,

Texas; Kevin Mahoney and Daniel Rose, Kreindler & Kreindler LLP, New York, New York; Theodore Poppinga, Schuering Zimmerman & Doyle LLP, Sacramento, California; for Plaintiffs-Appellants.

Jill Rosa (argued), Senior Trial Counsel; Scott Perrygo and Kyle Fralick, Trial Attorneys; Eric Kaufman-Cohen, Attorney in Charge, West Coast; Civil Division; United States Department of Justice, San Francisco, California; Torts Branch; Gerard Sinzdak, Assistant Director, Appellate Staff; Yaakov M. Roth, Acting Assistant Attorney General; Civil Division; United States Department of Justice, Washington, D.C.; Frank J. Anders, Trial Attorney; Office of the United States Attorney, United States Department of Justice, San Francisco, California; David M. Harris, Assistant United States Attorney, Chief, Civil Division; Bilal A. Essayli, United States Attorney; Office of the United States Attorney, United States Department of Justice, Los Angeles, California; for Defendant-Appellee.

## OPINION

OWENS, Circuit Judge:

On September 2, 2019, a devastating fire engulfed passenger dive boat *M.V. Conception*. The inferno killed thirty-four people, and extensive litigation followed. In this case, personal representatives of the deceased and one injured surviving crew member ("Plaintiffs") have sued the United States under the Suits in Admiralty Act ("SIAA"), 46 U.S.C. § 30901. They allege that the United States Coast Guard—which previously inspected the *Conception* and declared it safe—acted negligently and that its malfeasance led to this tragedy. The district court dismissed the case under the discretionary function doctrine. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.  FACTUAL          AND          PROCEDURAL BACKGROUND

### A.  The Tragic Voyage

On August 31, 2019, thirty-three passengers and six crew members boarded the *Conception* for a three-night scuba diving excursion. The vessel had three levels: (1) an upper deck with the wheelhouse and crew quarters, (2) a main deck with the galley and bathrooms, and (3) a lower deck with bunks, where all passengers and one crew member slept. In the early hours of September 2, 2019, a fire ignited on the vessel. The upper deck crew awoke to the main deck in flames and abandoned ship. But all thirty-four people trapped below deck perished. Post-accident inspectors identified the vessel's electrical system as well as electronic devices and batteries as possible ignition sources, and plastic trash cans and chairs as potential accelerants.

Plaintiffs sued the Government under the SIAA, alleging that the Coast Guard was negligent in authorizing the *Conception* to operate despite various purported safety violations, including faulty electrical wiring, plastic trash cans, and plastic chairs.

## B. The Statutory and Regulatory Regime

One of the Coast Guard's eleven missions is marine safety. 6 U.S.C. § 468(a). To this end, the Coast Guard must "promulgate and enforce regulations for the promotion of safety of life and property" at sea. 14 U.S.C. § 102(3). These regulations include vessel safety standards, *id.* § 503, for "small passenger vessels," otherwise known as "T-boats." 46 U.S.C. § 3301(8); *see also* 46 C.F.R. §§ 175.100–185.910 (Subchapter T).

The Coast Guard inspects T-boats for "compliance with the standards required by" Subchapter T.[1] 46 C.F.R. § 176.800(a). Subchapter T mandates that all T-boats have a Coast Guard Certificate of Inspection ("COI") to carry commercial passengers. *Id.* § 176.100(a); *see also* 46 U.S.C.

---

[1] In 1996, the T-boat regulations were updated and modified. Vessels built before March 10, 1996, are generally subject to old Subchapter T regulations ("Old T Regulations"), except for some new Subchapter T regulations ("New T Regulations"), which apply no matter when the vessel was built. *See, e.g.*, 46 C.F.R. § 177.115(b) (renewal of "outfit items such as furnishings and mattresses" must comply with New T Regulations); *id.* § 183.115(a)–(c) (navigation lights, portable lights, and new installations of electrical equipment material and the repair or replacement of wire and cable are subject to New T Regulations). The *Conception* was an Old T vessel built in 1981, meaning it was generally subject to the Old T Regulations. But the parties dispute whether some of the New T Regulations apply. As discussed *infra*, this distinction does not matter here, as neither set of regulations imposed mandatory duties on how the Coast Guard should conduct its inspections.

10 FIEDLER V. USA

§ 3307 (requiring vessel inspections). To obtain a COI, a vessel must undergo an initial inspection by the Coast Guard, 46 C.F.R. §§ 176.400–176.402, and after five years, reinspection to renew its COI, *id.* § 176.404; 46 U.S.C. § 3307(2). T-boats must also undergo annual inspections. 46 C.F.R. § 176.500(b).

In conducting the inspections, the Coast Guard must "consistently interpret regulations and standards . . . to avoid disruption and undue expense to industry." 46 U.S.C. § 3305(d)(1). The regulations themselves provide general guidance for what to do during inspections. *See, e.g.*, 46 C.F.R. § 176.402(b) (during the initial inspection, certain aspects of the vessel "may be checked" to determine if the vessel is satisfactory); *id.* § 176.404(a) (subsequent inspections "normally include[]" certain items); *id.* § 176.800(b) (when applying inspection standards, "due consideration must be given to the hazards involved in the operation permitted by a vessel's [COI]").

### C. The Coast Guard's Inspections of the *Conception*

The *Conception* had received its most recent COI in November 2014. The Coast Guard performed its annual inspection in February 2019 and deemed the vessel "fit for route and service as specified on the current COI," allowing the *Conception* to continue operating. Neither during that inspection, nor other annual inspections that preceded it, did the Coast Guard identify electrical wires, plastic trashcans, or plastic furnishings as safety hazards.

### D. Procedural History

Plaintiffs sued the United States in September 2021 and filed a First Amended Complaint in February 2022 for

wrongful death, survival damages, and personal injury under the SIAA, which has a waiver of sovereign immunity. 46 U.S.C. § 30903(a).

In May 2024, after a delay due to criminal charges against the *Conception*'s captain, the Government filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) based on the discretionary function exception to the SIAA's waiver of sovereign immunity.[2] Plaintiffs responded that the motion should be continued and decided on a summary judgment standard and also contended that the Government's challenged conduct was not discretionary.

In August 2024, the district court granted the Government's motion to dismiss under the discretionary function exception. It explained that "the applicable statutes, regulations, and policies governing the Coast Guard's inspection of passenger vessels vest both the Coast Guard and the individual inspectors with the type of discretion that satisfies the Supreme Court's two-part test for application of the discretionary function exception."

