**No. 24-5064**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

NANCY FIEDLER, Personal Representative of
the ESTATE OF LISA FIEDLER, *et al*.,

Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA,

Defendant-Appellee.

On Appeal from the United States District Court
for the Central District of California
No. 2:21-cv-7065 – Hon. Percy Anderson

**UNITED STATES OF AMERICA'S
RESPONSE TO APPELLANTS'
PETITION FOR REHEARING EN BANC**

BRETT A. SHUMATE
  *Assistant Attorney General,
  Civil Division*

ERIC KAUFMAN-COHEN
  *Attorney in Charge, West Coast
  Office*

JILL DAHLMANN ROSA
  *Senior Aviation & Admiralty
  Counsel*

SCOTT PERRYGO
  *Trial Attorney*
  U.S. Department of Justice
  Civil Division, Torts Branch
  450 Golden Gate Avenue, 7-5395
  San Francisco, California 94102
  Telephone: (415) 436-6648
  Facsimile: (415) 436-6632

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ..............................................................................................1

STATEMENT .....................................................................................................2

ARGUMENT ......................................................................................................3

I. The panel opinion does not conflict with precedent of any circuit. ......... 4

II. The decision does not conflict with *Thacker*. ............................................... 4

A. *Thacker* addressed only commercial activities of sue-and-be-sued hybrid public corporations, not traditional agencies, the SIAA, or core governmental functions. ............................................. 5

B. To the extent *Thacker* applies, this case fits within its framework. 9

III. The history of the SIAA and FTCA supports inclusion of the exception. ................................................................................................................... 9

A. Pre-1960 SIAA and PVA ................................................................. 10

B. 1960 Amendment to SIAA ............................................................. 14

C. Congress ratified the uniform judicial interpretation that the SIAA contains a discretionary function exception. ................................. 17

CONCLUSION ................................................................................................18

Form 11. Certificate of Compliance for Petitions for Rehearing/Responses ..........19

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Clyde-Mallory Line v. The Eglantine,*
317 U.S. 395 (1943) ..................................................................... 7

*Coates v. United States,*
181 F.2d 816 (8th Cir. 1950) ....................................................... 13

*Cornell Steamboat Co. v. United States,*
138 F. Supp. 16 (S.D.N.Y. 1956) ................................................ 12

*Dalehite v. United States,*
346 U.S. 15 (1953) ........................................................... 8, 13, 16-17

*Earles v. United States,*
935 F.2d 1028 (9th Cir. 1991) ............................................. 1, 13, 14, 15

*F.D.I.C. v. Meyer,*
510 U.S. 471 (1994) ...................................................................... 6

*Federal Hous. Admin., Region No. 4. v. Burr,*
309 U.S. 242 (1940) ................................................................. 5, 6, 7

*Fiedler v. United States,*
165 F.4th 1310 (9th Cir. 2026) ............................................. 1, 2, 4, 16

*Hess v. United States,*
259 F.2d 285 (9th Cir. 1958) ...................................................... 12

*Keifer & Keifer v. Reconstruction Fin. Corp.,*
306 U.S. 381 (1939) ...................................................................... 6

*Library of Cong. v. Shaw,*
478 U.S. 310 (1986) ...................................................................... 9

*Lorillard v. Pons,*
434 U.S. 575 (1978) ..................................................................... 17

*McMahon v. United States,*
342 U.S. 25 (1951) ........................................................................ 7

*McMellon v. United States*,
387 F.3d 329 (4th Cir. 2004) ................................................................ 14, 15, 17

*Moran v. United States*,
102 F. Supp. 275 (D. Conn. 1951) ........................................................ 12

*Otness v. United States*,
178 F. Supp. 647 (D. Alaska 1959) ....................................................... 12

*Pioneer S.S. Co. v. United States*,
176 F. Supp. 140 (E.D. Wis. 1959) ....................................................... 12

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997) ................................................................................ 10

*Ryan Stevedoring Co. v. United States*,
175 F.2d 490 (2d Cir. 1949) ........................................................... 10, 12

*Sea-Land Serv., Inc. v. United States*,
919 F.2d 888 (3d Cir. 1990) .............................................................. 8, 16