---

[2] The discretionary function exception is rooted in the Federal Tort Claims Act ("FTCA"). "The FTCA waives sovereign immunity from suits arising out of certain negligent acts of federal employees." *Chang v. United States*, 139 F.4th 1087, 1092 (9th Cir. 2025) (internal quotation marks and citation omitted); *see also* 28 U.S.C. § 1346(b)(1). However, under the FTCA, the discretionary function exception explicitly reinstates the United States' immunity for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

12  FIEDLER V. USA

## II.  DISCUSSION

### A.  Standard of Review

We review de novo a dismissal for lack of subject matter jurisdiction under the discretionary function exception. *Myers v. United States*, 652 F.3d 1021, 1028 (9th Cir. 2011). "The government bears the burden of proving that the discretionary function exception applies."  *Id.* (citation omitted).  We review underlying factual findings for clear error.  *Lam v. United States*, 979 F.3d 665, 670 (9th Cir. 2020).

### B.  The Discretionary Function Exception Bars the Instant Suit

#### 1.  The Discretionary Function Exception Applies to the SIAA

Before determining whether the Coast Guard's conduct here fell within the discretionary function exception, we must confirm if the exception applies to the SIAA's immunity waiver in the first place.

Over three decades ago, this court squarely addressed this issue in *Earles v. United States*, holding that the discretionary function exception to the FTCA also "applies to the SIAA."  935 F.2d 1028, 1032 (9th Cir. 1991).  In *Earles*, the plaintiffs sued the United States under the SIAA for a boating accident arising from the Navy's alleged negligence in failing to illuminate a mooring buoy.  *Id.* at 1029–30.  Although "the SIAA does not expressly immunize the government for the exercise of a discretionary function" like the FTCA does, we nonetheless extended the discretionary function exception to the SIAA.  *Id.* at 1031.  Holding otherwise, we explained, "would subject all administrative and legislative decisions concerning the

public interest in maritime matters . . . to independent judicial review" if "those policy judgments were to cause private injuries." *Id.* at 1032 (quoting *In re Joint E. & S. Dists. Asbestos Litig.*, 891 F.2d 31, 35 (2d. Cir. 1989)). And every circuit to have considered the issue has agreed.[3] But more recent events require us to examine whether *Earles* remains good law.

Plaintiffs argue for the first time on appeal that *Thacker v. Tennessee Valley Authority*, 587 U.S. 218, 223 (2019), effectively overruled *Earles*.[4] In *Thacker*, the Supreme Court considered whether the discretionary function exception applied to the Tennessee Valley Authority

---

[3] *See, e.g.*, *McMellon v. United States*, 387 F.3d 329, 338 (4th Cir. 2004) (en banc) (listing all ten circuits' cases holding that the discretionary function exception applies to the SIAA and becoming the last circuit to join the other circuits); *Canadian Transp. Co. v. United States*, 663 F.2d 1081, 1086 (D.C. Cir. 1980); *Gercy v. United States*, 540 F.2d 536, 539 (1st Cir. 1976); *In re Joint E. & S. Dists. Asbestos Litig.*, 891 F.2d at 35; *Sea-Land Serv., Inc. v. United States*, 919 F.2d 888, 893 (3d Cir. 1990); *Wiggins v. United States*, 799 F.2d 962, 966 (5th Cir. 1986); *Gemp v. United States*, 684 F.2d 404, 408 (6th Cir. 1982); *Bearce v. United States*, 614 F.2d 556, 559–60 (7th Cir. 1980); *Tew v. United States*, 86 F.3d 1003, 1005 (10th Cir. 1996); *Williams v. United States*, 747 F.2d 700, 700 (11th Cir. 1984) (per curiam).

[4] The Government argues that Plaintiffs waived the *Thacker* issue, as they neither raised it in the district court nor argued that the discretionary function exception was inapplicable to the SIAA. But we nonetheless consider this issue, as it is "purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *Kaass L. v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015) (citation omitted). Furthermore, "because the applicability of [the discretionary function exception] affects our jurisdiction, we must consider it sua sponte," regardless of whether a party had raised the issue. *Mirmehdi v. United States*, 689 F.3d 975, 984 n.7 (9th Cir. 2012) (citation omitted).

14                          FIEDLER V. USA

("TVA"), a public entity that supplies electric power to millions of Americans in its region "[j]ust as . . . privately owned power companies (*e.g.*, Con Edison, Dominion Energy) do so in theirs." *Id.* at 221. The TVA Act waived the TVA's sovereign immunity, stating that it "[m]ay sue and be sued in its corporate name." *Id.* at 220 (citation omitted).

The Court unanimously held that "the waiver of sovereign immunity in TVA's sue-and-be-sued clause is [not] subject to a discretionary function exception, of the kind in the FTCA." *Id.* at 223. The TVA Act explicitly provides that the TVA may be sued, and does not "expressly recognize[] immunity for discretionary functions." *Id.* And while the TVA Act contains specific exceptions to the waiver of sovereign immunity, it "contains no exceptions relevant to tort claims, let alone one turning on whether the challenged conduct is discretionary." *Id.*

The Court also balked at the government's suggestion that the TVA Act universally imported an implied restriction to the waiver of sovereign immunity for discretionary functions. The Court acknowledged that *Federal Housing Administration v. Burr*, 309 U.S. 242, 245 (1940), outlined circumstances when "sue-and-be-sued" clauses can be interpreted in a narrower sense: (1) when the "type[] of suit [at issue is] not consistent with the statutory or constitutional scheme," or (2) the restriction is "necessary to avoid grave interference with the performance of a governmental function." *Thacker*, 587 U.S. at 224 (alteration in original) (quoting *Burr*, 309 U.S. at 245). But the Court rejected the government's separation of powers argument and noted that *Burr*'s latter implied exception confers the "possibility of immunity . . . only when a suit challenges governmental activities—the kinds of functions private parties typically do

not perform." *Id.* at 228. "When the TVA or similar body operates in the marketplace as private companies do, it is liable as they are for choices and judgments." *Id.* at 227–28.

Because of the TVA's hybrid status, the Court left for the lower courts to determine on remand whether the TVA was immune from the case at bar, which meant first deciding "whether the conduct alleged to be negligent [was] governmental or commercial in nature." *Id.* at 229.