*Servis v. Hiller Sys. Inc.*,
54 F.3d 203 (4th Cir. 1995) ................................................................. 7-8

*Somerset Seafood Co. v. United States*,
193 F.2d 631 (4th Cir. 1951) ................................................................ 13

*Standard Oil Co. of N.J. v. United States*,
267 U.S. 76 (1925) ............................................................................... 6-7

*Steamtug Aladdin, Inc. v. City of Boston*,
163 F. Supp. 499 (D. Mass. 1958) ........................................................ 12

*Thacker v. Tennessee Valley Auth.*,
587 U.S. 218 (2019) .................................................... 1, 5, 6, 7, 9, 12

*Thacker v. Tennessee Valley Auth.*,
2021 WL 1338306 (N.D. Ala. Apr. 9, 2021) ......................................... 6

*United States v. Boylan*,
167 F.4th 1266 (9th Cir. 2026) .............................................................. 3

*United States v. Clyde-Mallory Lines*,
  127 F.2d 569 (5th Cir. 1942) ............................................................. 7

*United States v. Cont'l Tuna Corp.*,
  425 U.S. 164 (1976) .............................................. 10, 11, 14, 15, 16

*United States v. Olander*,
  572 F.3d 764 (9th Cir. 2009) ........................................................ 10

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
  467 U.S. 797 (1984) .......................................... 8, 13, 14, 17

*Walton v. United States*,
  24 Ct. Cl. 372 (1889) ................................................................. 11

**Statutes:**

14 U.S.C. § 101 ............................................................................. 9

16 U.S.C. § 831 ............................................................................. 5

16 U.S.C. § 831c ........................................................................... 5

28 U.S.C. §§ 1346, 2671 *et seq.* ................................................... 5

46 U.S.C. §§ 30901-30918 ........................................................ 1, 7

46 U.S.C. §§ 31101-31113 ............................................................ 7

Act of Mar. 9, 1920,
  ch. 95, 41 Stat. 525.................................................................... 11

Act of March 3, 1925,
  ch. 428, 43 Stat. 1112 ................................................................ 11

Act of Oct. 6, 2006,
  Pub. L. No. 109-304, 120 Stat. 1485 .......................................... 17

Act of Sept. 13, 1960,
  Pub. L. No. 86-770, 74 Stat. 912 ........................................... 14, 15

**Rules:**

Fed. R. App. P. 40 ......................................................................... 3

**Administrative Regulations:**

33 C.F.R. §§ 81.1-81.20 ...................................................................... 12

**Other Authorities:**

*Tort Claims: Hearings on H.R. 5373 and H.R. 6463*,
   77th Cong. 29 (1942) ..................................................................... 10

S. Rep. No. 66-223 (1919) ................................................................. 10

H.R. Rep. No. 68-913 (1924) ............................................................. 11

S. Rep. No. 68-941 (1925) ................................................................. 12

H.R. Rep. No. 71-2800 (1931) ..................................................... 11-12

H.R. Rep. No. 86-523 (1959) ............................................................. 15

S. Rep. No. 86-1894 (1960) ............................................................... 15

## INTRODUCTION

The panel correctly upheld the dismissal of this admiralty tort action on the grounds that the actions of the United States Coast Guard fell within the discretionary function exception to the United States' waiver of sovereign immunity in the Suits in Admiralty Act (SIAA), 46 U.S.C. §§ 30901-30918. Seeking to upend over 60 years of precedent and the unanimous holdings of every circuit court to address the question, Appellants contend that this exception should no longer apply to maritime tort actions against the United States. That argument does not warrant en banc review.

This case is one of many resulting from the tragic fire aboard the dive boat *Conception* that caused the deaths of 34 people. The panel affirmed dismissal of Plaintiffs' action against the United States for lack of jurisdiction on the ground that the challenged government conduct—the Coast Guard's oversight of passenger-vessel safety—is protected by the discretionary function exception. The panel majority correctly applied the law of this circuit, *Earles v. United States*, 935 F.2d 1028 (9th Cir. 1991), which held such exception to be implied in the SIAA. *Cf.* Op. at 23, (Bumatay, J. dissenting). *Earles* has stood for 35 years and comports with every other circuit to consider the issue.