Plaintiffs argue that *Earles* is "irreconcilable" with *Thacker*. We disagree.[5] "Generally, a panel opinion is binding on subsequent panels unless and until overruled by an en banc decision of this circuit." *United States v. Eckford*, 77 F.4th 1228, 1233 (9th Cir. 2023) (citation omitted). But one exception to this rule is where "intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority." *Miller*, 335 F.3d at 900. "[T]he clearly irreconcilable requirement is a high standard that demands more than mere tension between the intervening higher authority and prior circuit precedent." *Eckford*, 77 F.4th at 1233 (alternation in original) (internal quotation marks and citation omitted). Thus, "[i]f we can apply our precedent consistently with that of the higher authority, we must do so." *Id.* (citation omitted).

---

[5] The dissent argues that our court (like many others) erred in *Earles* by extending the discretionary function exception to the SIAA. Yet our inquiry today is a narrower one: it is whether *Earles* is "clearly irreconcilable" with *Thacker*. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). And *Thacker* did not decide if the SIAA, a statute distinct from the TVA Act, lacks a discretionary function exception. For the reasons set forth in our opinion (reasons the dissent does not dispute), we respectfully disagree that we can overrule *Earles* at this point.

16                    FIEDLER V. USA

While *Thacker* brings *Earles* into question, we cannot say this tension rises to the level of "clear irreconcilability." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1074 (9th Cir. 2018) ("Nothing short of 'clear irreconcilability' will do."). We acknowledge that neither the TVA Act nor the SIAA "expressly recognize[] immunity for discretionary functions." *Thacker*, 587 U.S. at 223. But this shared feature alone is not enough for *Thacker* to "undercut the theory or reasoning underlying [*Earles*] in such a way that the cases are clearly irreconcilable."[6] *Miller*, 335 F.3d at 900. Indeed, none of the tenets undergirding *Thacker* clearly undercut the reasoning behind *Earles*, as these cases differ in two key respects.

First, unlike the TVA Act, the SIAA does not involve a sue-and-be-sued clause. Instead, the SIAA's waiver of sovereign immunity is more conditional. It provides that "[i]n a case in which, . . . *if* a private person or property were involved, a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States or a federally-owned corporation." 46 U.S.C. § 30903(a) (emphasis added). This textual

---

[6] The only other court to consider this question concluded that *Thacker* did not overrule Eleventh Circuit precedent holding that the discretionary function exception applies to the SIAA. *See Jones v. United States*, 664 F. Supp. 3d 1311, 1319–20 (N.D. Ala. 2023). Notably, however, Chief Judge Pryor disagreed. In a statement respecting the denial of initial hearing en banc, he wrote that the Eleventh Circuit's case law importing a discretionary function exception into the SIAA was "wrong the day [the Eleventh Circuit] decided it," and "[t]o the extent [its] error . . . was not obvious before, the Supreme Court removed any doubt in *Thacker*." *Jones v. United States*, 155 F.4th 1270, 1270–71 (11th Cir. 2025) (Pryor, C.J.) (a statement respecting the denial of initial hearing en banc). As detailed *infra*, we respectfully disagree with Chief Judge Pryor's application of *Thacker* to preexisting SIAA case law.

distinction matters because of the long line of cases concerning "sue-and-be-sued" clauses that influenced the Court in *Thacker*. For instance, the *Thacker* Court discussed implied exceptions to the waiver of sovereign immunity in part because of *Burr*, which also involved a sue-and-be-sued clause. *Thacker*, 587 U.S. at 224. And taking note from *Burr*, the Court emphasized that such clauses "should be liberally construed." *Id.* (quoting *Burr*, 309 U.S. at 245); *see also id.* at 226–27 (noting that *Burr* and later decisions containing sue-and-be-sued clauses have distinguished between the governmental and the commercial).

Next, *Thacker* concerned a hybrid entity, which "sometimes resemble[d] a government actor, sometimes a commercial one." *Id.* at 228. While the TVA could not invoke sovereign immunity for its commercial conduct, the possibility of "an implied limit on the [immunity waiver] clause" for its governmental conduct remained. *Id.* at 229. Unlike the TVA, the Navy in *Earles* and the Coast Guard here are not mixed entities conducting private sector business. Rather, they are both traditional government actors performing traditional "governmental activities," for which the *Thacker* Court explicitly preserved the "possibility of immunity." *Id.* at 228; *see also United States v. Odneal*, 565 F.2d 598, 600–01 (9th Cir. 1977) (noting that the Coast Guard's primary functions are to enforce federal laws and regulations to promote the "safety of life and property on the high seas") (citing 14 U.S.C. § 102)).

Accordingly, we cannot say that *Thacker*, which addressed a sue-and-be-sued clause and the hybrid TVA structure, is "clearly irreconcilable" with *Earles*, which involved different statutory language and a traditional government actor. Thus, we must continue to treat *Earles* as controlling precedent.

18                         FIEDLER V. USA

### 2.  The District Court Correctly Applied the Discretionary Function Exception

We now consider whether the discretionary function exception should apply here.  Plaintiffs allege that the Coast Guard had a duty to identify and compel correction of alleged fire hazards, including improper electrical wiring, plastic trash cans, and plastic chairs.  A two-part test governs the discretionary function exception's application.  *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  A court first asks whether "the challenged actions involve an element of judgment or choice."  *Schurg v. United States*, 63 F.4th 826, 831 (9th Cir. 2023) (internal quotation marks and citation omitted).  If so, the court then asks whether "the judgment is of the kind that the discretionary function exception was designed to shield."  *Id.* (citation omitted).  Applying this test, we conclude that the discretionary function exception bars recovery here.

### a.  Element of Judgment or Choice

We begin by inquiring "whether a federal statute, regulation, or policy mandated a specific course of action, or whether the government actor retained an element of judgment or choice with respect to carrying out the challenged action."  *Id.* (citation omitted).  Where a government employee's action is "specifically prescribed by 'a federal statute, regulation, or policy,'" the action is nondiscretionary.  *Id.* (citation omitted).  And importantly, where a government employee's action is discretionary, "whether the discretion involved was abused makes no difference; the government will still prevail."  *Lam*, 979 F.3d at 673.

Here, Coast Guard inspectors were not mandated to identify the electrical wires, plastic trash cans, and plastic

chairs as fire hazards. While vessel inspections themselves are mandatory, *see* 46 C.F.R. § 176.500(b), inspectors have discretion in *how* to conduct such inspections. Namely, both the Old and New T Regulations do not require inspectors to identify and correct the particular fire hazards alleged here. The Old T Regulations provide only that "the marine inspector shall require that all observed unsafe practices and hazardous situations be corrected," but do not define what constitutes "unsafe practices" or "hazardous situations." *Id.* § 176.25-50(a) (1995); *see also, e.g.*, *Schurg*, 63 F.4th at 833 (concluding that an instruction for the Forest Service to consult authorities "if suppression activities have a high probability of occurring on private lands" involved discretion because it failed to define "suppression activities" or "high probability"). The same is true for the New T Regulations. 46 C.F.R. § 176.830(a) (stating only that "all observed unsafe practices, fire hazards, and other hazardous situations must be corrected").