Plaintiffs contend that circuit precedent is wrong and conflicts with *Thacker v. Tennessee Valley Auth.*, 587 U.S. 218 (2019). It does not. *Thacker* analyzed a

1

different entity—a "public corporation"—with a different type of waiver of sovereign immunity and made clear that its analysis was specific to that context. The panel decision here is, in fact, wholly reconcilable with *Thacker*. *Thacker* addressed commercial conduct by a public corporation and did not purport to address the SIAA or a purely governmental agency conducting regulatory oversight. To the extent *Thacker* applies here, this case fits within its framework for applying the exception to governmental functions. The history of the relevant waivers of immunity further shows that the exception applies here. Congress effectively ratified the uniform judicial interpretation of the statute when it amended and recodified the SIAA but did not disturb that interpretation.

### STATEMENT

Congress directs the Coast Guard to develop safety regulations for commercial vessels and to inspect those private vessels' compliance with those standards. This vessel safety regime gives the Coast Guard discretion to create these standards and develop its inspection program and gives its inspectors discretion in implementing these inspections. *Fiedler v. United States*, 165 F.4th 1310, 1319-20 (9th Cir. 2026). Here, the Coast Guard inspected *Conception* annually in accordance with these statutes and regulations. These inspections involved "textbook discretionary judgments." *Id*. at 1320. Plaintiffs' suit alleges that the inspectors abused their discretion in inspecting and certificating the vessel.

2

Yet the discretion Congress granted to the Coast Guard is critical to enable inspectors to use their judgment in evaluating a wide variety of vessels under a complex regime to promote regulatory compliance in the maritime industry. U.S. Br. 4-9, 39-43.

The safety regime established by Congress charges *vessel operators* with the primary, critical duty to operate safely and comply with those standards. U.S. Br. 6-8, 22-23 (collecting authorities). Tragically, *Conception*'s operators did not do so. The captain of the vessel has been convicted of seaman's manslaughter. *United States v. Boylan*, 167 F.4th 1266, 1272 (9th Cir. 2026) (affirming conviction and detailing "overwhelming" evidence of criminal conduct).

## ARGUMENT

The petition for rehearing en banc should be denied. En banc rehearing should only be granted if the panel decision (A) "conflicts with a decision of [this] court," (B) "conflicts with a decision of the United States Supreme Court," (C) "conflicts with an authoritative decision of another United States court of appeals," or (D) "involves . . . questions of exceptional importance." Fed. R. App. P. 40(b)(2)(A)-(D).

None of these grounds apply here. The panel correctly relied on *Earles*, the longstanding law of this circuit. Neither the panel decision nor *Earles* conflicts with any other circuit's precedent or with Supreme Court precedent. Nor does this

3

case present a question of exceptional importance; rather, the question has been conclusively answered by this Court and ten unanimous circuits.

## I.     The panel opinion does not conflict with precedent of any circuit.

The panel's decision was based on *Earles*, which has been the law of this circuit for 35 years and comports with the ten other circuits to have considered the issue, all similarly deciding that the SIAA does not waive immunity for discretionary functions.[1] Neither the panel decision nor the facts of this case suggest any conflict with this longstanding, uniform precedent.

## II.    The decision does not conflict with *Thacker*.

Plaintiffs argue that the panel decision conflicts with the Supreme Court's *Thacker* decision. Pet. Reh'g 5. Yet neither *Earles* nor the panel's decision conflict with *Thacker*, which dealt only with sue-and-be-sued clauses for entities that engage in commercial conduct. *Thacker*'s analytical framework does not apply here and holds only that purely commercial functions by public corporations may not be immune from suit absent an express command from Congress. *Thacker* did not overturn the Supreme Court's longstanding recognition that Congress would expect courts to imply immunity for discretionary *governmental* functions, which the *Thacker* opinion repeatedly distinguished from the commercial functions at issue there—a distinction Plaintiffs ignore. Even if *Thacker* applies, this case fits

---

[1] *See Fiedler*, 165 F.4th at 1316 n.3 (collecting cases).

precisely within the different regime the *Thacker* Court repeatedly distinguished (for purely governmental functions).