And to the extent the New T Regulations single out plastic trash cans or chairs, there is still no duty for inspectors to identify these as hazards. *See, e.g.*, *id.* § 177.405(f) (noting that "waste receptacles must be constructed of noncombustible materials," "[u]nless other means are provided to ensure that a potential waste receptacle fire would be limited to the receptacle"); *id.* § 116.423(b) (specifying only "[p]assageways and stairway enclosures" as requiring "fire resistant furnishings"). Similarly, cable and wiring regulations do not require inspectors to identify allegedly faulty wiring. *See, e.g.*, *id.* § 176.806(a) (noting that vessels' electrical equipment inspections could include "[i]nspection of all cable as far as practicable"); *id.* § 183.340(b)(1) (requiring cable and wire

to "[h]ave stranded copper conductors with sufficient carrying capacity").

The regulations even preserve the Coast Guard's discretion in conducting inspections. Section 176.402 provides that the "initial inspection *may* include an inspection" of items such as "[s]anitary conditions and fire hazards." *Id.* § 176.402(c) (emphasis added); *see also id.* at § 176.402(b). Another section notes that inspectors must give "due consideration" "to the hazards involved in the operation permitted by a vessel's [COI]." *Id.* § 176.800(b). And it clarifies that "the standards may vary in accordance with the vessel's area of operation or any other operational restrictions or limitations." *Id.*

Because no "federal statute, regulation, or policy mandated" that Coast Guard inspectors identify and correct the plastic trash cans and chairs or any improper electrical wiring, the inspectors' alleged misfeasance was discretionary. *Schurg*, 63 F.4th at 831 (citation omitted).

### b. Public Policy Considerations

The second step of the discretionary function test "asks whether the discretionary decision challenged by the plaintiff 'is of the kind that the discretionary function exception was designed to shield.'" *Nanouk v. United States*, 974 F.3d 941, 945 (9th Cir. 2020) (quoting *Berkovitz*, 486 U.S. at 536). This inquiry "preclude[s] courts from second guessing discretionary judgments 'grounded in social, economic, and political policy.'" *Id.* (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)). And as the Supreme Court emphasized in *Varig Airlines*, "whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of

the Government acting in its role as a regulator of the conduct of private individuals."  467 U.S. at 813–14.

Coast Guard inspections are textbook discretionary judgments rooted in public policy considerations.  Inspectors are instructed to interpret regulations "to avoid disruption and undue expense to industry."  46 U.S.C. § 3305(d)(1). The regulations themselves even permit "departures from the specific requirements when unusual circumstances" arise, 46 C.F.R. § 175.550, and acknowledge that inspection "standards may vary in accordance with the vessel's area of operation or any other operational restrictions," *id.* § 176.800(b).    By requiring inspectors to "balanc[e] considerations of safety and economics with reference to the needs and uses of the particular vessel being inspected," these judgments satisfy the public policy considerations prong of the discretionary function exception test. *Cassens v. St. Louis River Cruise Lines, Inc.*, 44 F.3d 508, 514–15 (7th Cir. 1995) (concluding the discretionary function exception covered Coast Guard inspectors' allegedly negligent omission); *see also Smith v. U.S. Coast Guard*, 220 F. Supp. 2d 275, 281 (S.D.N.Y. 2002) (noting that inspectors' "judgments implicated considerations of public policy" and were thus "shielded by the discretionary function exception").

Finally, the fact that the Coast Guard handles ten other missions—beyond just marine safety—further highlights that its judgments with respect to inspections are grounded in public policy considerations.  *See Tew*, 86 F.3d at 1006 (noting that whether it would be "economically or operationally feasible" to commit Coast Guard resources to a particular mission is "a proper basis for the exercise of discretion"); *Compagnie Mar. Marfret v. San Juan Bay Pilots Corp.*, 532 F. Supp. 2d 369, 382 (D.P.R. 2008)

(balancing "the needs of society and maritime commerce" with "the expenditure of federal funds" is inherently "grounded in social and economic policy").

Accordingly, the district court correctly dismissed Plaintiffs' suit for lack of subject matter jurisdiction, as the Government's actions fell within the discretionary function exception to the SIAA's waiver of immunity.

**AFFIRMED.**[7]

---

[7] We also reject Plaintiffs' procedural challenges. The district court correctly considered the Government's argument under Rule 12(b)(1) (motion to dismiss for lack of subject matter jurisdiction) rather than Rule 56 (motion for summary judgment). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In addition, the district court did not abuse its discretion by denying Plaintiffs' request to stay proceedings, pending resolution of the criminal prosecution against the *Conception*'s captain. Discovery in the criminal prosecution related to the cause and origin of the fire, which is not essential to the discretionary function exception issue. *See Lam*, 979 F.3d at 673 ("[C]ourts should put the negligence issue aside on a [discretionary function exception]-based motion to dismiss and focus its inquiry on whether the employee's acts were discretionary.").

BUMATAY, Circuit Judge, dissenting:

Thirty-three passengers and six crew members boarded the *Conception* for a scuba trip.  The top deck of the *Conception* caught fire while they were sleeping.  The flames spiraled out of control, trapping the passengers and one crew member below deck.  In the end, thirty-four people perished.

Now, Nancy Fiedler—a mother of one of victims of the *Conception* fire—and others bring this wrongful-death action against the United States.  Their suit alleges that a chain of negligent acts led to the tragedy, including faulty safety inspections by the United States Coast Guard.  They claim the inadequate inspections led to the *Conception* operating with "open and obvious" fire hazards, contributing to the death of their family members.

The question on appeal is not about whether the United States should be held liable for the *Conception* fire, but simply whether Fiedler and the others should have their day in court.  The answer should be easy.  The Suits in Admiralty Act ("SIAA") provides that "a civil action in admiralty in personam may be brought against the United States[.]"  46 U.S.C § 30903(a).  This text settles the question.  It expressly waives the United States' sovereign immunity over admiralty cases involving its vessels and personnel.  And SIAA's text contains no other exceptions.  So nothing bars Fiedler's suit against the United States.