A. ***Thacker* addressed only commercial activities of sue-and-be-sued hybrid public corporations, not traditional agencies, the SIAA, or core governmental functions.**

*Thacker* did not purport to address the SIAA, nor the kind of purely governmental functions the Coast Guard performs. Rather, *Thacker* dealt only with the Tennessee Valley Authority ("TVA") and the TVA Act of 1933, 16 U.S.C. § 831 *et seq*. Congress established the TVA as a hybrid public corporation—performing both government and commercial functions—that can "sue and be sued in its corporate name." 16 U.S.C. § 831c(b). This clause waives sovereign immunity. *Thacker*, 587 U.S. at 220.[2] The question in *Thacker* was whether courts could imply any exceptions to this sue-and-be-sued clause under the Supreme Court's decision in *Federal Hous. Admin., Region No. 4. v. Burr*, 309 U.S. 242 (1940). *Thacker* held that, as to the TVA's commercial activity, courts could not imply an exception for discretionary conduct to the TVA's sue-and-be-sued waiver of immunity. *Thacker*, 587 U.S. at 224. Accordingly, the Court remanded the case to determine "whether the conduct alleged to be negligent is governmental or

---

[2] The TVA Act came long before the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq.,* which waived the United States' immunity generally in tort while codifying numerous exceptions.

commercial in nature." *Id*. at 229.[3] If governmental, an implied discretionary function exception could still apply, even to a sue-and-be-sued corporation. *Id*.

*Thacker* does not govern this case because its analysis is specific to the public corporations with sue-and-be-sued clauses. *Thacker* structured its analysis around *Burr*'s two-pronged test for determining when a "sue-and-be-sued clause . . . contain[s] 'implied exceptions.'" 587 U.S. at 224 (quoting *Burr*, 309 U.S. at 245). *Thacker* repeatedly made clear that its reasoning was specific to public corporations with sue-and-be-sued clauses. *See id.* at 226.

The Supreme Court had good reason to limit its analysis to this context. Congress has typically applied "sue-and-be-sued" clauses to hybrid corporations that perform largely commercial functions. *Keifer & Keifer v. Reconstruction Fin. Corp.*, 306 U.S. 381 (1939); *see also Thacker*, 587 U.S. at 221 (Congress adopted sue-and-be-sued clauses for "similar government businesses"); *Burr*, 309 U.S. at 245 (agencies that engage in "business transactions with the public"); *F.D.I.C. v. Meyer*, 510 U.S. 471, 480-82 (1994) (a corporation in "the commercial world," subject to suit "to which private businesses are amenable"); *Standard Oil Co. of N.J. v. United States*, 267 U.S. 76, 79 (1925) (when United States "went into the

---

[3] On remand, the district court noted that the activity at issue—replacing an electrical line—is an ordinary commercial act, precluding any discretionary function exception. *Thacker v. Tennessee Valley Auth.*, No. 15-cv-1232, 2021 WL 1338306, at *1 n.2 (N.D. Ala. Apr. 9, 2021).

insurance business," it "accepted the ordinary incidents of suits in such business").[4] Sue-and-be-sued clauses are specific to the individual entities they govern, as opposed to the FTCA or the SIAA (and the Public Vessels Act (PVA), 46 U.S.C. §§ 31101-31113), which apply to the United States generally.

For such public corporations, "it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued', that agency is not less amenable to judicial process than a private enterprise under like circumstances would be." *Burr*, 309 U.S. at 245. For this reason, sue-and-be-sued clauses "should be liberally construed." *Thacker*, 587 U.S. at 224 (quoting *Burr*, 309 U.S. at 245).