The majority says otherwise.  Relying on *Earles v. United States*, 935 F.2d 1028 (9th Cir. 1991), it closes the courthouse doors because the so-called "discretionary-function exception" bars SIAA's waiver of sovereign immunity.  But that's wrong.  SIAA's text contains no such

exception. And nothing indicates that Congress intended for sovereign immunity to be impliedly preserved for discretionary functions in admiralty suits. By creating a discretionary-function exception out of whole cloth, we usurp the legislative role and upset separation-of-powers principles.

And *Earles* shouldn't stand in the way of a faithful reading of SIAA. In incorporating the discretionary-function exception into SIAA, *Earles* ignored plain text and privileged a policy-based rationale. *See id* at 1032. Recently, the Supreme Court has expressly commanded that waivers of sovereign immunity must be evaluated according to their text. *See Thacker v. Tennessee Valley Auth.*, 587 U.S. 218, 223–24 (2019). And importing an atextual discretionary-function exception into waiver-of-sovereign-immunity statutes, the Court said, violates Congress's intent and undermines the separation of powers. *Id.* at 226. Given these clear directives, *Earles* has been "effectively overruled." *Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1121 (9th Cir. 2020).

Because we should have interpreted SIAA according to its plain text, overruled *Earles*, and allowed this suit to proceed, I respectfully dissent.

## I.

### Sovereign Immunity & the Suits in Admiralty Act

It is bedrock that the United States is generally immune from suit. *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024). This rule dates to the beginning of the Republic, based on the idea that no court could exercise jurisdiction over a sovereign without its consent. *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 411–

12 (1821) (Marshall, C.J.).  So a plaintiff suing the United States must point to a Congressional statute waiving sovereign immunity.  *Kirtz*, 601 U.S. at 48–49.  This requirement is jurisdictional, so immunity may not be assumed away to reach the merits of a claim.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

For just over half our history, claims by vessel owners against the United States—for example, those arising from a naval warship colliding with a privately owned civilian boat—were handled directly by Congress with private bills. *Canadian Aviator v. United States*, 324 U.S. 215, 218 (1945).  But American shipping picked up considerably during the First World War, including via merchant vessels owned and operated by the United States.  Note, John Grier Bartol, Jr., *Maritime Liability of the United States*, 100 U. Pa. L. Rev. 689, 691 (1952).  The result was more frequent accidents between the government's merchant fleet and private vessels.  *See* Note, Donald S. Ingraham, *The Suits in Admiralty Act and the Implied Discretionary Function*, 1982 Duke L.J. 146, 153.

So Congress enacted three statutes between 1916 and 1925 to replace the inefficient private-bill system that previously addressed such instances.  *McMellon v. United States*, 387 F.3d 329, 334–35 (4th Cir. 2004) (en banc). First, in 1916, Congress passed the Shipping Act, which subjected the government's merchant fleet "to all laws, regulations, and liabilities governing merchant vessels." Pub. L. No. 64-260, 39 Stat. 728 § 9 (current version at 46 U.S.C. § 808(b)).  But soon after, the Supreme Court interpreted the Act to allow private parties to seize government-owned merchant vessels in *in rem* actions.  *See The Lake Monroe*, 250 U.S. 246, 256 (1919); Ingraham, 1982 Duke L.J. at 154.

26                          FIEDLER V. USA

Congress was unsatisfied with that outcome and responded with the original version of SIAA, prohibiting these seizures. Pub. L. No. 66-156, 41 Stat. 525, 525 § 1 (1920) (current version at 46 U.S.C § 30908); *see also* Ingraham, 1982 Duke L.J. at 154. Instead, Congress waived the United States' sovereign immunity for *in personam* actions for damages involving government-owned or operated vessels that were "employed as a merchant vessel." *Id*. at 526–27, § 2 (current version at 46 U.S.C § 30903(a)). And a few years later, Congress passed the Public Vessels Act, extending the waiver of sovereign immunity to actions for damages involving other non-merchant ships (such as naval vessels or federal pilot boats). Pub. L. No. 68-546, 43 Stat. 1112, 1112 § 1 (1925) (current version at 46 U.S.C. § 781).

In 1960, Congress simplified this troika of statutes by removing SIAA's limitation to only "merchant vessels." Pub. L. No. 86–770, 74 Stat. 912, 912 § 3 (1960). The amended text (operative today) allows "a civil action in admiralty in personam . . . against the United States or a federally-owned corporation" if a case could have been maintained against a private person, vessel, or cargo. 46 U.S.C § 30903(a). This change expanded SIAA's coverage of maritime tort claims asserted against the government. *United States v. United Cont'l Tuna Corp*., 425 U.S. 164, 176 n.14 (1976). If a plaintiff would have had a valid action in admiralty for damages against a private party, SIAA waives sovereign immunity when the defendant is the United States.

Despite SIAA's broad language, courts have narrowed its waiver of sovereign immunity. They've done so based on the so-called discretionary-function exception—an exception that appears nowhere in SIAA's text. Instead, the

exception is rooted in an entirely different statute—the Federal Tort Claims Act ("FTCA"). *See* 28 U.S.C. § 2680(a).

First enacted almost 15 years before SIAA, the FTCA subjects the United States to suit for money damages for injury, death, or loss of property, "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" Pub. L. No. 79-601, 60 Stat. 812, 842 tit. IV, §§ 401–24 (1946) (codified at 28 U.S.C. §§ 1346(b), 2671–80). The FTCA, however, *expressly* exempts from waiver any suit "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty[.]" 28 U.S.C. § 2680(a). The purpose of the FTCA's discretionary-function exception purpose is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).

Over time, every circuit to have considered the issue imported this discretionary-function exception into SIAA. *See McMellon*, 387 F.3d at 338 (compiling cases). In doing so, they often acknowledged the lack of any discretionary-function exception in SIAA's text. *See e.g.*, *Earles*, 935 F.2d at 1031. But they justified creating one based on concerns over judicial "second-guessing" of executive-branch policy choices. *See, e.g.*, *Canadian Transp. Co. v. United States*, 663 F.2d 1081, 1085 (D.C. Cir. 1980); *see also, cf. Varig Airlines*, 467 U.S. at 814. So in nearly every circuit today, suits involving discretionary functions are barred even when such "a civil action in admiralty could [have] be[en]

maintained" against similarly situated private parties. 46 U.S.C § 30903.