These principles stand in stark contrast to general waivers of sovereign immunity like the FTCA and SIAA, which must be strictly construed. *See McMahon v. United States*, 342 U.S. 25, 27 n.5 (1951) (citing cases); *see also United States v. Clyde-Mallory Lines*, 127 F.2d 569, 571 (5th Cir. 1942) (holding that the SAA, "like any other that waives sovereign immunity from suits, should be strictly construed in favor of . . . the interests of the United States"), *aff'd sub nom. Clyde-Mallory Line v. The Eglantine*, 317 U.S. 395 (1943); *Servis v. Hiller Sys. Inc.*, 54 F.3d 203, 209 (4th Cir. 1995) ("[B]ecause the SAA waives the

---

[4] This is true for each of the entities highlighted by Plaintiffs, many expressly defined as "corporations." *See* Pet. Reh'g 8 n.2.

7

government's sovereign immunity, that statute must be strictly construed in favor of the United States.").

The Supreme Court has accordingly interpreted congressional intent quite differently in the context of general waivers like the FTCA. Congress, in enacting the FTCA, "believed that claims of the kind embraced by the discretionary function exception would have been exempted from the waiver of sovereign immunity by judicial construction" but nonetheless added the statutory exception "to make clear that the Act was not to be extended into the realm of the validity of . . . discretionary administrative action." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 810 (1984); *see also Dalehite v. United States*, 346 U.S. 15, 27 (1953) ("It is not probable that the courts would extend a Tort Claims Act into the realm of the validity of legislation or discretionary administrative action, but [the exception] makes this specific." (quoting *Tort Claims: Hearings on H.R. 5373 and H.R. 6463 Before the H. Comm. on the Judiciary*, 77th Cong. 29 (1942) (statement of Francis M. Shea, Assistant Attorney General, U.S. Department of Justice))). The Third Circuit has interpreted *Varig* to mean that, "as a matter of judicial construction, we should not read a general waiver of sovereign immunity to include a waiver of immunity with respect to damage occasioned by policy decisions." *Sea-Land Serv., Inc. v. United States*, 919 F.2d 888, 891 (3d Cir. 1990). "[S]tatutes placing the United States in

8

the same position as a private party also have been read narrowly to preserve certain immunities . . . ." *Library of Cong. v. Shaw*, 478 U.S. 310, 319-20 (1986). *Thacker* therefore does not conflict with *Earles* or the panel's decision in this case. Because the SIAA is a general waiver of sovereign immunity like the FTCA, not a sue-and-be-sued clause specific to a public corporation, the *Thacker* analysis does not govern whether the SIAA should be read to contain a discretionary function exception.

> **B. To the extent *Thacker* applies, this case fits within its framework.**

Even if *Thacker* has any bearing on the SIAA, the panel decision and *Earles* align with *Thacker* in that the exception applies to core governmental functions even if not expressly stated. *Thacker* repeatedly distinguished TVA's commercial acts from core government functions. *See* 587 U.S. at 220, 224, 227-29. *Thacker* accordingly does not preclude an implied exception to the SIAA's waiver of sovereign immunity for the present action, which implicates exclusively governmental functions of the Coast Guard, a branch of the United States armed forces. 14 U.S.C. § 101.

**III. The history of the SIAA and FTCA supports inclusion of the exception.**

Plaintiffs argue the text of the SIAA shows Congress's intent to waive sovereign immunity without limitation, yet the broader context of the SIAA and the FTCA shows the opposite. A court "must consider 'the language itself, the

9

specific context in which that language is used, and the broader context of the statute as a whole.'" *United States v. Olander*, 572 F.3d 764, 768 (9th Cir. 2009) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

### A. Pre-1960 SIAA and PVA

The SIAA was originally drafted to waive the United States' liability when the government operated merchant vessels commercially. An explicit discretionary function exception was unnecessary because the SIAA only waived immunity for purely commercial conduct, not for acts like the Coast Guard's regulatory oversight challenged here.