And in 1991, our circuit joined the chorus. *Earles* involved a deadly speed-boat crash off Seal Beach, California. 935 F.2d at 1029–30. The district court held that the United States was comparatively negligent for failing to light a buoy that contributed to the crash, and awarded damages. *Id.* at 1030. The Ninth Circuit reversed. *Id.* Although we acknowledged that SIAA "does not expressly immunize the government for the exercise of a discretionary function," we nonetheless imported the FTCA's exception. *Id.* at 1031. We reasoned that the FTCA's discretionary-function exception was merely a "clarifying amendment," and so Congress expected that claims covered by that exception would be immunized by "judicial construction" even in its absence. *Id.* (simplified). We concluded that the lack of an express exception in SIAA's text did not mean none should exist. *Id.* We then relied on what we viewed as an unacceptable policy outcome for incorporating the exception: Without the exception, "we would subject all administrative and legislative decisions concerning the public interest in maritime matters . . . to independent judicial review[.]" *Id.* (simplified). This was sufficient for the panel to join other circuits in holding that SIAA includes a discretionary-function exception. *Id.*

## II.

## SIAA Has No Discretionary-Function Exception

Despite this current trend, SIAA is a broad waiver of sovereign immunity for admiralty cases. It contains no express discretionary-function exception. And nothing in its statutory scheme reveals any congressional intent to import

the exception.  That should've settled this question, subjecting the United States to suit here.

**A.**

Begin with SIAA's text.  It starts with the title "Waiver of immunity."  46 U.S.C § 30903(a).  So we know exactly what Congress was doing in enacting SIAA: "waiv[ing] immunity."  The statutory text then contains a broad waiver of sovereign immunity:

> In a case in which, if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States or a federally-owned corporation.

*Id.*

The statute is clear—if SIAA's conditions are met, then "a civil action in admiralty in personam may be brought against the United States[.]"  *Id.*  And none of SIAA's conditions depend on whether the government acted within its discretion.  *See id.*  While "Congress need not state its intent [to waive sovereign immunity] in any particular way," *Kirtz*, 601 U.S. at 48, this text could not be clearer in waiving sovereign immunity for *all* admiralty cases involving the government's vessels, cargo, or personnel when a similarly situated private party would be subject to a civil suit.  Thus, Congress expressly limited immunities only to those available to private parties and disclaimed any discretionary-function exception for SIAA suits.

This should be the end of the story. *See Delligatti v. United States*, 604 U.S. 423, 439 (2025) (Gorsuch, J., dissenting) ("When faced with a question of statutory interpretation, the text is where we must begin (and often end).").  As the Supreme Court has recently said, our job is to read waiver-of-immunity statutes in "their usual and ordinary sense" and give their full meaning "even if inconvenient, costly, and inefficient." *Thacker*, 587 U.S. at 224 (simplified) (rejecting a discretionary-function exception for the Tennessee Valley Authority Act).  The Court cautioned that lower courts shouldn't create waiver exceptions when "[n]othing in the statute . . . expressly recognizes immunity for discretionary functions." *Id.* at 223.

Of course, we must also consider whether statutory text invokes a term of art, which may contain "implied exceptions." *Id.* at 224 (examining whether the TVA Act's "sue-and-be-sued" clause might have implied exceptions).  But unlike the sue-and-be-sued clause in *Thacker*, which had well-recognized implied exceptions, no one suggests that the precise language of SIAA—"a civil action in admiralty in personam may be brought against the United States"—has a comparable history of exceptions.  Indeed, SIAA's text is more straightforward than the TVA Act's sue-and-be-sued terminology.

Several other reasons support sticking with the plain text of SIAA.

First, the interplay between the FTCA and SIAA shows that the discretionary-function exception should not be imported from one to the other.  While the FTCA contains an express discretionary-function exception, it explicitly excludes from its scope "[a]ny claim for which a remedy is

provided by [SIAA] relating to claims or suits in admiralty against the United States." 28 U.S.C. § 2680(d). Even more, SIAA contains an exclusive-remedy provision that would prohibit looking to FTCA remedies anyway. *See* 46 U.S.C. § 30904. That means that "Congress made a considered decision *not* to apply the FTCA to" SIAA. *See Thacker*, 587 U.S. at 225. Recognizing the discretionary-function exception in SIAA then would "negate that legislative choice" and "let the FTCA in through the back door, when Congress has locked the front one." *Id.* Indeed, if Congress wanted to import the discretionary-function exception into SIAA, Congress could have easily cross-referenced it in the FTCA or SIAA. Instead, Congress did the opposite by expressly *disclaiming* any connection. 28 U.S.C. § 2680(d); 46 U.S.C. § 30904. Simply, the FTCA and SIAA are mutually exclusive waivers of immunity and so "the FTCA's discretionary function provision has no relevance" to SIAA cases. *See id.* at 223.

Second, SIAA's enactment history—"to the extent it plays any role here"—supports such a plain-text reading. *See United States v. Miller*, 604 U.S. 518, 535 (2025). SIAA was first enacted because of the Supreme Court's 1919 holding that the Shipping Act allowed private claimants to seize government-owned merchant ships. *See The Lake Monroe*, 250 U.S. at 256. Yet Congress's response was measured—the 1920 SIAA didn't prohibit suits against the United States entirely but allowed *in personam* suits for money damages. *See* 41 Stat. 525, 525 § 1. In other words, Congress expressly limited the *remedies* plaintiffs could recover because of its concern for governmental maritime operations, yet it did not limit the United States' *exposure to suit* out of the same concern. This counts against reading the discretionary-function exception into SIAA because it

would go further than Congress's chosen path for avoiding interference with government activities.  *See Thacker*, 587 U.S. at 226.

Third, "[w]he[n] Congress knows how to say something but chooses not to, its silence is controlling." *In re Griffith*, 206 F.3d 1389, 1394 (11th Cir. 2000).  Recall that Congress first enacted the FTCA with its express discretionary-function exception in 1946.  *See Varig Airlines*, 467 U.S. at 809 (describing the legislative history of the FTCA).  Recall too that Congress amended SIAA in 1960 to waive sovereign immunity for *in personam* suits in admiralty.  *United Cont'l Tuna Corp.*, 425 U.S. at 176 n.14.  Congress thus had almost fifteen years of experience with the FTCA's enumerated discretionary-function exception and didn't import it into SIAA.  Because "[w]e assume that Congress is aware of existing law when it passes legislation," *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 422 (2009), it's fair to say that Congress knew how to create an exception to SIAA's waiver of sovereign immunity and declined to do so.  So it would violate the separation of powers for us to judicially graft one onto SIAA.  *Cf. Bostock v. Clayton Cty.*, 590 U.S. 644, 646–47 (2020) ("[W]hen Congress chooses not to include any exceptions to a broad rule, this Court applies the broad rule.").