The admiralty immunity waiver started with the Shipping Act of 1916, which enabled the United States to acquire and operate merchant vessels. *United States v. Cont'l Tuna Corp.*, 425 U.S. 164, 170 (1976) (citing 39 Stat. 730). This statute subjected the United States to "all laws, regulations, and liabilities governing merchant vessels." *Id.* (quoting 39 Stat. 370). Congress thus placed the government "in a similar position to a private owner." S. Rep. No. 66-223, at 3 (1919). Congress later enacted the SIAA to allow only *in personam* suits, to solve the problem of *in rem* arrests and proceedings impeding wartime shipping. *Cont'l Tuna*, 425 U.S. at 170-71; *see also Ryan Stevedoring Co. v. United States*, 175 F.2d 490, 492 (2d Cir. 1949). When enacted, the SIAA waived immunity only in cases involving government-operated merchant vessels or cargo. Act of Mar. 9,

10

1920, ch. 95, § 2, 41 Stat. 525. The waiver of immunity was limited to suits that "could have been maintained had the vessel been a private vessel." *Cont'l Tuna*, 425 U.S. at 171. The SIAA originally thus only allowed suits challenging vessel operations akin to commercial shipping, not actions such as the regulatory oversight conduct alleged here.

The enactment of the PVA somewhat expanded this waiver of immunity to include government vessels other than merchant ships. Act of March 3, 1925, ch. 428, 43 Stat. 1112. But the PVA still did not allow suits challenging discretionary governmental functions. The chief purpose of the PVA was to grant a right of action for damage caused by collisions with public vessels. H.R. Rep. No. 68-913, at 1 (1924), adopted by S. Rep. No. 68-941, at 1 (1925). The House Report quoted with approval language from *Walton v. United States*, 24 Ct. Cl. 372, 377, 379, 380 (1889), highlighting the distinction between liability for governmental operations of a commercial nature (shipping, property management) versus actions in the discharge of "ordinary functions of government," for which the government should remain immune. H.R. Rep. No. 68-913, *supra*, at 3.

Thus, Congress's original waivers in admiralty put the government—when it operates ships—on the same terms as any other vessel operator. *See* H.R. Rep. No. 71-2800, at 7 (1931) (Shipping Act and SIAA placed government "in the position of a private operator" and "therefore, submitted itself to tort liability in connection

11

therewith"). The same rules for navigation and collision avoidance apply. *See* 33 C.F.R. §§ 81.1-81.20. This scheme parallels *Thacker*'s focus on commercial conduct. But, as *Thacker* distinguished, 587 U.S. at 228, allowing suit for commercial activity differs from allowing suit challenging core governmental functions, which Congress did not do in the Shipping Act, SIAA, or PVA.

Maritime tort claims like this one, challenging government functions other than vessel operations, became actionable only upon the enactment of the FTCA in 1946. The FTCA's waiver covered maritime torts beyond the narrow, vessel-based claims allowed by the SIAA and PVA.[5] For example, one court held that the plaintiffs could not bring a suit *in admiralty* against the United States alleging negligent bridge maintenance—even though that would be a valid admiralty claim against a private owner—but could bring a suit alleging the same under the FTCA. *Steamtug Aladdin, Inc. v. City of Boston*, 163 F. Supp. 499, 501 (D. Mass. 1958).

---

[5] *See Ryan Stevedoring*, 175 F.2d at 493 (SIAA/PVA did not waive immunity over admiralty torts generally but only "apply to the extensive shipping operations of the United States"); *see generally Hess v. United States*, 259 F.2d 285 (9th Cir. 1958) (negligent dam repair case under FTCA); *Otness v. United States*, 178 F. Supp. 647 (D. Alaska 1959) (negligent navigation aid maintenance under FTCA); *Pioneer S.S. Co. v. United States*, 176 F. Supp. 140 (E.D. Wis. 1959) (negligent obstructions to navigation under FTCA); *Cornell Steamboat Co. v. United States*, 138 F. Supp. 16 (S.D.N.Y. 1956) (failure to clear a wreck under FTCA); *Moran v. United States*, 102 F. Supp. 275, 276-77, 279 (D. Conn. 1951) ("other maritime torts by employes [sic] (as distinguished from vessels) of the United States were intended to be included in the [FTCA].").