In sum, nothing in the text, structure, or enactment history of SIAA supports a discretionary-function exception.  Indeed, even the circuit courts that recognize the exception concede that they "cannot conclude that Congress clearly intended for the SIAA's waiver of sovereign immunity to be subject to an exception for discretionary functions, nor can [they] reach that conclusion by resort to traditional tools of statutory construction." *McMellon*, 387 F.3d at 340.  To me, that should end the analysis.

## B.

In contrast, courts that have read a discretionary-function exception into SIAA have largely relied on misguided separation-of-powers principles.  Take *Earles*.  There, the panel majority reasoned,

> Were we to find the discretionary function exception not to be applicable to the SIAA, we would subject all administrative and legislative decisions concerning the public interest in maritime matters ... to independent judicial review in the not unlikely event that the implementation of those policy judgments were to cause private injuries.

*Earles*, 935 F.2d at 1032 (simplified).  In *McMellon*, the Fourth Circuit even suggested that the lack of a discretionary-function exception would be unconstitutional because it would "substantially impair[]" "the executive branch's ability to 'faithfully execute [ ]' the law."  387 F.3d at 342 (citing U.S. Const., art. II § 3).  In other words, these courts decided that they needed to protect the political branches from themselves.  And so, in their wisdom, they fixed SIAA to deny waiver where Congress granted it.

While I have my doubts that the Republic would crumble if the United States were subject to money damages for longstanding admiralty tort claims, this policy-based analysis turns the separation of powers on its head.  The separation of powers means that we judges must stay in our lane.  The Constitution unquestionably confers on Congress the task of deciding when to waive the government's immunity.  As the Supreme Court has instructed us, "the

34                          FIEDLER V. USA

power to waive the federal government's immunity is
Congress's prerogative, not ours[.]" *Kirtz*, 601 U.S. at 48.
That definitively precludes us from second-guessing
Congress's choice to waive immunity. "[W]e have no
business rewriting the statute to supply exceptions that
Congress did not provide." *Jones v. United States*, 155 F.4th
1270, 1270–71 (11th Cir. 2025) (Pryor, C.J. respecting the
denial of initial hearing en banc) (simplified) (observing that
the Eleventh Circuit's precedent holding that SIAA includes
a discretionary-function exception was "wrong the day [the
Eleventh Circuit] decided it"). Indeed, "judges engage in
activism, not 'restraint,' when they amend the statutes
Congress writes." *Id.*

Instead, the separation of powers requires us to
acknowledge that—when it comes to sovereign-immunity
waivers—"[t]he right governmental actor (Congress) is
making a decision within its bailiwick (to waive immunity)
that authorizes an appropriate body (a court) to render a legal
judgment." *Thacker*, at 226. While we "may question the
wisdom of holding federal agencies accountable for their
violations," "Congress's judgment commands our respect
and the law it has adopted speaks clearly." *Kirtz*, 601 U.S.
at 64. Here, Congress has clearly spoken: "a civil action in
admiralty in personam may be brought against the United
States" when a claim could be brought against a private
person. 46 U.S.C § 30903(a). No ifs, ands, or buts.

Finally, courts importing the discretionary-function
exception into SIAA conjure a parade of horribles to justify
the judicial intrusion. For example, we're told that "without
a discretionary function exception, the government could be
held liable for an initial decision to build a dam across a
particular navigable waterway or to otherwise change the
course of a navigable waterway," the "government could be

held liable for the Coast Guard's drug-interdiction activities," or "the government could perhaps even be held liable for an inaccurate weather forecast." *McMellon*, 387 F.3d at 342. Whether these policy-based justifications make sense, that's for Congress to balance and weigh—not us. After all, "Congress is 'far more competent than the Judiciary' to weigh such policy considerations." *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (simplified).

So unquestionably SIAA has no discretionary-function exception as a matter of text or congressional intent, meaning that this suit should have gone forward.

## III.

### *Thacker* is Clearly Irreconcilable with *Earles*

One question remains—what to do with *Earles*? *Earles* incorporated the discretionary-function exception into SIAA. *Earles*, 935 F.2d at 1031. Does that mean that this panel was powerless to do anything about its contravention of SIAA's text? The answer is "no."

### A.

Ordinarily, a three-judge panel can't overrule a precedent from a previous three-judge panel. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). But our circuit's rule gives way to the Supreme Court's commands. *Id.* If a later Supreme Court decision "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable," we "should consider [our]selves bound by" the Supreme Court's reasoning. *Id.* "After all, unless we wish anarchy to prevail within the federal judicial system, we are always required to follow the controlling opinions of the Court." *Langere*, 983 F.3d at 1121 (simplified).

And we are bound by the Court's "mode of analysis," not just its results. *Miller*, 335 F.3d at 900 (simplified). So we don't require "carbon cop[y]" issues; it's enough that they derive from the "same inquiry." *Langere*, 983 F.3d at 1121. "Sometimes . . . our precedent becomes effectively overruled by a Supreme Court decision that is closely on point, even if the decision does not do so expressly." *Langere*, 983 F.3d at 1121. True, mere tension with Supreme Court authority isn't enough. *See Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012). But when "a rule announced by this court and a rule later announced by the Supreme Court cannot both be true at the same time . . . the former must give way to the latter." *Langere*, 983 F.3d at 1122.

Contrary to the majority's view, *Earles*'s analysis of SIAA is clearly irreconcilable with *Thacker* and so we should not have followed it. *Thacker* dealt with the TVA Act, which contained a clause allowing it to "sue and be sued in its corporate name." 587 U.S. at 220. This clause has been interpreted as a "broad" waiver of sovereign immunity and does not include an express discretionary-function exception like the FTCA's. *Id.* Despite the lack of a textual basis, however, lower courts had imported the FTCA's discretionary-function exception wholesale into the TVA Act. *Id.* A unanimous Court reversed. *Id.* at 223.

In doing so, the Court instructed how we should construe waivers of sovereign immunity. First, the Court looked at the text of the statute. The Court directed that the text be given its "usual and ordinary sense." *Id.* at 224 (simplified). And "[n]othing in the statute . . . expressly recognize[d] immunity for discretionary functions." *Id*. at 223. While the TVA Act was subject to certain exceptions, it "contain[ed none] . . . turning on whether the challenged conduct is

discretionary." *Id.* This lack of an express discretionary-function exception was all but dispositive of the question.