Thus, before 1946, no court had jurisdiction to hear a case like the present action against the United States; from 1946 to 1960, such a case could have been brought only under the FTCA, and courts would have applied the discretionary function exception. *See, e.g.*, *Dalehite*, 346 U.S. at 32-43 (exception barred claims against the United States arising out of vessel explosion);[6] *Somerset Seafood Co. v. United States*, 193 F.2d 631, 635 (4th Cir. 1951) (government's alleged failure to remove or mark a wrecked ship was not a "discretionary" act within the meaning of the FTCA); *Coates v. United States*, 181 F.2d 816, 817 (8th Cir. 1950) (exception applied to government project redirecting the Missouri River).

Moreover, the doctrine underlying the discretionary function exception existed even before its codification in the FTCA. Legislative history indicates the FTCA's discretionary function was a mere "clarifying amendment" for a concept already applied by the judiciary. *Earles*, 935 F.2d at 1031 (quoting *Dalehite*, 346 U.S. at 26). When Congress enacted the FTCA, it "believed that claims of the kind embraced by the discretionary function exception would have been exempted from the waiver of sovereign immunity by judicial construction." *Varig Airlines*, 467 U.S. at 810. Congress included the exception "to make clear that the Act was not to

---

[6] *Dalehite* involved a vessel fire and explosion that killed over 500 people. In its first case addressing the discretionary function exception, the Supreme Court held that the exception barred suits alleging negligent Coast Guard oversight of private shipping operations, among other allegations. *Dalehite*, 346 U.S. at 35-36.

be extended into the realm of the validity of legislation or discretionary administrative action." *Varig Airlines*, 467 U.S. at 810; *accord Earles*, 935 F.2d at 1031. The concept is grounded in separation of powers concerns. *McMellon v. United States*, 387 F.3d 329, 342-49 (4th Cir. 2004) (en banc) (quoting *Varig Airlines*, 467 U.S. at 814, inter alia).[7]

### B.     1960 Amendment to SIAA

Nothing suggests that Congress intended to revoke the government's immunity for discretionary acts and governmental functions when Congress amended the SIAA in 1960. Act of Sept. 13, 1960, Pub. L. No. 86-770, § 3, 74 Stat. 912, 912.[8] The 1960 amendment was intended to cure the problem of proper forum for admiralty contract suits, that plaintiffs sometimes brought admiralty contract suits erroneously in the district court instead of the Court of Claims, or vice versa. *Cont'l Tuna*, 425 U.S. at 173. Through the amendment, Congress intended to clarify "the proper forum for certain maritime claims" to "prevent otherwise meritorious claims from being time-barred." H.R. Rep. No. 86-523, at 1

---

[7] Thus, to the extent Congress intended to transfer maritime claims from the FTCA to the SIAA in 1960, it did so understanding that the discretionary function exception was a "clarifying amendment" formalizing traditional rules of judicial construction, *Earles*, 935 F.2d at 1031 (quotation omitted), emphasized by the Supreme Court's application of the exception to a maritime tort in *Dalehite*.

[8] Titled "An Act to amend title 28 of the United States Code to provide for transfer of cases between the district courts and the Court of Claims and for other purposes."

(1959); *see also* S. Rep. No. 86-1894 (1960); *Cont'l Tuna*, 425 U.S. at 172-73, 175-76. The 1960 amendment was therefore meant to assist litigants in "determining the proper forum" and to "clarify the jurisdiction of the district courts" as the forum for all suits in admiralty, whether in tort or contract, public vessel or merchant vessel. S. Rep. No. 86-1894 at 10, 12; *see also Cont'l Tuna*, 425 U.S. at 177-78. To do so, Congress expanded the SIAA's language ("cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed") to include "or if a private person or property were involved." § 3, 74 Stat. at 912; *see also Cont'l Tuna*, 425 U.S. at 175-77. It also eliminated the "employed as a merchant vessel" clause due to then-different treatment of merchant vessels versus public vessels, which had caused confusion. *Cont'l Tuna*, 425 U.S. at 177; S. Rep. No. 86-1894 at 3-6.

Courts later held that, because of the 1960 language, certain tort claims that previously fell under the FTCA should be brought under the SIAA. *See Cont'l Tuna*, 425 U.S. at 176 n.14; *McMellon*, 387 F.3d at 337. Nothing in the statutory language suggests that Congress intended this effect, nor intended to broadly eliminate sovereign immunity for discretionary governmental functions. *See generally Earles*, 935 F.2d at 1031.