Second, the FTCA's express exclusion of TVA Act claims was another reason to not import the FTCA's discretionary-function exception. "Congress made clear" that the FTCA did "not apply to any claim arising from the activities of the TVA." *Id.* (simplified). "That mean[t] the FTCA's discretionary function provision ha[d] no relevance" to TVA Act claims. To hold otherwise would "let the FTCA in through the back door, when Congress has locked the front one." *Id.* at 225. To the Court, this was nearly the "end of the story." *Id.* at 224.

Third, the Court then analyzed the purported separation-of-powers concerns with denying a discretionary-function exception. Importantly, it did so o*nly* because the precise language used in the TVA Act—the "sue-and-be-sued clause"—had been interpreted in the past to contain "implied exceptions." *Id.* (quoting *Fed. Housing Admin. v. Burr*, 309 U.S. 242, 245 (1940)). Because precedent suggested sue-and-be-sued clauses uniquely might contain implied exceptions, the Court considered whether any such exception was "necessary to avoid grave interference with the performance of a governmental function." *Id.* (quoting *Burr*, 309 U.S. at 245). In any event, the Court easily dismissed those concerns. The Court flatly stated that Congress's decision to waive immunity—even for the government's discretionary functions—does not "offend the separation of powers." *Id.* at 226. It is simply enough that "[t]he right governmental actor (Congress) is making a decision within its bailiwick (to waive immunity) that authorizes an appropriate body (a court) to render a legal judgment." *Id.*

Finally, the Court thought it an "overreach[]" to suggest that allowing suits based on the government's discretionary conduct would "gravely interfere with governmental functions." *Id.* (simplified). While recognizing that some governmental activity might justify retaining some immunity, the Court still rejected "the wholesale incorporation of the discretionary function exception." *Id.* at 227. Instead, "a far more refined analysis" was required. *Id.* Even when governmental activity is involved, something like a discretionary-function exception "might" be invoked "only" when it is "clearly shown" that it is "necessary to avoid grave interference with a governmental function's performance." *Id.* at 228 (simplified). It then remanded to the lower courts to figure out when this "high bar" is met. *Id.*

### B.

The unmistakable import of *Thacker* is that the text and structure of the law governs whether an exception to the waiver of sovereign immunity exists. *See also Miller*, 604 U.S. at 529 (examining "text and structure" to decide whether sovereign-immunity was waived). And only when "implied exceptions" to that text have been recognized do we even consider whether "grave interference" with a government function would require any exception to the waiver. *Thacker*, 587 U.S. at 223. And even then, "the wholesale incorporation of the discretionary function exception" is never appropriate. *Id.* at 227. *Earles* failed to follow any of this analysis, making it and *Thacker* "clearly irreconcilable." *Miller*, 335 F.3d at 900.

First, *Earles* purposefully disregarded SIAA's plain text. *See Earles*, 935 F.2d at 1031. It conceded that "the SIAA does not expressly immunize the government for the

exercise of a discretionary function." *Id.* But unlike in *Thacker*, a lack of text was no obstacle; *Earles* merely proclaimed that "the omission of the Exception from the SIAA does not necessarily mean that the SIAA is not subject to it." *Id.* So the text wasn't that important to *Earles*. While the majority downplays this incompatibility with *Thacker*, it can't ignore that plain-text analysis was central to the Court's reasoning in that case.

Second, rather than recognizing the FTCA's express inapplicability to SIAA claims, *Earles* imported wholesale the FTCA's *textual* discretionary-function exception into SIAA. Unlike *Thacker*, *Earles* ignored that the FTCA expressly excluded claims under SIAA from its scope. *See* 28 U.S.C. § 2680(d). Instead, *Earles* coupled the two statutes together and ruled that "the Discretionary Function Exception applies to SIAA as well as to the FTCA." 935 F.2d at 1032. But this smuggles the FTCA into SIAA against Congress's express wishes and the Court's instruction in *Thacker*. *See Thacker*, 587 U.S. at 225 (warning against "let[ting] the FTCA in through the back door, when Congress has locked the front one").

Third, *Earles* shouldn't have even considered separation-of-powers concerns. Again, *Thacker* only analyzed that issue because the "sue-and-be-sued clause" has been historically recognized to contain "implied exceptions." *Id.* at 224. We have no such language or terms of art here. While the majority says *Thacker* is based on the TVA Act's "sue-and-be-sued" language, the Court's textual reasoning applies with even greater force here because no one argues that SIAA's straightforward language contains similar established implied exceptions. Indeed, SIAA could not be clearer: if its conditions are met, then "a civil action in admiralty in personam may be brought against the United

States."   46 U.S.C. § 30903(a).   And so the majority is simply wrong to cast SIAA's waiver as "more conditional" than the TVA Act's term-of-art phrase.   So based on *Thacker*'s reasoning, *Earles* should be overruled just by looking at SIAA's text.

Fourth, even if we should consider separation-of-powers concerns, *Earles* got them exactly wrong.  *Earles* believed denying an exception would "subject all administrative and legislative decisions concerning the public interest in maritime matters . . . to independent judicial review[.]"  935 F.2d at 1031 (simplified).  But this was precisely *opposite* to what the Supreme Court said in *Thacker*: as long as the "right governmental actor (Congress)" decides to "authorize[] an appropriate body (a court) to render a legal judgment," then there are no "separation of powers problems."  *Id.* at 226.

Finally, even if the discretionary-function exception has any relevance in SIAA suits, *Earles*'s wholesale importation of the FTCA exception violates *Thacker*'s teachings.  Once again, *Thacker* emphasized that recognizing any exception to the waiver of immunity required "a far more refined analysis" than "wholesale incorporation" of the exception.  *Id.* at 227.  Any implied exception would apply only to a narrow category of government conduct: when the government "clearly show[s]" that it is "necessary to avoid grave interference with a governmental function's performance."  *Id.* at 228 (simplified).  Rather than clearing this "high bar," *id.*, *Earles* granted the government immunity in *all* admiralty cases involving *any* government discretion, *Earles*, 935 F.2d at 1032.

In sum, the "mode of analysis" that *Earles* employed was expressly rejected by *Thacker* in deciding a "closely on

point" question of law. *Langere*, 983 F.3d at 1121. Thus, *Thacker* "effectively overruled" *Earles* and this panel was not bound to follow it. *Id.*

## IV.

The Supreme Court has told us that when it comes to sovereign immunity, text is supreme and Congress's will trumps our own. We should have listened to the Court's instructions and recognized that *Earles* has been effectively overruled.

I respectfully dissent.