The dissent suggests that "nothing indicates that Congress intended for sovereign immunity to be impliedly preserved for discretionary functions in

15

admiralty suits." *Fiedler*, 165 F.4th at 1321 (Bumatay, J., dissenting). This inverts the relevant history. In truth, nothing indicates that Congress intended to impliedly *eliminate* the explicit protections they gave this category of suit when they first authorized such suits in 1946. Plaintiffs likewise fail to appreciate this history when they argue that Congress "purposefully" excluded all admiralty torts from the FTCA's discretionary function exception. *See* Pet. Reh'g 15. Agency discretion involving governmental functions within the Executive Branch—undergirded by the separation of powers inherent in our constitutional order—existed long before the FTCA codified the concept.

It is "a cardinal principle of statutory construction that repeals by implication are not favored." *Cont'l Tuna*, 425 U.S. at 168-69. "Congress must speak with unmistakable intent in order to waive tort immunity for the government's discretionary functions." *Sea-Land Serv., Inc.*, 919 F.2d at 891. In *Cont'l Tuna*, the plaintiff claimed that the 1960 SIAA amendment allowed them to assert *any* admiralty claim under the SIAA, thus circumventing the strictures of the PVA. 425 U.S. at 166. The Court ruled that reading the 1960 amendment so broadly "would effectively nullify specific policy judgments made by Congress." *Id*. at 181. The same is true here.

The FTCA was a transformational change to the United States' liability in tort that came after "nearly thirty years of congressional consideration." *Dalehite*,

16

346 U.S. at 24; *accord Varig Airlines*, 467 U.S. at 808-09 (noting years of debate on FTCA). Plaintiffs here would have the Court believe that in 1960, in amending the SIAA to fix a venue problem, Congress intended to impose an even broader expansion of that waiver of immunity—with no limitation whatsoever—without saying anything at all.

**C.      Congress ratified the uniform judicial interpretation that the SIAA contains a discretionary function exception.**

Consistent with this legislative history, every circuit court to consider the issue has interpreted the exception to apply to the SIAA. Congress effectively ratified this uniform judicial interpretation when it recodified the SIAA in 2006. The last circuit to join this judicial consensus was the Fourth Circuit, which issued an en banc decision in 2004 that reversed prior panel precedent and held that the SIAA contains an implied discretionary function exception. *McMellon*, 387 F.3d at 349. Shortly thereafter, Congress recodified the SIAA with various amendments, including to the statute's waiver of sovereign immunity, but did not disturb the uniform judicial understanding of the statute. Act of Oct. 6, 2006, Pub. L. No. 109-304, ch. 309, 120 Stat. 1485, 1517-1521. As the Supreme Court has explained, "Congress is presumed to be aware of [a] . . . judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978).

This history, combined with the separation-of-powers concerns best articulated in *McMellon*, supports denying the petition for rehearing and leaving this Circuit in uniformity with the rest on this issue.

## CONCLUSION

This Court should deny Plaintiffs' petition for rehearing en banc.

DATED: June 25, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General


*/s Jill Rosa*_____
ERIC KAUFMAN-COHEN
Attorney in Charge, West Coast Office
JILL DAHLMANN ROSA
Senior Aviation & Admiralty Counsel
SCOTT PERRYGO
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
Eric.Kaufman-Cohen@usdoj.gov
Jill.Rosa@usdoj.gov
Scott.Perrygo@usdoj.gov

Attorneys for United States of America

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses
Instructions for this form: https://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s):** <u>24-5064</u>

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/response to petition is *(select one)*:

<u>X</u>    Prepared in a format, typeface, and type style that complies with Fed. R.
App. P. 32(a)(4)-(6) and contains the following number of words: <u>4116</u>
*(Petitions and responses must not exceed 4,200 words)*

**OR**

_____In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15
pages.

Signature: <u>/s *Jill Rosa*</u>         Date: <u>June 25, 2026</u>
*(use "s/[typed name]" to sign electronically-filed documents)*

19